**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | **Chapter 11** |
| **LOUIS J. PEARLMAN,** ) | |
| ) | **CASE NO: 6:07-bk-00761-ABB** |
| Debtor. ) | |
| _____) | |

**INVOLUNTARY PETITIONERS' EMERGENCY MOTION,
PURSUANT TO 11 U.S.C. § 1104(a),
FOR APPOINTMENT OF CHAPTER 11 TRUSTEE
AND
CERTIFICATE OF NECESSITY OF REQUEST FOR EMERGENCY HEARING**

**COME NOW** Tatonka Capital Corporation ("Tatonka"), Integra Bank, National Association ("Integra"), American Bank of St. Paul ("American") and First National Bank & Trust Company of Williston ("Williston") (collectively, the "Movants"), creditors in the above-styled bankruptcy case, and, pursuant to Section 1104(a) of Title 11 of the United States Code (the "Bankruptcy Code"), move this Court (the "Motion") on an emergency basis to appoint a chapter 11 trustee to serve in the above-styled case.[1]  In support thereof, the Movants state as follows:

**I.  PRELIMINARY STATEMENT**

By all accounts, this bankruptcy case cries out for the appointment of a chapter 11 trustee to take control over and direct the "rudderless ship" that was once the "financial empire" controlled by Louis Pearlman ("Pearlman").  Pearlman is alleged to have directly or indirectly controlled over 100 entities.  Upon information and belief, Pearlman and Trans Continental

---

[1] Contemporaneously with the filing of this Motion, Movants are filing a like Motion in the Trans Continental Airlines, Inc. matter, Case No. 6:07-bk-00762-ABB.

Airlines, Inc. ("TCA") are the centerpieces in the largest "ponzi" scheme ever perpetrated in the State of Florida, with over $300 million in investor funds unaccounted for and an additional approximately $150 million in bank loans with little to no apparent assets to show for it. When it became apparent that his financial empire was crumbling around him, Pearlman is alleged to have fled the country after transferring substantial funds to himself personally. Shortly after that, the federal authorities, including the FBI, the IRS, the FDIC and the Florida Office of Financial Regulation executed a search warrant at the offices of TCA and at Pearlman's home, taking control over numerous books and records of Pearlman, TCA and perhaps other entities. Since then, a receiver (the "Receiver") has been appointed over TCA and certain other entities (excluding Pearlman individually) in a state court proceeding in the Circuit Court for the Ninth Judicial Circuit in and for Orange County (the "State Court") in an action commenced by the State of Florida, Office of Financial Regulation in the exercise of the police powers of the State of Florida. The Receiver has described the Pearlman related entities, including TCA, as a "rudderless ship" that do not appear to be doing business any longer.

The Movants are collectively owed in excess of $48 million by Pearlman and in excess of $64 million by TCA. The Movants firmly believe that all roads point to the inevitable need to have an independent fiduciary appointed to immediately take control over this bankruptcy case so as to attempt to preserve value for all creditors and parties in interest. As set forth below, more than sufficient cause exists for the appointment of a chapter 11 trustee for, among other reasons, (i) the allegations and apparent evidence of the largest "ponzi" scheme ever in the State of Florida, (ii) the fact that Pearlman has fled the country, (iii) the lack of any immediately available assets, (iv) the allegations and apparent evidence that substantial monies and assets were diverted by Pearlman and others over the past several weeks, and (v) the seizure of the

2

books and records of TCA and others by the federal authorities. Moreover, for these same reasons, the appointment of a chapter 11 trustee is in the best interest of all creditors and parties in interest.

The Movants also assert that an emergency hearing is necessary in respect of this Motion because time is of the essence in the pursuit and recovery of assets and causes of action. Several weeks have elapsed since the allegations concerning Pearlman and TCA first came to light. It is the Movants' belief that assets are being diverted farther and farther from the reach of creditors as each day passes. As a result, the need for the appointment of a chapter 11 trustee with all of the powers of the Bankruptcy Court and Bankruptcy Code available to such trustee is exigent.

## I.    BACKGROUND

1.    Upon information and belief, Pearlman is an individual that for the larger part of the last 180 days has been domiciled or resided in Windermere, Florida. However, Pearlman's current whereabouts are unknown, although recent indications are that he has fled to Germany. *See* Exhibit A. Whether or not this exile is in light of the allegations that have been leveled against him and TCA in recent weeks is unknown. While recent efforts to communicate with Pearlman have been unsuccessful, he has apparently turned over control of FF Station, LLC, the owner of Church Street Station in downtown Orlando, to a new sole member immediately before FF Station, LLC filed a chapter 11 bankruptcy in this Court, Case No. 07-00575-ABB.

2.    Upon information and belief, Pearlman has been involved in a variety of different endeavors, including, but not limited to, charter airlines, management of pop music groups, talent agencies, and all-male revue dancers. These endeavors were apparently orchestrated through his direct or indirect ownership interests in more than 100 corporate entities, most of which are purportedly housed at Church Street Station in Orlando, including Louis J. Pearlman Enterprise, Inc. and TCA *See* Exhibit B, ¶ 5; Exhibit H, p. 5.

3. TCA is a corporation organized under the laws of the state of Florida with its principal place of business in Orlando, Florida. *See* Exhibit C. On information and belief, Pearlman, either directly or indirectly, owns the vast majority of equity interests in TCA. *See id.*

4. The State of Florida, Office of Financial Regulation filed an amended complaint against several entities, including TCA, seeking the appointment of a receiver and alleging that the Defendants therein violated the registration and anti-fraud provisions of Chapter 517 of the Florida Statutes, as well as the prohibitions against soliciting or receiving funds for deposit without being authorized to do business in the state of Florida as a financial institution found in Chapter 655 of the Florida Statutes. *See* Exhibit D.

5. On February 2, 2007, the State Court entered an order (the "Receiver Order") appointing the Receiver over TCA. *See* Exhibit E.

6. The State Court found "preliminary sufficient evidence" of the following: (a) securities fraud in violation of § 517.301(1)(a)1, 2, and 3 of the Florida Statutes; (b) sale of unregistered securities within Florida in violation of § 517.07(1) of the Florida Statutes; (c) sale of unregistered securities by an unregistered dealer, associated person, or issuer in violation of § 517.12(1) of the Florida Statutes; and (d) banking business by an unauthorized person in violation of § 655.922(1) and (2)(c). *See id*.

7. The State Court also found that: "Pending final determination of this Action, Defendants and Relief Defendants may, unless restrained and enjoined, continue to engage in acts and practices, directly or indirectly, which constitute violations of Chapter 517 and 655, Florida Statutes…." *See* Exhibit E, ¶ 2.

8. Upon information and belief, TCA also offered and sold unregistered securities through a program known as the Employee Investment Savings Account program ("EISA"). *See*

Exhibits B and D. "The Defendants have engaged in securities fraud by making a variety of misrepresentations that lulled individual EISA investors into believing their investment "deposit" was safe, secure and residing in U.S. financial institutions, where the FDIC and other insurance guaranteed the investment." *See* Exhibit H, p. 2. Upon information and belief, witnesses have come forth maintaining that Pearlman, individually, also circulated documents attesting to the security of the EISA investments, which documents were neither authentic nor correct. *See* Exhibit D, pp. 30-33.

9. The deposits made into the EISA program will likely exceed $315 million. *See* Exhibit H, p. 10. Moreover, despite receiving these deposits, there do not appear to be any significant unencumbered assets left in TCA, as there have been numerous transfers of funds out of TCA prior to the bankruptcy filing. *Id*. at p. 3-4. The Receiver further purports to have evidence of substantial amounts of EISA funds being transferred from TCA to other companies related to Pearlman. *See* Exhibit B. These transfers include in excess of $38 million being transferred from TCA to Louis J. Pearlman Enterprise, Inc. *Id*. On information and belief, Louis J. Pearlman Enterprises, Inc. is owned and operated, either directly or indirectly, by Pearlman. *See* Exhibit G.

10. The financial structure of Pearlman's entities and TCA are superficially complex. Upon information and belief, the various entities transacted with each other without observance or respect for proper corporate formalities. *See* Exhibit E, ¶ 5.

11. There have been a variety of other allegations made against Pearlman and TCA. These allegations include that the accounting firm of Cohen & Siegel CPA with offices in Frankfurt, Germany and Coral Gables, Florida ("Cohen") did not actually exist. However, Cohen purportedly prepared audited financial statements which were provided to creditors in

order to support Pearlman's and TCA's finances. *See* Exhibit D, pp. 5-6. The Office of Financial Regulation of the State of Florida (the "OFR") alleges that these financial statements fail to reflect numerous liabilities. *Id.* Moreover, the Coral Gables office of Cohen is alleged to actually be the location of an answering service, whose services were paid for in part by TCA. *Id.* Additionally, the address for the German office of Cohen, is also the address for an alleged German financial institution. *Id.* The undersigned counsels' review of www.myfloridalicense.com revealed no certified public accounting firm by the name of Cohen & Siegel CPA licensed to perform accounting services in Florida. *See* Exhibit I.

12. There have been "numerous instances where third parties - some creditors; some employees or insiders of TCA or TCA-related entities - have attempted to transfer, conceal, or exercise control over assets or funds" of TCA among other entities. *See* Exhibit B, ¶ 6.

13. On February 15, 2007, agents from the Federal Bureau of Investigation and the Internal Revenue Service, armed with search warrants, raided Pearlman's personal residence in Windermere, Florida and the corporate offices of TCA in downtown Orlando, Florida. *See* Exhibit F and J. The raids were purportedly part of a "criminal investigation" into the activities of Pearlman and his related companies. *See id.;* Exhibit H, p. 9.

14. As set forth in the involuntary petitions filed by the Movants, Pearlman has defaulted on at least $48 million in obligations to banks and financial intuitions, including Integra, Tatonka, American and Williston. TCA has defaulted on at least $64 million in obligations to banks and financial institutions including Integra, Tatonka, American and Williston. Moreover, TCA has potentially defaulted on up to $125 million in obligations to "bank lenders." *See* Exhibit H. p. 10.

## II.     SUMMARY OF ARGUMENT / RELIEF REQUESTED

15.     In light of the current lack of knowledge as to Pearlman's whereabouts, the investigations of Pearlman, TCA and their related companies by the FBI, the IRS, and state regulatory officials, the numerous allegations against both Pearlman and TCA of significant acts of fraud, and the State Court's preliminary findings that evidence existed of TCA's securities fraud and violation of related statutes, it is apparent that a chapter 11 trustee needs to be immediately appointed to protect the interests of all parties-in-interest.

16.     The Movants request that only one person be appointed as the chapter 11 trustee in the involuntary cases (both Pearlman (07-761-ABB) and TCA (07-762-ABB)) before this Court.  Having the same chapter 11 trustee serve in both cases will reduce costs and duplication of efforts.  Moreover, because the bodies of creditors in the two cases will likely be substantially similar in composition, and because these and yet-to-be-filed cases of affiliated debtors may be ripe for substantive consolidation,[2] the same trustee in both cases will avoid duplication of effort and competition with respect to dominion over assets.  As the facts in these cases develop further, either the appointed chapter 11 trustee or the creditor body as a whole may request a separate trustee, if necessary.

## III.    ARGUMENT

### A.    THE APPOINTMENT OF A CHAPTER 11 TRUSTEE IS WARRANTED UNDER THE FACTS AND CIRCUMSTANCES

17.     11 U.S.C. § 1104(a) provides three alternative grounds for appointing a trustee in a chapter 11 bankruptcy.  Section 1104(a) states in pertinent part:

> (a)    At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the

---

[2] The Movants are not requesting substantive consolidation at this time, however, reserve the right to do so in the future as warranted.

> United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee--
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (3) if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate.

18. In summary, subsection (a)(1) mandates that a court shall appoint a trustee where "cause" exists to do so. Subsection (a)(2) requires appointment of a trustee if such appointment is in the best interest of the creditors, equity security holders, and other interests of the estate. The third ground supporting trustee appointment is section (a)(3), which provides for appointment of a trustee if grounds exist to convert or dismiss the case pursuant to 11 U.S.C. § 1112, but instead the court determines that the appointment of a trustee or examiner is in the best interest of creditors and the estate.

19. While the appointment of a trustee should be the exception rather than the rule, "in the appropriate case, the appointment of a trustee is a power which is critical for the Court to exercise in order to preserve the integrity of the bankruptcy process and to insure that the interest of creditors are served." *In re: Suncruz Casinos, LLC*, 298 B.R. 821, 828 (Bankr. S.D Fla. 2003) (citations omitted).

### 1. "Cause" Exists To Appoint A Trustee In This Case Due To Fraud, Dishonesty, the Improper Transfer of Assets and the Disappearance of Pearlman.

20. A non-exhaustive list found in § 1104(a)(1) illustrates what "cause" could be for purposes of appointment of a trustee. This list includes fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the Debtor by current management. 11 U.S.C. § 1104(a)(1).

21. In addition to § 1104(a)(1)'s enumerated examples of conduct constituting cause, courts have also found cause to appoint a trustee based on the following factors: (1) materiality of the misconduct; (2) evenhandedness or lack of same in dealings with insiders or affiliated entities vis-a-vis other creditors or customers; (3) the existence of prepetition voidable preferences or fraudulent transfers; (4) unwillingness or ability of management to pursue estate causes of action; (5) conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the Debtor; and (6) self dealing by management or waste or squandering of corporate assets. *See, e.g., In re: Suncruz Casinos, LLC*, 298 B.R. 821, 830 (Bankr. S.D. Fla. 2003) (citing *In re: Matter of Intercat, Inc.*, 247 B.R. 911, 921 (Bankr. S.D.Ga. 2000)).

22. As discussed below, several of these factors are satisfied by the actions taken by Pearlman and TCA, thus warranting the appointment of a trustee.

### 2. Fraud, dishonesty, and mismanagement by the Debtor.

23. As the Court is well aware, a trustee in bankruptcy is the "representative" of the estate. In a chapter 11 case, the debtor-in-possession ("DIP") has all the rights and powers and shall perform all the functions and duties of a trustee pursuant to 11 U.S.C. §1107. "Chief among these . . . is that the DIP is a fiduciary to all of its creditors and equity security holders."

*In re: Suncruz Casinos, LLC*, 298 B.R. at 829 (citing *In re: Bellevue Place Assoc.*, 171 B.R. 615, 623 (Bankr. N.D.Ill. 1994)).

24. "Because the DIP's fiduciary obligation is to the estate, and not to one group, the DIP must act to benefit the estate as a whole." *In re: Suncruz Casinos, LLC*, 298 B.R. at 29 (citing *In re: Microwave Products*, 102 B.R. 666, 671 (Bankr. W.D.Tenn. 1989)). "[A] fiduciary - the debtor-in-possession - is prescribed from acting solely in its self interest to the exclusion of the other interests which the debtor-in-possession has the fiduciary obligation to protect." *In re: Suncruz Casinos, LLC*, 298 B.R. at 830 (citing *In re: Bellevue Place Assoc.*, 171 B.R. at 624).

25. The willingness of Congress to leave a debtor-in-possession is premised on the expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee. If the debtor-in-possession defaults in this respect, §1104(a)(1) commands that the stewardship of the reorganization effort must be turned over to an independent trustee. *In re: Marvel*, 140 F.3d 463, 474 (3rd Cir. 1998) (quotations omitted).

26. The State Court has already found that TCA has been mismanaged. *See* Exhibit E, 2. There is also an ongoing criminal investigation into the activities of Pearlman and TCA. Allegations of significant acts of fraud have been made and the State Court has found that evidence exists of violation of Florida's securities and banking laws.

27. All of these facts warrant the appointment of a chapter 11 trustee in this case.

**3.     Transfer of Assets.**

28. Bankruptcy courts have found that one significant element of cause that can warrant the appointment of a chapter 11 trustee is where funds of the debtor have been improperly transferred out of the debtor for the benefit of the debtor and to the detriment of creditors. *In re Bibo, Inc.*, 76 F.3d 256, 257-58 (9th Cir. 1996) (appointment of trustee was mandated where management had siphoned funds from the debtor); *In re Sharon Steel Corp.*,

871 F.2d 1217, 1228 (3d Cir. 1989) (systematic siphoning of debtor's assets to other companies under shareholders common control constitutes cause for the appointment of a trustee).

29.     The receipt by TCA of $300 million in investor funds, plus millions from banks and financial institutions, with a lack of any apparent evidence as to how this money was spent outside of potential distributions to entities related to Pearlman, demonstrates the need for the appointment of a trustee to review these transfers.

### 4.     Pearlman's Absence.

30.     Pearlman has not appeared, publicly spoken, or otherwise responded in any form in some time. The most recent communication from Pearlman was received while he was in a foreign country. The raid of his offices by the FBI, IRS and the State of Florida; the multiple ongoing lawsuits seeking the recovery of millions of dollars from Pearlman, TCA and Pearlman's related companies; the foreclosure proceedings on a piece of property with substantial value indirectly owned by Pearlman; and the appointment of a Receiver over Pearlman's company TCA, have all been unanswered. This absence and lack of response further warrants the appointment of a trustee to oversee the management of the estates of Pearlman and TCA for the benefit of their creditors.

### 5.     The foregoing reasons are "material" and require appointment of a trustee.

31.     The factors supporting the appointment of a chapter 11 trustee are material and substantial. The State Court found that evidence existed that TCA had engaged in multiple violations of Florida's securities laws. Federal and state law enforcement officials have raided the residence of Pearlman and the corporate offices of TCA. Individuals, who were told that they were investing in an FDIC insured investment, put at least $300 million collectively into TCA that has apparently vanished. Pearlman and TCA utilized a CPA firm to provide financial

statements to creditors, but the accounting firm is not licensed to provide accounting services in Florida, and the firm's office in Florida is an answering machine funded in part by TCA.

32. All of these factors are material and demonstrate that the basis for the appointment of a trustee is warranted.

33. "Once the court finds that cause exists under § 1104(a)(1), there is no discretion; an independent trustee must be appointed." *In re Suncruz Casinos*, 298 B.R. at 828; 11 U.S.C. § 1104(a). "Whether or not the Trustee's efforts will be capped with success is not relevant under § 1104(a)(1). The court need only decide whether the requisite cause exists." *In re: V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 528 (Bankr. E.D.N.Y., 1989).

34. Based upon the foregoing, a chapter 11 trustee is due to be appointed for cause pursuant to 11 U.S.C. § 1104(a)(1).

> **6. A Trustee Should Be Appointed In This Case, Because Such Appointment Is In The Best Interests of Creditors, Any Equity Security Holders, And Other Interests Of The Estate.**

35. If this Court does not find "cause" pursuant to § 1104(a)(1), section 1104(a)(2) provides that the court shall order the appointment of a trustee "if such appointment is in the interest of creditors, any equity security holders and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor." 11 U.S.C. § 1104(a)(2).

36. Unlike § 1104(a)(1), which provides for mandatory appointment upon a specific finding of cause, § 1104(a)(2) envisions a flexible standard. "It gives the district court discretion to appoint a trustee when to do so would serve the parties' and estate's interest." *In re: Marvel Entertainment Group*, 140 F.3d 463, 474 (3rd Cir. 1998) (quotations omitted).

37. One court has suggested that a trustee may be appointed after a review of (a) trustworthiness of debtor, (b) past and present performance of debtor, (c) confidence - or lack

thereof - of business community and creditors in management and (d) costs and benefits of appointing trustee. *In re: Ionosphere Clubs, Inc.* 113 B.R. 164, 168 (Bankr. S.D.N.Y 1990) (citations omitted). Each of the foregoing factors requires appointment of a trustee pursuant to 1104(a)(2).

38. It is in the best interests of creditors and all parties in interest that a trustee be appointed, as it is impossible for either the business community or the public at large to have any confidence whatsoever in the ability of Pearlman or TCA to be a debtor-in-possession. Moreover, there is no evidence to support the trustworthiness of these debtors. On the contrary, all of the above facts point to the lack of trustworthiness in both Pearlman and TCA. This case is exactly the type of case contemplated by the Bankruptcy Code requiring the appointment of a chapter 11 trustee, and creditor interests can only be served by the active participation of an independent fiduciary.

39. Accordingly, a trustee is due to be appointed pursuant to 1104(a)(2).

**B.    LACK OF ORDER FOR RELIEF DOES NOT PRECLUDE APPOINTMENT OF CHAPTER 11 TRUSTEE**

40. The fact that an order for relief has not yet been entered in the instant bankruptcy case does not preclude the appointment of a chapter 11 trustee. *See, e.g., In re Professional Accountants Referral Services, Inc.*, 142 B.R. 422, 430 (Bankr. D. Colo. 1992).[3] The language of 11 U.S.C. § 1104 provides for the appointment of a trustee "at any time after the commencement of the case but before confirmation of a plan." Section 1104 references the

---

[3] It should be noted that in the *Professional Accountants* case, the court ordered the appointment of a chapter 11 trustee after first making the threshold determination that a "reasonable likelihood" exists that the debtor will be found to be a proper involuntary debtor under 11 U.S.C. § 303 and that an order for relief will follow. *Professional Accountants,* 142 B.R. at 429. In light of the tens of millions of dollars owed after payment default by TCA and Pearlman to just the Movants (not to mention other creditors), it is clear that neither TCA nor Pearlman are paying their debts as they become due.

commencement of the case rather than the entry of the order for relief.. *See id*. Pursuant to 11 U.S.C. § 303, an involuntary case is "commenced" with the filing with the bankruptcy court of a petition under chapter 11 by the requisite type and number of entities. Because the involuntary petitions have been filed, the instant bankruptcy case has been "commenced," and a trustee may be appointed.

## CERTIFICATE OF NECESSITY OF REQUEST FOR EMERGENCY HEARING

41. The Movants hereby certify that they have carefully examined the matter under consideration and to the best of their knowledge, information, and belief formed after reasonable inquiry, all allegations are well grounded in fact and all contentions are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law can be made, that the matter under consideration is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation, and there is just cause to request a consideration of the matter on an emergency basis.

42. The Movants further certify that, in light of the actions of Pearlman and TCA, which actions continue to diminish and affect the estates of the above-styled Debtors, it is critical that the Court consider this Motion on an emergency basis, because, absent emergency relief and for the reasons set forth in this pleading, the estates and the creditors of the estates may be irreparably harmed.

43. Depending on the opposition, the Movants estimate that approximately two (2) hours will be necessary for a hearing on this Motion.

44. The Movants are prepared to appear on Monday, March 12, 2007 or as soon thereafter as the Court's docket will allow, to demonstrate that the request for an emergency hearing is not the result of the Movants' or counsel's procrastination or lack of attention.

**WHEREFORE,** the Movants respectfully requests that this Court enter an order appointing a chapter 11 trustee in the above-styled bankruptcy case. Furthermore, the Movants requests that this Court enter such other and further relief that this Court deems appropriate.

Dated this the _____day of March 2007.

    /S/ Robert B. Rubin
Robert B. Rubin
Derek F. Meek
Marc P. Solomon
Attorneys for Tatonka Capital Corp.
BURR & FORMAN LLP
420 North 20th Street, Suite 3100
Birmingham, Alabama 35283-0719
Phone:    (205) 251-3000
Facsimile:    (205) 458-5100

    /S/ Lawrence E. Rifkin
Lawrence E. Rifken
J. Eric Crupi
Attorneys For Integra Bank, National Association
McGuire Woods LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia 22102-4215
Phone:    (703) 712-5337
Facsimile:    (703) 712-5250

    /S/ Raymond V. Miller
Raymond V. Miller
Attorney for First National Bank & Trust Company of Williston
Gunster, Yoakley & Stewart P.A.
One Biscayne Tower, Suite 3400
Two South Biscayne Blvd.
Miami, Florida 33131
Phone:    (305) 376-6048
Facsimile:    (305) 376-6010

 /S/ William P. Wassweiler  
William P. Wassweiler  
Attorney for American Bank of St. Paul  
Rider Bennett, LLP  
33 South 6th Street  
Suite 4900  
Minneapolis, MN 55402  
Phone:        (612) 340-7973  
Facsimile:    (612) 337-7573

## CERTIFICATE OF SERVICE

      I hereby certify that on March 8, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or by US Mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      By:    /S/ Raymond V. Miller
            Raymond V. Miller

**Service List**

Louis J. Pearlman
Chaine du Lac
12488 Park Avenue
Windmere, FL  34786

Trans Continental Airlines Inc.
127 West Church Street, Suite 350
Orlando, Florida  32801

United States Trustee
135 W. Central Blvd., Suite 620
Orlando, Florida  32801

First International Bank & Trust
c/o Robert F. Higgins, Esq.
Jason Ward Johnson, Esq.
Lowndes, Drosdick, Doster, Kantor and Reed, PA
215 North Eola Drive
Orlando, Florida  32802

Orange Bank of Florida
c/o Marc D. Chapman, Esq.
PO Box 2346
Orlando, Florida  32802-2346

Bank of America, N.A.
c/o Bradley M. Saxton, Esq.
Winderweedle, Haines, Ward & Woodman, P.A.
390 North Orange Avenue, Suite 1500
Orlando, FL  32802-1391.

MIAMI 442921.1