# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

In re

**LOUIS J. PEARLMAN, et al.,**

Debtors.

**Case No. 6:07-BK-00761-ABB**
**Chapter 11**
**Jointly Administered**

_____/

**TRUSTEE'S EMERGENCY MOTION DIRECTED TO RECA RENE CHAMBERLAIN SEEKING: (I) TO COMPEL ANSWERS TO NUMEROUS DEPOSITION QUESTIONS; (II) TO COMPEL COMPLIANCE WITH COURT ORDERS IN REGARD TO DOCUMENT PRODUCTION; (III) TO CONDUCT AN IN-CAMERA INSPECTION OF ALLEGEDLY PRIVILEGED DOCUMENTS; (IV) TO APPOINT A COMPUTER EXPERT TO INSPECT, COPY AND SEARCH COMPUTERS; AND (V) FOR IMPOSITION OF SANCTIONS, INCLUDING CONTEMPT OF COURT**

### (Emergency Hearing Requested)

Soneet R. Kapila, the Chapter 11 Trustee (the "Trustee") for the bankruptcy estate of Louis J. Pearlman ("Debtor"), by and through undersigned counsel, hereby files his Emergency Motion directed to Reca Rene Chamberlain, Esq. ("Chamberlain") seeking: (i) to compel Chamberlain to answer numerous deposition questions; (ii) to compel Chamberlain to comply with this Court's August 21, 2007 order granting Trustee's Motion to Compel Deposition, Subpoena Compliance and for Sanctions ("August 21, 2007 Order" or "Document Order"); (iii) to conduct an in-camera inspection of unopened mail allegedly belonging to one or more of the Debtors which Chamberlain baselessly claims are protected by the attorney-client privilege; (iv) to appoint a computer expert and compel Chamberlain to immediately produce her laptop computer, back-up disks and other electronically stored information ("ESI") devices to the expert for inspection, forensic copying[1] and

---

[1] A "forensic copy" is an exact copy of the entire physical storage media, including all active and residual data and unallocated space on the media. This is also sometimes called an "image copy" or "mirror image." _See The Sedona Conference Glossary: e-Discovery & Digital Information Management, The Sedona Conference Working Group Series_, May 2005.

search; and (v) for the imposition of sanctions, including specifically finding Chamberlain in contempt of court (the "Motion"), and states as follows:

## I. <u>INTRODUCTION</u>

1.     To date, attorney Chamberlain has engaged in a pattern of outrageous and contemptuous conduct that is and has been designed to obstruct, frustrate, impede, delay and prevent the Trustee and the creditors of these bankruptcy estates from (i) diligently pursuing their investigation into the financial condition of the Debtors, and (ii) identifying, locating and recovering hundreds of millions of dollars fraudulently obtained by Louis Pearlman and his various entities from the creditors of these estates.  As set forth below in detail, Chamberlain's conduct throughout this process has been incredible and reprehensible, in particular given that she is a member of the Florida Bar!

2.     Having given Chamberlain every legitimate chance to rectify her contemptuous conduct to no avail, the Trustee, by this Motion, is left with no choice but to seek this Court's intervention through the entry of an order compelling attorney Chamberlain: (a) to answer deposition questions where she frivolously and frequently invoked the attorney-client privilege and otherwise claimed on numerous occasions not to recall even very recent events of critical importance to the Trustee's efforts in these cases; (b) to comply with the Document Order, and produce responsive documents to the Trustee; (c) to immediately produce to a Court-appointed computer expert for inspection, forensic copying, and search that certain laptop computer that Chamberlain used in her law practice that contains emails and documents responsive to the Trustee's subpoena and the Document Order, which computer Chamberlain alleges was stolen from her possession on or about August 9, 2007 (which was after she failed to show up for her scheduled deposition in these cases); or explain to this Court the circumstances that surround the alleged theft of such computer;

(d) to immediately produce to a Court-appointed computer expert for inspection, forensic copying, and search the approximately 15 or 16 computer back-up discs that Chamberlain has in her possession that contain information from the allegedly stolen computer pursuant to the procedure outlined below; (e) to immediately produce to a Court-appointed computer expert for inspection, forensic copying, and search the laptop computer that Chamberlain claims she purchased after the alleged theft of her original lap top computer, pursuant to the procedure outlined below; (f) to immediately produce to a Court- appointed computer expert for inspection, forensic copying, and search any other computers, or other ESI storage devices in her possession or control, including, without limitation, blackberries, telephones, PDAs, flash drives, thumb drives, hard drives, disks or diskettes, pursuant to the procedure outlined below; and (g) to find Chamberlain in contempt of this Court and the Document Order, the sanctions for which should be immediate compliance with the Trustee's requested relief above and sitting for a further deposition upon such compliance,[2] failing which the Trustee requests that this Court issue a bench warrant for Chamberlain's arrest and incarcerate her until such a time as she purges such contempt.  Given Chamberlain's reprehensible conduct to date and her flaunting of this Court's authority and the Trustee's efforts in this case, the Trustee believes that the full exercise of this Court's powers is the only way to make it clear to Chamberlain that the Court will not tolerate or condone in any manner such conduct.

3.    Additionally, the Trustee would request that the Court conduct an in-camera inspection of unopened mail addressed to one or more of the Debtors turned over to the Trustee which Chamberlain remarkably claims is protected under a blanket attorney-client privilege.

---

[2] Based upon the egregious conduct of Chamberlain described herein, the only meaningful way to elicit deposition testimony from Chamberlain is for this Court to preside over her continued deposition.

## II. **FACTS SUPPORTING MOTION**

4.      On March 1, 2007, Integra Bank, National Association, Tatonka Capital Corporation, American Bank of St. Paul, and First National Bank & Trust Company of Williston (collectively, the "Petitioning Creditors") initiated this proceeding by filing against Louis J. Pearlman an involuntary petition under Chapter 11 of the United States Bankruptcy Code.

5.      On March 8, 2007, the Petitioning Creditors filed an emergency motion for appointment of a Chapter 11 Trustee (Dkt. No. 6).

6.      Subsequently, on March 16, 2007, this Court entered an Order Directing the Appointment of Chapter 11 Trustee (Dkt. No. 26).

7.      On March 27, 2007, the Trustee received from the office of the United States Trustee notification of his appointment as Chapter 11 Trustee in this proceeding.

8.      The Trustee has discovered that Chamberlain recently served as counsel to Pearlman and other related Debtor entities on various matters and, as such, is in possession of documents related thereto, including in respect of assets of the Debtors.  Further to the Trustee's efforts to obtain all records related to the affairs of the Debtors, as well as investigate fully all potential assets and claims the estates may have, on April 11, 2007, the Trustee served Chamberlain with a turnover demand letter.  *See* Exhibit 1 attached hereto.

9.      Having received no response to his turnover demand, on April 24, 2007, the Trustee sent Chamberlain a follow-up letter again demanding turnover of the documents and information related to her representations of the Debtors. *See* Exhibit 2 attached hereto.

10.      Based upon the lack of response to such demand letters, the Trustee filed a Motion to Compel Turnover of Documents Relating to Property of the Estate ("Motion to Compel") against Chamberlain.  *See* Composite Exhibit 3 attached hereto. On July 16, 2007, this Court entered an

4

Order granting the Motion to Compel as it related to Trans Continental Airlines, Inc. and denied it without prejudice as to the Debtor. *See* Composite Exhibit 4 attached hereto. The Debtor, upon information and belief with the assistance of Chamberlain, faxed a *pro se* objection to the Court asserting his objection to the production of documents based upon the attorney-client privilege and Fifth Amendment right against self incrimination. The Debtor has never filed any such objection to any other party in connection with the production of documents.

11.    In connection with his investigation, the Trustee also issued a 2004 examination notice and  Subpoena on Chamberlain seeking her deposition and the production of documents in connection therewith, which Subpoena was properly served upon Chamberlain. A true and correct copy of the Subpoena is attached hereto as Exhibit 5.

12.    In fact, both the date and time for deposition and production were agreed to in advance by Trustee's counsel and Chamberlain. *See* Exhibit 6 attached hereto. The deposition was agreed to commence on August 3, 2007, with documents to be produced on July 30, 2007.

13.    Despite this agreement, Chamberlain failed to produce documents or otherwise respond to the Subpoena and, without giving any kind of notice, Chamberlain failed to appear for the agreed-upon deposition on the agreed upon date.

14.    After waiting for an hour and hearing nothing from Chamberlain, a Certificate of Non Appearance was taken at the deposition. *See* Exhibit 7 attached hereto. Thereafter, the Trustee filed his Motion to Compel Deposition, Subpoena Compliance, and for Sanctions against Chamberlain ("Motion to Compel"), which Motion to Compel was granted in the August 21, 2007 Order. A true and correct copy of the Motion to Compel and August 21, 2007 Order are attached hereto as Exhibits 8 and 9.

15.    Specifically, the August 21, 2007 Order required Chamberlain to:

a.    produce within 7 days all responsive documents to the Trustee's Rule 2004 Examination and Subpoena Duces Tecum dated July 10, 2007 (the "Subpoena");

b.    produce within 7 days a privilege log; and

c.    appear for her deposition.

16.    On August 21, 2007, Chamberlain was served via email and U.S. Mail with the August 21, 2007 Order. *See* Exhibits 9 and 10 attached hereto. In addition, the Trustee served Chamberlain with a Second Notice of Rule 2004 Examination. *See* Exhibit 10 attached hereto. Despite this Court's clear instructions, Chamberlain failed to produce any documents or a privilege log as required by the August 21, 2007 Order by the dates set forth therein.

17.    On September 7, 2007, the Trustee finally conducted the 2004 examination of Chamberlain. At the beginning of the scheduled deposition, Chamberlain provided an incomplete privilege log (the "Privilege Log") to the Trustee's counsel in a feeble attempt to comply with the Court's Document Order. A true and correct copy of the Privilege Log is attached hereto as Exhibit 11.

18.    The Privilege Log is comprised mostly of unopened mail forwarded to Chamberlain after Pearlman fled this jurisdiction, including mail sent to Pearlman by counsel to the Trustee.[3] Without any specific legal basis or authority, Chamberlain amazingly takes the position that each of these items of unopened mail (including packages from Trustee's counsel to Pearlman) are protected by the attorney-client privilege. Unable to reach resolution on the privilege assertion at the deposition with Chamberlain, the Trustee, in order to secure these items, agreed with Chamberlain to hold the unopened mail in a secure box until such time as this Court can conduct an in-camera inspection of such items to determine whether Chamberlain's assertion of the attorney-

---

[3] Apparently, after Pearlman fled the jurisdiction, Chamberlain incredibly caused all of Pearlman's mail to be forwarded to her attention through the U.S. Post Office.

client privilege is justified.

19.    More importantly, throughout the course of the 2004 examination, Chamberlain continually refused to answer scores of legitimate questions posed by the Trustee's counsel based upon the assertion of the attorney-client privilege.  The instances of assertion of the attorney-client privilege are too numerous to list in this Motion.  The Trustee requests that the Court review the transcript of the deposition attached hereto as Exhibit 12.  However, to facilitate the Court's analysis, below are excerpts from Chamberlain's deposition which reflect the baseless and outrageous nature of her stonewalling conduct:

Page 20-21:
Lines  21 Q.  Okay. And you have a retention letter with
       22       Mr. Pearlman?
       23 A.  I have a retention agreement, yes.
       24 Q.  Can you provide a copy of that to us?
       25 A.  Not to you. It's privileged. I'll be glad to
                show it to the judge in camera.

_____

Page 23:
Lines   7 Q.  And did you represent Mr. Pearlman after
        8       February of this year in any other matter besides the
        9       state investigation against him?
       10 A.  Probably, yes.
       11 Q.  Okay. And what did you represent him in?
       12 A.  That's -- that's confidential.
       13       Attorney-client privilege.
       14 Q.  I don't want --
       15 A.  It's attorney-client privilege.
       16 Q.  Just to be clear, Ms. Chamberlain, I don't
       17       want you to tell me any conversations that you had with
       18       Mr. Pearlman. I'm just asking you what matters you
       19       represented him.
       20 A.  Those –
       21 Q.  You've already testified that you represent
       22       him in state investigation.
       23 A.  Right.
       24 Q.  Do you represent him in any litigation
       25       matters?

7

Page 24:
Lines  1 A.    Not anything that's public record.
       2 Q.    Okay. Tell me what it is.
       3 A.    I cannot do that. It's attorney-client
       4        privilege. It's all I can tell you. It's just
       5        various -- various matters.
       6 Q.    Ms. Chamberlain, facts are not privileged. If
       7        you represented him --
       8 A.    Representation is privileged unless it's
       9        public -- on the public record or unless it's to my
      10        client's benefit to reveal that representation, and at
      11        this point I don't feel that it's to his benefit.
      12 Q.    I got to tell you that's just not the law in
      13        Florida. I mean, you've already testified that you
      14        represented him in a state investigation.
      15 A.    I have already -- you've asked and answered.
      16        I've stated attorney-client privilege is my basis in my
      17        answer. We can't go any further than that.

---

Page 32:
Lines  3 Q.    Did you have to deal with anyone besides
       4        Mr. Pearlman in terms of these personal matters?
       5 A.    I've dealt with various CPA -- again,
       6        privileged information.
       7 Q.    What were the names of the CPAs?
       8 A.    It's privileged information, as far as I know.
       9 Q.    Ms. Chamberlain, the identification of a
      10        third-party accountant that you dealt with in connection
      11        with personal --
      12 A.    Who also has -- who also has a privilege.
      13 Q.    And let me be clear about my question to you.
      14        I don't want you to tell me any conversations that you
      15        had with the CPA in connection with his representation
      16        of Mr. Pearlman.
      17 A.    It's work product as well because he would be
      18        my expert witness; so it's not -- it's not being used in
      19        litigation, it's not discoverable.
      20 Q.    Okay. Ms. Chamberlain, what would he be the
      21        expert witness in?
      22 A.    He's not discoverable.
      23 Q.    What would he be the expert witness in?
      24 A.    It's not discoverable. It's attorney-client
      25        privilege.

Page 33:
Lines  1 Q.    Okay. You just testified that you --
       2 A.    Attorney --
       3 Q.    -- didn't have any civil litigation this year
       4        with Mr. Pearlman that you were representing him on, so
       5        where would you need the expert witness?
       6 A.    It is attorney-client privilege.
       7        Attorney-client privilege is what I have to -- have to
       8        assert.
       9 Q.    The identity of the accountant that you spoke
      10        to you believe is a confidential communication between
      11        you and your client?
      12 A.    Yes.
      13 Q.    You believe that the law supports that
      14        position?
      15 A.    I do.
      16 Q.    Was this accountant a local accountant?
      17 A.    I cannot answer that question without
      18        violating privilege, in my opinion.

---

Page 40:
Lines  11 Q.   Other than this accountant that you spoke to
      12        regarding these general matters that you represented
      13        Mr. Pearlman on this year, did you speak to any other
      14        third parties about your representation?
      15 A.    Again, attorney-client privilege and his
      16        assertion of his Fifth Amendment rights and work
      17        product.
      18 Q.    Well, you certainly can't assert his Fifth
      19        Amendment rights. I mean, that is something he invokes
      20        for himself.
      21 A.    Well, he's asserted those in documents filed
      22        with this court, is my understanding.
      23 Q.    Sure. I'm not deposing him right now, I'm
      24        deposing you.
      25 A.    Absolutely.

---

Page 41:
Lines  1 Q.    So you can assert your Fifth Amendment right,
       2        but you can't assert his.
       3 A.    I don't have any to assert. My position is
       4        attorney-client privilege and work product.

Page 57:
Lines 11 Q.   Okay. Well, "basically" doesn't tell me that
        12      that's -- I need to know every place the documents are
        13      located. "Basically" tells me that there's more than
        14      one location besides what you've identified. I want to
        15      know all of them.
        16 A.   I assert my attorney -- my client's attorney
        17      privilege.

20.     Even more troubling, Chamberlain testified that the laptop computer which contains responsive documents to the Subpoena was lost and/or stolen approximately 10 days after her originally scheduled deposition and 2 weeks after the original return date for production of documents. According to Chamberlain, she did not know where the computer was lost or stolen on August 9, 2007 and it could have been lost or stolen in no less than three different cities in the state. Chamberlain also testified that she did not file a police report for fear of being charged with filing a false police report.  The circumstances surrounding the alleged theft of the laptop computer are very suspicious, in particular given that it occurred after she was required to produce documents to the Trustee and after her original deposition.  The Trustee has a serious concern as to whether Chamberlain has engaged in the destruction of documents and/or the spoilation of evidence in an effort to impede the Trustee's discharge of his obligations and to obstruct justice.[4]

21.     Chamberlain further testified that she "backed-up" her laptop with approximately 15-16 disks which are currently in her custody and control.  At her deposition, the Trustee attempted to work with Chamberlain to develop an acceptable method to secure and preserve the information contained on such disks which relate only to the Debtors.  The Trustee offered several possible alternatives, including delivery of the disks to the Court for an in-camera inspection.  In all instances, Chamberlain simply refused the Trustee's efforts to secure and preserve this information, claiming that she was protecting the attorney-client privilege.  The following is an example of the Trustee's rebuked good-faith efforts to work out these issues with Chamberlain:

---

[4] The Trustee is currently contemplating making his own criminal referral of Chamberlain.

Page 131
Lines  2 Q.    What we if we were to do this. What if we
        3         were just to make a copy of your backup discs and
        4         deposit them with the bankruptcy court until ordered?
        5 A.    No. The bankruptcy is not entitled to my
        6         other clients' information, period. These clients have
        7         nothing to do with this case, are not associated with
        8         this case in any way. It is completely improper for the
        9         bankruptcy court to have access to their personal
       10         information. Judge Briskman has nothing to do -- these
       11         people are not parties. They have no association with
       12         this case, no association with Mr. Pearlman. I have
       13         already told you, this is --
       14 Q.    I appreciate your concerns --
       15 A.    You're not going to have my whole disc, no.
       16 Q.    I appreciate your concerns. Here's my
       17         problem.
       18         MR. GARNO: Go ahead.
       19         MR. KAPILA: No, after you.
       20         BY MR. GARNO:
       21 Q.    And here's what my concerns are: Is that you
       22         haven't complied with a couple court orders that are out
       23         there; and on top of that, is that there's information
       24         that you should have produced to us in connection with
       25         the first deposition that you agreed to attend that is

Page 132
Lines  1         now lost because your laptop has disappeared; and we
        2         have concerns -- and I don't think that by keeping the
        3         integrity of the discs --
        4 A.    I really don't care what your concerns are. I
        5         care about my other clients, and you will not have
        6         access to those discs, period. I've already made --
        7         MR. KAPILA: Can I ask a question?
        8 A.    I've already made accommodation and told you
        9         when they are -- when I can get them to where they're
       10         working, I will make you a copy of what's on there
       11         regarding Mr. Pearlman, the Trans Continental Companies.
       12         Mr. Pearlman's personal is still going to be completely
       13         confidential and that will be for the judge to decide.
       14         But my other clients will not be exposed to
       15         you or any of -- or even the judge. He has no right to
       16         their information. They have an absolute right to be
       17         protected to their confidentiality. They have nothing
       18         to do with this lawsuit.

11

19    MR. KAPILA: Well, look, my goal -- let's look
20    at our goals here.
21    THE WITNESS: I don't really care what your
22    goal is.

22.    Even more troubling and yet another example of Chamberlain's obstructionist conduct, Chamberlain testified that she had in her possession in May or June of this year (after the petition date) a banker's box of financial records of Pearlman that she delivered to a man she did not know at Pearlman's request.  Chamberlain testified that Pearlman contacted her and directed her to take such financial records to a person who would contact her.  She testified that she was contacted by a man with a British or Australian accent and that she thereafter met the man on the side of a road, where she delivered the box of financial records to him.  She did not keep a copy of such records, she did not know the man's name, she does not know or remember the man's phone number or for that matter anything other than he had a British or Australian accent.  It is incredible to believe that Chamberlain delivered these financial records to an unknown man on the side of the road during the pendency of these bankruptcies and after she had received two turnover demand letters from the Trustee and even possibly after the Trustee filed his first motion to compel.

### III.  LEGAL ARGUMENT AND CITATION TO AUTHORITY

#### A.    *There is no Privilege.*

23.    In order to invoke the attorney-client privilege, the following elements must be met: (1) where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; and (8) except the protection may be waived.  *Universal City Development Partners, Ltd. v. Ride and Show Engineering, Inc.,* 230 F.R.D. 688, 690 (M.D. Fla. 2005)(*quoting Int'l Tel. & Tel. Corp.*

*v. United Tel. Co.,* 60 F.R.D. 177, 184-85 (M.D. Fla. 1973))(citations omitted).

24.    "The attorney-client privilege does not protect disclosure of underlying facts; it merely protects the substance of the specific communication." *In re Alexander Grant & Co. Litigation,* 110 F.R.D. 545, 548 (S.D. Fla. 1986)(*quoting Upjohn Co. v. United States,* 449 U.S. 383, 394 (1981)).  Further, "the identity of a client or receipt of fees from a client are not normally within the attorney-client privilege." *Federal Trade Commission v. Cambridge Exchange, Ltd., Inc.,* 845 F.Supp. 872, 874 (S.D. Fla. 1993)(*citing U.S. v. Leventhal,* 961 F.2d 936 (11th Cir. 1992); *In re Grand Jury Proceedings 88-9,* 899 F.2d 1039 (11th Cir. 1990)).  Several courts have held that "billing records, hourly statements, and fee arrangements which do not reveal client communications are not protected by the attorney-client privilege." *Federal Trade Commission v. Cambridge Exchange, Ltd., Inc.,* 845 F.Supp. 872, 874 (S.D. Fla. 1993)(*citing P & B Marina, Ltd. Partnership v. Logrande,* 136 F.R.D. 50 (E.D.N.Y. 1991); *Real v. Continental Group, Inc.,* 116 F.R.D. 211 (N.D. Cal. 1986); *Thomas v. F.F. Financial, Inc.,* 128 F.R.D. 192 (S.D.N.Y. 1989)).  Despite the clarity of the law on these matters of privilege, Chamberlain refused to answer non-privileged questions. *See* paragraph 19.

25.    It is abundantly clear that the assertion of privilege by Chamberlain are baseless and made in bad faith.  Accordingly, Chamberlain should be compelled to answer the questions propounded by the Trustee before this Court.

### B.    *Chamberlain is in Contempt.*

26.    A party seeking a civil contempt order must prove by clear and convincing evidence that the alleged contemnor has violated a court order. *In re Jove Eng'g, Inc.,*  92 F.3d 1539, 1545 (11th Cir. 1996) citing *Jordan v. Wilson,* 851 F.2d 1290, 1292 n.2 (11th Cir. 1988); *In re Sun-Island Realty, Inc.,* 177 B.R. 391, 395 (Bankr. S.D. Fla. 1994); *In re Spanish River Plaza Realty Co., Ltd.,*

155 B.R. 249, 253 (Bankr. S.D. Fla. 1993) citing *CFTC v. Wellington Precious Metals, Inc.,* 950 F.2d 1525 (11th Cir. 1992). The moving party does not need to prove the alleged contemnor's intent because it is not a required element to establish contempt. *See Spanish River,* 155 B.R. at 253 citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187 (1949) and *In re Walters,* 868 F.2d 665, 668 (4th Cir. 1989). Civil contempt is a remedial sanction designed to obtain compliance with court orders or to compensate for damages resulting from non-compliance. *See In re Shore,* 193 B.R. 598, 601 (Bankr. S.D. Fla. 1996); *Spanish River,* 155 B.R. at 253 citing *Piambino v. Bestline Prods., Inc.,* 645 F. Supp. 1210, 1212 (S.D. Fla. 1986).

27.     A bankruptcy court's civil contempt powers are expressly granted to the bankruptcy court by Section 105(a) of the Bankruptcy Code, which authorizes the court to take any action "necessary or appropriate to enforce or implement court orders …" 11 U.S.C. § 105(a); *Jove,* 92 F.3d at 1546; *In re Mroz,* 65 F.3d 1567, 1571-72 (11th Cir. 1995); *In re Krypton Broad. of Ft. Pierce, Inc.,* 181 B.R. 657, 663 (Bankr. S.D.Fla. 1995) citing *Spanish River,* 155 B.R. at 251. In addition, civil contempt proceedings arising out of core matters are themselves core matters. *Krypton,* 181 B.R. at 663 citing *Spanish River,* 155 B.R. at 251. Moreover, this Court has clearly stated that it "agrees with those [courts] that hold that civil contempt powers are expressly granted to the bankruptcy court by 11 U.S.C. § 105 …" *Spanish River,* 155 B.R. at 251. Accordingly, this Court has jurisdiction to enter the relief sought by this Motion.

28.     Chamberlain continues and remains in violation of the August 21, 2007 Order by (a) failing to turn over all of her books and records; and (b) failing to fully cooperate with the Trustee and his requests for information regarding the Debtors and their assets and liabilities. Chamberlain's non-compliance is clear and convincing, which legally supports a finding that Chamberlain's conduct constitutes willful contempt of the Court's August 21, 2007 Order.

14

29.     The record clearly establishes that Chamberlain has not made a good-faith effort (in fact, none) to comply with this Court's August 21, 2007 Order.   Once a moving party makes a *prima facie* showing that a court order was violated, the burden of proof or persuasion shifts to the alleged contemnor to show a "present inability to comply that goes beyond a mere assertion of inability." *Shore,* 193 B.R. at 602 citing *U.S. v. Barnette,* 902 F. Supp. 1522, 1531 (M.D.Fla. 1995) (citing *Howard Johnson Co. v. Khimani,* 892 F.2d 1512, 1516 (11th Cir. 1990)). "Conduct evincing substantial, though not complete, compliance with the court order may be excused if such substantial compliance was made in good faith." *Shore,* 193 B.R. at 602 citing *Barnette,* 902 F. Supp. at 1532 (citing *U.S. v. Hayes,* 722 F.2d 723, 725 (11th Cir. 1984)).   Because Chamberlain has  not and cannot demonstrate any effort to comply with this Court's August 21, 2007 Order, a finding of civil contempt against Chamberlain is appropriate.

30.     In the instant case, the Trustee seeks (i) its reasonable attorneys' fees and costs incurred with bringing and prosecuting this Motion and related matters before this Court regarding Chamberlain's failure to comply with this Court's August 21, 2007 Order and failure to purge her civil contempt citation, and (ii) immediate compliance with the August 21, 2007 Order with a daily fine and/or incarceration of Chamberlain until compliance.   Bankruptcy Courts have held that "among the remedies available to the Court in a civil contempt proceeding is the ability to impose a fine payable to the complainant in compensation for damages sustained as a result of the contumacious conduct." *Krypton,* 181 B.R. at 665 citing *Spanish River,* 155 B.R. at 254 (citations omitted); *see also EEOC v. Guardian Pools, Inc.,* 828 F.2d 1507, 1515 (11th Cir. 1987); *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.,* 793 F.2d 1529, 1534 (11th Cir. 1956).

31.     The Eleventh Circuit Court of Appeals has made clear the power of Bankruptcy Courts to imprison a contemnor for failure to comply with Bankruptcy Court orders. *Goldberg v.*

*Lawrence (In re Lawrence),* 279 F.3d 1294 (11th Cir. 2002). "Once a proper showing of a violation of the order has been made, 'the burden of production then shifts to the alleged contemnor, who may defend his failure on the grounds that he was unable to comply . . . In order to succeed on the inability defense, the alleged contemnor must go beyond a mere assertion of inability and establish that he has made in good faith all reasonable efforts to meet the terms of the court order he is seeking to avoid.'" *Id.* at 1294 (quoting *Commodity Futures Trading Comm'n v. Wellington Precious Metals,* 950 F.2d 1525, 1529 (11th Cir. 1992)). Other courts have likewise found incarceration to be an appropriate remedy where monetary sanctions are unlikely to induce compliance or protect the interests of the debtor's estate. *See e.g., In re Frankel,* 192 B.R. 623, 631-632 (Bankr. S.D.N.Y. 1996).

32.    Chamberlain played a critical role with the Debtor and his related entities and, upon information and belief, has direct personal knowledge regarding the assets and affairs of Pearlman.

33.    This latest episode is the last in Chamberlain's apparent bad-faith attempt to thwart the Trustee from securing critical and valuable information for the administration of this estate and discovery of assets. To the extent that Chamberlain fails to timely comply with the relief the Court, the Trustee would request this Court to enter an order directing the U.S. Marshal to incarcerate Chamberlain and also pick up the files and electronic data identified herein.

### C.    In-Camera Inspection

34.    Chamberlain and the Trustee agreed that the items (unopened mail) identified in the Privilege Log would be reviewed by this Court in camera to assess the validity of the privilege asserted by Chamberlain.[5] Accordingly, the Trustee would request this Court conduct an in-camera

---

[5]  Clearly, there are many items on the Privilege Log which cannot be privileged. For example, Chamberlain asserts attorney-client privilege for mail sent by non lawyers and counsel for the Trustee.

inspection of the items listed on the Privilege Log and being held by the Trustee.

**D.    *Court Appointment of a Computer Expert to Inspect, Copy and Search Chamberlain's Computers, Back-Up Information, and other ESI Storage Devices.***

35.    Moreover, the Trustee has significant spoilation concerns with Chamberlain.  It is apparent from her testimony that Chamberlain's laptop and back-up disks contain documents and information pertaining to estate matters, and that she is attempting to hide this information from the Trustee. For this reason, the Trustee would like to have an independent computer forensics expert (hereinafter "Expert") appointed to serve as an Officer of the Court to inspect, and make a forensic copy of Chamberlain's computer, back-up disks, and any other ESI devices within her possession or control, and then search these copies for relevant information.

36.    The Trustee proposes that the Court appoint Andrew Reisman, the owner and president of Litigex, Inc., to serve as the Expert to carry out the inspection, copying, search and disclosure specified here.  Mr. Reisman is an attorney, formerly with the Foley & Lardner firm in Chicago.  He is also a nationally recognized computer expert with extensive experience in the forensic examination of computers and other ESI storage devices.  A copy of Mr. Reisman's resume is attached hereto as Exhibit 13.  He has no affiliation with the Trustee, or the Trustee's attorneys, and will act as an independent neutral to carry out the orders of the Court.  A copy of Mr. Reisman's standard Master Services Agreement and Rates Schedule is also attached as Exhibit 14.  The Trustee seeks permission of the Court to retain Mr. Reisman, and his company, Litigex, pursuant to the terms of this agreement and this Court's orders governing the Expert's activities as an Officer of the Court.  The Trustee will assume ultimate responsibility for the payment of the Expert's fees, but seeks an award from Chamberlain for reimbursement or payment of all such fees and costs.

37.    The Expert's inspection, copying, search and disclosures would be conducted pursuant to the following procedure to preserve the privacy rights and privileges of Chamberlain and

any third parties, other than the Debtor and his related entities, whose information may be included

on the computers and other ESI devices:

a.  The inspection, forensic copies, searches and disclosure shall be made by Mr. Reisman, or other computer specialist appointed by the Court, and assistants within his supervision.

b.  The Expert shall maintain the electronic information, other than the Debtor and his related entities, copied in strict confidentiality, and shall not disclose this information to any third parties except pursuant to this and further orders of the Court.

c.  The Expert's review of privileged ESI, other than that of the Debtor and his related entities, shall not constitute a waiver of that privilege.

d.  The Expert shall inspect and make a forensic copy of all of Chamberlain's computers, back-up disks, and any other ESI devices, and shall maintain exclusive control and custody of those copies pursuant to the terms of this order or further order of this Court.

e.  Chamberlain shall cooperate fully to facilitate the Expert's services hereunder, and the originals of the computers, back-up disks, and any other ESI devices shall be promptly returned to Chamberlain's control upon the Expert's completion of his inspection and copying.

f.  Within ten days of the inspection and copying of each item of computer equipment produced by Chamberlain, the Expert shall provide the parties with a report describing the computer equipment Chamberlain produced and the Expert's actions with respect to each piece of the equipment. This report shall include a detailed description of each piece of computer equipment inspected and copied by the Expert, including the name of the manufacturer, model number and serial number wherever possible.

g.  Once the Expert has created forensic copies of Chamberlain's' computers, back-up and other ESI devices, he shall search and recover from the copies all available word-processing documents, incoming and outgoing email messages, text messages, PowerPoint or similar presentations, spreadsheets, web files, and all other non-program information files, including but not limited to those files that were "deleted" or encrypted or otherwise made difficult to locate or access. The Expert shall then search these files to determine which contain information that in any way relates to the debtor or his related entities. This shall be broadly construed pursuant to Rule 26(b)(1), Fed.R.Civ.P. The Expert may consult with the Trustee's attorneys as needed to conduct this responsiveness search, but may not disclose the contents of the information at this stage of the investigation.

h.  After the recovery and responsiveness search has been completed, the Expert shall provide to Chamberlain a copy of the electronic documents recovered that the Expert determined may relate to the debtor or his related entities. The Expert at this time

shall also provide to Chamberlain and the Trustee a description of the responsive files delivered to Chamberlain, showing the computer names of the files, where they were originally located, the type and character of ESI involved, and to the extent possible, when any files were created, accessed, copied, or deleted, and information about the deletion, or any deleted files that could not be recovered, or information as to any files that were disguised, encrypted or pass word protected.  The Expert shall also provide the Trustee with notice of when the set of responsive documents and data were provided to Chamberlain.

i.      Within ten days of the receipt of the responsive documents and data, Chamberlain shall complete a review of the records for privilege.  Chamberlain shall then at that time immediately produce to the Trustee all documents and other ESI that the Expert produced to her, except only those documents that she claims are privileged.  As to any documents that Chamberlain claims a privilege, she shall at that time also produce a full and complete privilege log.  The log shall list each file to which she claims a privilege, and as to each shall expressly and in detail describe "the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P.26(b)(5)(A).

j.      Once the Trustee has reviewed the documents produced by Chamberlain, as well as the privilege log, if the Trustee raises a dispute as to any of the documents by providing a cogent basis for doubting the claim of privilege, or for believing that there are further relevant documents, the Trustee would request this Court to conduct an in-camera inspection on an expedited basis.

The basic procedure specified above is commonly employed by District Courts to provide fair and reasonable safeguards of privacy rights and privileges in a forensic examination of computers. *See Playboy Enterprises, Inc. v. Welles*, 60 F. Supp.2d 1050 (S.D. Ca. 1999).

**E.      *Request for a Criminal Referral*.**

38.     18 U.S.C. §3057 provides that:

> any judge ... having reasonable grounds for believing that any violation under chapter 9 of this title or other laws of the United States relating to insolvent debtors ... has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States attorney all facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed.

39.     It has been recognized that the standard of reasonable grounds for believing that a

violation has been committed is not as stringent as that required to believe a crime has in fact occurred.  *In re Parr,* 13 B.R. 1010 (E.D. N.Y. 1981).  In addition, it is well established that a party's intent may be inferred from surrounding facts and circumstances, and need not be based upon direct evidence.  *Id.* at 1021.

40.     After an examination of the entire record before this Court, it appears that Chamberlain: (i) willfully violated orders relating to the administration of this estate; (ii) obstructed justice; (iii) willfully disregarded and destroyed estate records; and (iv) perjured herself. Accordingly, the Trustee would request that this Court transfer the relevant Court papers to the U.S. Trustee's Office for the Middle District of Florida for referral to the U.S. Attorney for an appropriate investigation.  It is the Trustee's intent to make a similar criminal referral against Chamberlain.

## IV.  **<u>CONCLUSION</u>**

41.     As is evident by the facts set forth herein, Ms. Chamberlain's actions are tantamount to bad faith and she should be sanctioned accordingly.  For the foregoing reasons, the Trustee respectfully requests the Court to enter an order appointing Andrew Reisman as a neutral Expert and Officer of the Court as specified above, and compelling Ms. Chamberlain to (i) compel answers to deposition questions; (ii) comply with this Court's August 21, 2007 Order; (iii) conduct an in-camera inspection of unopened mail belonging to the Debtor; (iv) to immediately produce her laptop, back-up disks and any other computers or other ESI storage devices within her possession or control for inspection and forensic copying by the Court appointed Expert pursuant to the procedures specified above; (v) that Chamberlain should be sanctioned for her contemptuous and bad-faith conduct; (vi) and award the Trustee his attorney's fees and costs in connection with Ms. Chamberlain's failure to comply with this Court's  August 21, 2007 Order, including, without limitation, an award of the future reasonable fees and costs incurred by the services of the Court appointed Expert.

WHEREFORE, the Trustee respectfully requests the Court grant the relief requested herein and for any other relief the Court deems appropriate.

/s/ Gregory M. Garno
Paul J. Battista, Esq.
Florida Bar No. 884162
Gregory M. Garno, Esq.
Florida Bar No. 087505
**GENOVESE, JOBLOVE & BATTISTA, P.A.**
100 SE 2nd Street, 44th Floor
Miami, Florida  33131
Phone:  (305) 349-2300
Fax:  (305) 349-2310
**Attorneys for Soneet R. Kapila,**
**Chapter 11 Trustee**

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic mail, email and/or facsimile and/or U.S. Mail this ___18___ day of September 2007 to all parties listed on the attached Service List.

_____/s/ Gregory M. Garno_____
Gregory M. Garno

Label Matrix for USBC
Middle District of Florida
Case 6:07-bk-00761-ABB
Tue Sep 18 15:05:09 EDT 2007

American Bank of St. Paul
c/o Lynn James Hinson
PO Box 2346
Orlando, FL 32802-2346

American Bank of St. Paul
c/o William P Wassweller
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402,

American Express Bank FSB
c/o Becket & Lee LP
PO Box 3001
Malvern, PA 19355-0701

American Express Bank FSB
c/o Becket and Lee LLP
POB 3001
Malvern PA 19355-0701

American Express Centurion Bank
c/o Becket & Lee LLP
PO Box 3001
Malvern, PA 19355-0701

American Express Travel
Related Services Co Inc
c/o Becket & Lee LLP
PO Box 3001
Malvern, PA 19355-0701,  19355-0701

American Express Travel Related
Svcs Co Inc Corp Card
c/o Becket & Lee LLP
PO Box 3001
Malvern, PA 19355-0701,  19355-0701

Thomas O Ashby
Baird Holm LLP
1500 Woodmen Tower
Omaha, NE 68102-2068

Backstreet Boys & Affiliated Entities
co Jason L Turner Esq
Lassiter Tidwell et al
150 Fourth Ave N Ste 1850
Nashville TN 37219,

Backstreet Boys/Michael Oppenheim
Clay Townsend - Morgan & Morgan PA
20 N Orange Ave Ste 1600
Orlando, FL 32801

Baeza Jewelers, LLC
c/o Paul H McLester
100 South Orange Avenue
Suite 200
Orlando, FL 32801,

Peggy McNew Ballweg
Echevarria, Codilis & Stawiarski
PO Box 25018
Tampa, Fl 33622

Paul J Battista
Genovese Joblove & Battista PA
100 Southeast 2nd Street
44th Floor
Miami, FL 33131

Belle Harbor Owner's Assoc Inc
co Michael J Brudny
200 North Pine Ave Ste A
Oldsmar FL 34677

Bradley M Saxton
a/f Bank of America, NA
390 North Orange Ave Ste 1500
PO Box 1391
Orlando, FL 32802-1391,  32802-1391

Michael J. Brudny
Brudny & Rabin PA
200 North Pine Avenue Suite A
Oldsmar, FL 34677

Brudny & Rabin, PA
Michael J Brudny
200 North Pine Ave Ste A
Oldsmar, FL 34677-4613

Andrew M. Brumby
Shutts & Bowen LLp
Post Office Box 4956
Orlando, FL 32802

Marc D Chapman
Dean Mead
Post Office Box 2346
Orlando, FL 32802

CitiCapital
4650 Regent Blvd Ste #200
Irving, TX 75063

CitiCapital
c/o Leslie S. White
PO Box 3146
Orlando, FL 32802-3146

Monica L Clark
Dorsey & Whitney LLP
50 South Sixth St
Suite 1500
Minneapolis, MN 55402-1498

Colonial National Mortgage
c/o Peter E Lanning
9204 King Palm Drive
Tampa, FL 33619-1328

Countrywide Home Loans, Inc.
c/o Natalie K Curts
3185 South Conway Road Suite E
Orlando, FL 32812-7315

Ryan E Davis
Winderweedle Haines Ward & Woodman PA
Post Office Box 1391
Orlando, FL 32802

Denise D Dell-Powell
Akerman Senterfitt
Post Office Box 231
Orlando, FL 32802

Denise D. Dell-Powell, Esq.
Akerman Senterfitt
P.O. Box 231
Orlando, FL 32802-0231

Denise Dell-Powell Esq
AF Soneet R Kapila Ch 11 Tee
420 S Orange Ave 9th FL
PO Box 231
Orlando FL  32801,

Frederic J DiSpigna
The Law Offices of David J. Stern, PA
801 South University Drive
Suite 500
Plantation, FL 33324

Donald L. Gaffney
c/o Snell & Wilmer L.L.P.
400 E. Van Buren Street, Suite 1900
Phoenix, AZ  85004-2202

Ethan B. Minkin
c/o Snell & Wilmer L.L.P.
400 E. Van Buren Street, Suite 1900
Phoenix, AZ  85004-2202

Robert J Feinstein
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 36th Floor
New York, NY 10017


First National Bank and Trust
Company of Williston
c/o Richard P. Olson
PO Box 1180
Minot, ND 58702-1180,  58702-1180

Frances Bogal
12 David Drive
Syosset, NY 11791

Frederic J DiSpigna
Law Office of David J Stern, PA
801 S University Drive Ste 500
Plantation, FL 33324


Frederick T Lowe
Frederick T Lowe Esq PA
3907 Henderson Blvd Ste 200
Tampa, FL 33629-5761

Frederick T Lowe Esq
FL Law Group LLC
3907 Henderson Blvd Ste 200
Tampa FL 33629

Donald L Gaffney
One Arizona Center
400 East Van Buren
Phoenix, AZ 85004-2202


Gregory M Garno
Genovese Joblove & Battista PA
100 Southeast 2nd Street
Suite 4400
Miami, FL 33131

Suzanne E Gilbert
Holland & Knight LLP
Post Office Box 1526
Orlando, FL 32802

Gilbert Weisman
Becket & Lee LLP
POB 3001
Malvern PA 19355-0701


Gilbert Weisman
Becket & Lee LLp
POB 3001
Malvern PA 19355-0701

Gilbert weisman
Becket & Lee LLP
POB 3001
Malvern PA 19355-0701

Robert F Higgins
Lowndes, Drosdick, Doster, Kantor & Reed
215 North Eola Drive
Orlando, FL 32801


Lynn James Hinson
Dean Mead Egerton
Post Office Box 2346
Orlando, FL 32802

International Law Group, LLC
P.O. Box 10614
Tampa, Florida  33679

Jay D Passer
4100 W Kennedy Blvd Ste 322
Tampa, FL 33609


Jason Ward Johnson
Lowndes, Drosdick, Doster, Kantor & Reed
Post Office Box 2809
Orlando, FL 32802

Julian Benscher
c/o Andrew Brumby
PO Box 4956
Orlando, FL 32802-4956

Soneet R Kapila
Post Office Box 14213
Fort Lauderdale, FL 33302


Jill E Kelso
Akerman Senterfitt
Post Office Box 231
Orlando, FL 32802

Peter E Lanning
Law Office of Daniel C. Consuegra
9204 King Palm Drive
Tampa, FL 33619

Chris Lenhart
Dorsey & Whitney, LLP
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402-1498


Frederick T Lowe
Florida Law Group LLC
3907 Henderson Blvd. Suite 200
Tampa, FL 33629

Paul H McLester
Alvarez, Sambol, Winthrop & Madson, P.A.
100 South Orange Avenue
Second Floor
Orlando, FL 32801

Derek F Meek
Burr & Forman LLP
3100 SouthTrust Tower
420 North 20th Street
Birmingham, AL 35203


Michael Weininger
30 North LaSalle Street
Ste 3520
Chicago, IL 60602

Michael Weininger
Lupel Weininger LLP
30 N. LaSalle St., Suite 3520
Chicago, IL  60602

Raymond V Miller
Gunster Yoakley & Stewart PA
2 South Biscayne Boulevard
Suite 3400
Miami, FL 33131

Richard P Olson
Olson & Burns PC
Post Office Box 1180
Minot, ND 58702-1180

Pachulski Stang Ziehl Young
Jones & Weintraub LLP
Attn: Robert J Feinstein
780 Third Ave, 36th Floor
New York, NY 10017,  10017

Danielle N Parsons
Butler & Hosch PA
3185 South Conway Road
Suite E
Orlando, FL 32812

Jay D. Passer
Jay D Passer, PA
4100 W. Kennedy Boulevard, Suite 322
Tampa, FL 33609

Peggy G. Cook and Robin L. Cook
c/o Adrea Teves Smith
PO Box 24628
Lakeland, FL 33802-4628

Richard Blackstone Webber, II
315 East Robinson St Ste 600
Orlando, FL 32801

Lawrence E Rifken
McGuire Woods LLP
1750 Tysons Blvd.
Suite 1800
McLean, VA 22102

Robert J Feinstein Esq
Pachulski Stang Ziehl & Jones LLP
780 Third Ave 36th Floor
New York, NY 10017-2024

Robert B. Rubin
Burr & Forman LLP
3100 SouthTrust Tower
420 North 20th Street
Birmingham, AL 35203

Bradley M Saxton
Post Office Box 1391
Orlando, FL 32802

Sean van der Wilt
co Jason L Turner Esq
Lassiter Tidwell et al
150 Fourth Ave N Ste 1850
Nashville TN 37219,

Andrea Teves Smith
Peterson & Myers, PA
P O Box 24628
Lakeland, FL 33802-4628

Stanley Bogal
12 David Drive
Syosset, NY 11791

Miriam G Suarez
United States Trustee
135 West Central Blvd Suite 620
Orlando, FL 32801

Clay M Townsend
Morgan & Morgan PA
20 North Orange Avenue
Orlando, FL 32801

United States Trustee - ORL
135 W. Central Blvd., Suite 620
Orlando, FL 32801

Washington Mutual Bank
PO Box 44090
Jacksonville, FL 32231-4090

Washington Mutual Bank
c/o Susanne E Gilbert
PO Box 1526
Orlando, FL 32802

William P. Wassweiler
Rider Bennett LLP
33 South Sixth Street
Suite 4900
Minneapolis, MN 55402

Richard B Webber II
Zimmerman Kiser & Sutcliffe PA
315 East Robinson Street
Suite 600
Orlando, FL 32801

Michael Weininger
Lupel Weininger LLP
30 North LaSalle Street
Suite 3520
Chicago, IL 60602

Leslie S White
Rush, Marshall, Jones & Kelly, P.A.
Post Office Box 3146
Orlando, FL 32801