UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 6:07-bk-00761-KSJ |
| | ) | Chapter 7 |
| LOUIS J. PEARLMAN, *et al.*, | ) | Jointly Administered with |
| | ) | 6:07-bk-00762-KSJ |
| Debtors. | ) | 6:07-bk-00832-KSJ |
| | ) | 6:07-bk-01504-KSJ |
| | ) | 6:07-bk-01505-KSJ |
| | ) | 6:07-bk-01779-KSJ |
| | ) | 6:07-bk-01856-KSJ |
| | ) | 6:07-bk-02431-KSJ |
| | ) | 6:07-bk-02432-KSJ |
| | ) | 6:07-bk-04160-KSJ |
| | ) | 6:07-bk-04161-KSJ |

**MEMORANDUM OPINION DENYING MOTION FOR
SUBSTANTIVE CONSOLIDATION OF NON-DEBTOR ENTITIES**

Louis J. Pearlman and ten Pearlman-related entities are the debtors in these related cases which are both jointly administered and substantively consolidated. Several parties now seek to add numerous non-debtor entities to the cases relying on the legal theory of substantive consolidation. Because neither the Bankruptcy Code[1] nor any other legal authority allows for the substantive consolidation of non-debtor entities with bankrupt parties, the Court will deny the request.

Soneet Kapila is the Chapter 11 Trustee[2] appointed in these cases. He was appointed due to Pearlman's fraudulent acts in using the debtors to perpetrate a massive Ponzi scheme.[3] The trustee, attempting to recover monies to pay creditors, has filed hundreds of fraudulent conveyance adversary proceedings seeking to avoid millions of dollars of transfers made by the debtors to individuals, law firms, banks, and vendor defendants, alleging they received payments

---

[1] All references to the Bankruptcy Code refer to 11 U.S.C. §101 *et seq.*
[2] Doc. No. 26 (Order Directing Appointment of Chapter 11 Trustee).
[3] Doc. No. 228.

from the debtors without receiving reasonably equivalent value.[4] The trustee generally claims one Pearlman entity made transfers to an adversary proceeding defendant in repayment of *another* Pearlman entity's preexisting debts. Thus the payor arguably received no value in exchange for its payment, one of the crucial prongs of a constructive fraudulent transfer claim.[5] To avoid liability for these "wrong payor" claims, some defendants have moved to substantively consolidate not only the debtors but also other non-debtor, Pearlman controlled entities.

To insure all parties were given an opportunity to make a request for substantive consolidation, the Court previously set a deadline for anyone interested in substantively consolidating either the debtors only, or the debtors *and* Pearlman-related non-debtor entities to file the requisite motion.[6] Numerous motions were filed.[7] The Court quickly concluded that substantive consolidation of the *debtors* was appropriate due to the "inextricably interwoven state of the [d]ebtors' financial affairs and the costs associated with unwinding this financial mess."[8] The effect was to eliminate the trustee's "wrong payor" actions against defendants who received payment from one of the debtors on account of a liability owed to another debtor, because the *consolidated* estate will have received value in exchange for its transfer, and the consolidated estate will have realized a reduction in assets in exchange for its payment to the defendants.[9]

---

[4] Doc. No. 3365, in which the trustee alleges "certain Debtors (the "Paying Debtors") made transfers to pay the obligation of other Debtors. The Paying Debtors received no consideration for these transfers which they made on behalf of other Debtors. The Paying Debtors also made transfers to pay the obligations of certain non-debtors and received no consideration for these transfers which they made on behalf of the non-debtors."

[5] 11 U.S.C. § 548(a)(1)(B) sets forth the elements required to avoid a constructively fraudulent transfer, including that a debtor received less than reasonably equivalent value in exchange for such a transfer made within two years before filing a petition.

[6] Doc. No. 3186.

[7] Doc. Nos. 3245, 3246, 3250, 3253, 3265, 3266, 3267, 3269, 3271, 3272, 3273, 3276, 3277, 3278, 3279, 3281, 3284, 3285, 3286, 3289, and Doc. No. 484 in Case No. 6:07-bk-575-KSJ.

[8] Doc. No. 3487, page 2.

[9] Doc. No. 3489.

The issue remaining before the Court is whether to substantively consolidate the eleven now substantively consolidated debtors (the "Debtors") [10] with other Pearlman-related entities not in bankruptcy—the "Non-Debtors."[11] All of the requests to substantively consolidate the Non-Debtors with the Debtors are made by defendants of the trustee's fraudulent conveyance proceedings, arguing that the Debtors and Non-Debtors together consist of "one intertwined enterprise," and that substantive consolidation will reduce time and administrative costs associated with untangling their individual assets and liabilities.[12]

The trustee opposes any substantive consolidation of Non-Debtors largely because it would render the trustee's fraudulent conveyance adversary proceedings moot.[13] The trustee also argues substantive consolidation of Non-Debtors would dilute unsecured creditors' recovery due to the additional claims against the consolidated estate.[14] The trustee further claims the Non-Debtors have no available assets to contribute to pay creditor claims and their inclusion would

---

[10] The debtors in these jointly administered cases are: Louis J. Pearlman; Louis J. Pearlman Enterprises, Inc.; Louis J. Pearlman Enterprises, LLC; TC Leasing, LLC; Trans Continental Airlines, Inc. ("TCA"), Trans Continental Aviation, Inc.; Trans Continental Management, Inc.; Trans Continental Publishing, Inc.; Trans Continental Records, Inc.; Trans Continental Studios, Inc.; and Trans Continental Television Productions, Inc. (collectively, the "Debtors").

[11] Parties seek substantive consolidation of the following Non-Debtors with the Debtors: Planet Airways, Inc. (Doc. Nos. 3245, 3271, and 3284); Trans Continental Jet Shares, LLC (Doc. Nos. 3246, 3250, 3265, 3266, 3267, 3269, 3272, 3273, and Doc. No. 484 in F. F. Station); Trans Continental Talent (Doc. No. 3281); Trans Continental Media, Inc. (Doc. No. 3253); and a group of other non-debtor entities (including Fashion Rock, Trans Continental Entertainment, Trans Continental Pictures, Trans Continental, Inc., Trans Continental Companies, Trans Continental Leasing, Trans Continental Media, Backstreet Management, Trans-Action, Trans Continental Media, Shape, CD, and Trans Continental Talent)(Doc. No. 3271).

A related Pearlman entity, F.F. Station, LLC ("F.F. Station"), filed a separate Chapter 11 bankruptcy on February 20, 2007, case no. 6:07-bk-575-KSJ. The trustee did not seek joint administration of this case in its Motion for Joint Administration (Doc. No. 165), and the Court did not jointly administer the F.F. Station bankruptcy with the bankruptcies of the other Debtors in its Order Granting Motion for Joint Administration (Doc. No. 228). F.F. Station also was not substantively consolidated with the Debtors in the Court's Amended Order Granting Substantive Consolidation of the Joint Debtors' Estates (Doc. No. 3489 (note 2)). Due to factual distinctions between F.F. Station and the consolidated Debtors, the Court will address all motions to substantively consolidate F.F. Station with the Debtors (Doc. No. 3277 and Doc. No. 484 in case no. 6:07-bk-575-KSJ) at a later time. The Court will separately notice the hearing.

[12] See e.g., Doc. No. 3245, Exhibit A, pages 5-6. All of the defendants' motions for substantive consolidation rely on the receiver's report discussing the interwoven state of Pearlman's financial affairs. Report of Gerard A. McHale, Jr., Ex. A to Doc. No. 3250 (describing how all of Pearlman's companies shared books and records and transferred money without regard to corporate niceties).

[13] See Amended Memorandum Opinion Granting Substantive Consolidation of Joint Debtor Estates (holding substantive consolidation of Debtors rendered moot the trustee's claims of constructive fraud in its fraudulent conveyance action against Mercantile Bank)(Doc No. 3489).

[14] The Trustee estimates eliminating its constructive fraud avoidance actions against Defendants has the potential to reduce the estate's gross recovery for the estate by approximately $12 million.

simply increase administrative costs and reduce collections.[15]  Essentially, the trustee argues that substantive consolidation of the Non-Debtors would impose extra cost on the estate, reduce the overall recovery for the creditors, and benefit only the defendants in the related adversary proceedings.  The Court need not reach these factual issues, however, because, as a threshold legal issue, the Court concludes she simply lacks the authority to substantively consolidate the Non-Debtors.

Substantive consolidation of multiple debtors is not a new or novel concept.[16] Consolidation "involves the pooling of the assets and liabilities of two or more related entities; the liabilities of the entities involved are then satisfied from the common pool of assets created by consolidation."[17] Substantively consolidating debtors' claims simplifies the administration of interrelated bankruptcies by eliminating inter-company claims between related debtors and amalgamating duplicative claims "filed against related debtors by creditors uncertain as to where the liability should be allocated."[18]

The applicable test for substantive consolidation "requires a showing that (1) there is substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some benefit."[19] Once this prima facie showing is made, the burden shifts to an objecting party, usually a creditor, to show it relied on the separateness of one of the entities in extending credit, or that it will be prejudiced by the consolidation.[20] This analysis is an intense, fact-specific undertaking,[21] and courts must carefully consider requests for

---

[15] Doc. No. 3366 (Affidavit of Soneet R. Kapila, p. 6).
[16] *In re S & G Financial Services of South Florida*, 451 B.R. 573 (Bankr. S.D. Fla. 2011) (*citing In re MMH Automotive Grp.,* 400 B.R. 885 (Bankr. S.D. Fla. 2008) (Chapter 7 estates substantively consolidated); *Feltman v. Warmus (In re American Way Serv. Corp.),* 229 B.R. 496 (Bankr. S.D. Fla. 1999) (estates of debtor corporation and debtor subsidiary were substantively consolidated); *In re Vecco Constr. Indus.,* 4 B.R. 407 (Bankr. E.D. Va. 1980)(substantive consolidation of debtor and four debtor subsidiaries)).
[17]  *Eastgroup Properties v. Southern Motel Assoc., Ltd.,* 935 F.2d 245, 248 (11th Cir. 1991).
[18] *In re DRW Properties, Co*., 54 B.R. 489, 494 (N. D. Tex. 1985). See also *In re Bonham*, 229 F.3d 750, 764 (9th Cir. 2000).
[19] *Eastgroup*, 935 F.3d at 249.
[20] *Eastgroup* 935 F.3d at 249–50.
[21] *Id* at n.14.

substantive consolidation because of its potential, significant impact on parties' rights.[22] A bankruptcy court's power to substantively consolidate related bankruptcy cases stems from its equitable powers and is a remedy unique to bankruptcy.[23]

There is a split of authority, however, as to whether a bankruptcy court has the authority to substantively consolidate *non-debtors'* assets and liabilities into a bankrupt debtor's estate.[24] Some courts have granted motions to substantively consolidate debtors with non-debtors relying on § 105 of the Bankruptcy Code to "issue any order, process, or judgment that is necessary or appropriate to carry out the provision of this title,"[25] to assert personal and subject matter jurisdiction over non-debtors,[26] and to "ensure the equitable treatment of all creditors."[27]

Other courts reject the legal conclusion that § 105 grants bankruptcy courts the authority to substantively consolidate non-debtors, or, in other words, force entities to join the bankruptcy case whether they agree or not. These courts conclude that substantive consolidation is purely a bankruptcy remedy and does not extend to the assets and affairs of a non-debtor.[28] This Court agrees and declines to substantively consolidate the Non-Debtors.

---

[22] *In re Reider,* 31 F.3d 1102, 1109 (11th Cir. 1994); *In re Munford,* 115 B.R. 390, 398 (Bankr. N.D. Ga. 1990) (citing *In re Parkway Calabasas, Ltd.,* 89 B.R. 832, 836-37 (Bankr. C.D. Ca. 1988)).

[23] *In re Murray Industries, Inc.,* 119 B.R. 820, 829–30 (Bankr. M.D. Fla. 1990); Amended Memorandum Opinion Granting Substantive Consolidation of the Joint Debtors' Estates (Doc. No. 3489).

[24] *In re S & G Financial Services of South Florida*, 451 BR 573 (Bankr. S.D. Fla. 2011).

[25] 11 U.S.C. § 105(a).

[26] *In re Munford*, 115 B.R. at 397.

[27] *Id*. at 395 n.1 (citing *In re Flora Mir Candy Corp.*, 432 F.2d 1060, 1062 (2d Cir. 1970). See cases involving consolidation of debtors with non-debtors: *In re Bonham*, 229 F.3d 750, 765 (9th Cir. 2000) (citing *In re Creditors Serv. Corp.,* 195 B.R. 680 (Bankr. S.D. Ohio 1996); *Matter of New Center Hospital,* 187 B.R. 560 (E.D. Mich. 1995); *In re Munford, Inc.,* 115 B.R. 390 (Bankr. N.D. Ga. 1990); *In re Tureaud,* 45 B.R. 658 (Bankr. N.D. Okla. 1985), *aff'd,* 59 B.R. 973 (1986); *In re Crabtree,* 39 B.R. 718 (Bankr. E.D. Tenn. 1984); *In re Bolze*, 2009 WL 2232802 (Bankr. E.D. Tenn. July 23, 2009) (failing to draw a distinction between sub con and piercing the corporate veil); *In re Augie/Restivo Banking Co., Ltd.,* 860 F.2d 515 (2nd Cir. 1988); *Drabkin v. Midland-Ross Corp.* (*In re Auto-Train Corp.*), 810 F.2d 270, 276 (D.C. Cir. 1987)).

[28] See cases declining to substantively consolidate debtors and non-debtors: *In re Circle Land and Cattle Corp.,* 213 B.R. 870, 877–78 (Bankr. D. Kan. 1997) (citing *In re Alpha & Omega Realty, Inc.,* 36 B.R. 416 (Bankr. D. Idaho 1984)); *In re DRW Property Co.* 82, 54 B.R. 489 (Bankr. N.D. Tex. 1985); *In re R.H.N. Realty Corp.,* 84 B.R. 356 (Bankr. S.D.N.Y. 1988); *In re Julien Co.,* 120 B.R. 930 (Bankr. W.D. Tenn. 1990); *In re Lease–A–Fleet,* 141 B.R. 869 (Bankr. E.D. Pa. 1992); *In re Ira S. Davis, Inc.,* 1993 WL 384501 (E.D. Pa. September 22, 1993); *In re Hamilton,* 186 B.R. 991 (Bankr. D. Colo. 1995)). These decisions question whether bankruptcy courts have subject matter jurisdiction over non-debtor corporations for purposes of substantive consolidation on the basis that it is contrary to the Bankruptcy Code and its limitations for involuntary bankruptcy petitions under § 303.

First, §105 only gives bankruptcy courts the power to do what is necessary or appropriate to accomplish the goals of the Bankruptcy Code. The section does not give bankruptcy courts unfettered power. Bankruptcy courts cannot and should not simply drag unwilling entities that never chose to file bankruptcy into a bankruptcy forum simply because it is expedient and will help one party or another.

Second, allowing substantive consolidation of non-debtors under §105(a) circumvents the stringent procedures and protections relating to involuntary bankruptcy cases imposed by §303 of the Bankruptcy Code. Section 303 authorizes an involuntary petition of an entity, provided specific rules are followed to protect the putative debtor.[29] For example, a minimum claim amount is required to even initiate an involuntary proceeding.[30] If the movant clears this first hurdle, and the number of claimholders is significant, the movant must obtain a consensus of at least three other claimholders to ensure the action is supported and justified.[31] The stakes of hastily forcing a party into involuntary bankruptcy are high because if the protective requirements of § 303 are not met, a court can hold all petitioning creditors liable for costs, attorneys' fees, and damages.[32] Given the significant protections § 303 provides to debtors facing involuntary bankruptcy, and the lack of commensurate protections for substantive consolidation, "forcing a non-debtor into bankruptcy via substantive consolidation circumvents these strict requirements and is in contravention of [the Code]."[33] Section 105 of the Bankruptcy Code only allows a bankruptcy court to take actions "necessary or appropriate" to achieve a stated statutory goal. The section certainly does not and should not allow a bankruptcy court to circumvent statutory protections built into the code.

---

[29] 11 U.S.C. § 303.
[30] 11 U.S.C. § 303(b).
[31] 11 U.S.C. § 303(b) requires the consensus of at least three claimants. See *In re Ira S. Davis*, 1993 WL 384501, *7 (E.D. Pa. September 22, 1993); *In re Lease-A-Fleet, Inc.,* 141 B.R. at 873.
[32] 11 U.S.C. § 303(i); *In re Ira S. Davis*, 1993 WL 384501, *7 (E.D. Pa. September 22, 1993).
[33] *In re Ira S. Davis*, 1993 WL 384501 at *7. See also *In re Lease a Fleet*, 141 BR 869, 873 (Bankr. E.D. Pa. 1992).

Third, state law provides remedies for parties who can establish that a non-debtor entity truly is an "alter ego"[34] of a voluntary debtor. In essence, by piercing the corporate veil, the party proves that the two entities legally are the same, not two different entities. Therefore, they are not really debtor and non-debtor, but one.

Courts generally uphold the corporate form to maintain its limited liability purpose because "[e]very corporation is organized as a business organization to create a legal entity that can do business in its own right and on its own credit as distinguished from the credit and assets of its individual stockholders."[35] But, when corporate separateness is improperly disregarded such that a corporation and its subsidiary act as "mere instrumentalities" of each other, litigants may pierce the veil of a corporation's limited liability and hold a corporation's owners responsible for its debts.[36] To pierce the corporate veil under Florida law, the claimant has the heavy burden to prove, by a preponderance of the evidence, that:

> (1) the shareholder dominated and controlled the corporation to such an extent that the [corporation's] independent existence, was in fact non-existent and the . . . shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.[37]

Florida's high regard for corporate ownership requires a showing that the corporation was specifically organized or used to mislead creditors or to perpetrate fraud before a party can pierce a corporation's veil.[38] Absent such a showing, "every judgment against a corporation could be exploited as a vehicle for harassing the stockholders and entering upon fishing expeditions into

---

[34] *In re Hillsborough Holdings Corp.*, 166 B.R. 461 (Bankr. M.D. Fla.1994).

[35] *Dania Jai–Alai Palace, Inc. v. Sykes,* 450 So.2d 1114, 1120 (Fla. 1984)). See also *Anderson v. Abbott*, 321 US 349, 362 (1944).

[36] *Molinos Valle de Cibao*, 633 F.3d 1330 (11th Cir. 2011) (citing the seminal veil piercing case of *Dania Jai–Alai Palace, Inc. v. Sykes,* 450 So.2d 1114 (Fla. 1984)).

[37] *In re Hillsborough Holdings Corp.,* 166 B.R. 461 (Bankr. M.D. Fla. 1994) (citing *Dania Jai–Alai Palace, Inc. v. Sykes,* 450 So.2d 1114 (Fla. 1984); *Mobil Oil Corp. v. Linear Films, Inc.,* 718 F.Supp. 260 (D. Del.1989)).

[38] *Dania Jai–Alai Palace, Inc. v. Sykes,* 450 So.2d 1114, 1120 (Fla. 1984)).

their personal business and assets."[39]  Even though this proves to be a high bar, Florida's alter ego remedy is an alternative to substantive consolidation that protects a non-debtor's corporate identity without usurping the protections of the Bankruptcy Code.

As such, this Court concludes any request to substantively consolidate non-debtors must fail under § 105(a) of the Bankruptcy Code because it is not an act that is "necessary or appropriate" to carry out any legitimate bankruptcy purpose.  Rather, parties have other tools, albeit accompanied by stringent and befitting proof requirements, to force a non-debtor entity into bankruptcy.  Parties can file involuntary bankruptcy petitions if they can plead and meet all the requirements of § 303 of the Bankruptcy Code.  Alternatively, they can rely on state law and the attendant legal theories of alter ego and piercing the corporate veil.  But, they cannot get the shortcut of relying on § 105 to substantively consolidate non-debtors.[40]

Therefore, the parties' factual disputes underlying the substantive consolidation requests of the Non-Debtors is irrelevant because, regardless of which party prevails, the Court lacks authority to order the substantive consolidation of the Non-Debtors.  The motions to substantively consolidate the Non-Debtors are denied.  A separate order consistent with this memorandum opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, on January 10, 2012.

KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

---

[39] *Id* (citing *Advertects, Inc., v. Sawyer Industries, Inc.,* 84 So.2d 21, 24 (Fla. 1955)).  It is notable that the Court has already established that two of Pearlman's three money-making schemes were fraudulent per se because "they fit the classic Ponzi scheme model." *Kapila v. TD Bank, NA,,* 09-AP-53, Doc. No. 157.

[40] *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005).

Copies provided to:

Attorney for Petitioning Creditor Tatonka Capital Corp:  Derek F. Meek, 3100 SouthTrust Tower, 420 N. 20th Street, Birmingham, AL  35203

Attorney for Petitioning Creditor First National Bank & Trust Co. of Williston:  Lynn J. Hinson, P.O. Box 2346, Orlando, FL  32802

Attorney for Petitioning Creditor Integra Bank:  Danielle S. Kemp, 625 E. Twiggs St., Suite 100, Tampa, FL  33602

Attorney for Petitioning Creditor American Bank of St. Paul:  Lynn J. Hinson, P.O. Box 2346, Orlando, FL  32802

Attorney for Debtor F.F. Station:  Elizabeth A. Green, 200 S. Orange Avenue, Suntrust Center, Suite 2300, Orlando, FL  32801

Chapter 11 Trustee:  Soneet R. Kapila, P.O. Box 14213, Ft. Lauderdale, FL  33302

Attorney for Trustee:  James Foster and Samual A. Miller, Akerman Senterfitt, P.O. Box 231, Orlando, FL  32802-0231

Attorney for Trustee:  Gregory M. Garno and Paul J. Battista, 100 S.E. 2nd Street, 44th Floor, Miami, FL  33131

Attorney for World Fuel:  Scott A. Stichter, 110 Madison Street, #200, Tampa, FL  33602

Attorney for NeJame, LaFay, et al.: John W. Zielinski, 189 S. Orange Avenue, Suite 1800, Orlando, FL  32801

Attorney for Midcoast Aviation and Jet Aviation:  Lynn W. Sherman and Tiffany A. Dilorio, 100 S. Ashley Drive, Suite 1500, Tampa, FL  33602

Attorney for PrivateSky Aviation Services, Inc.:  Douglas B. Szabo and Luis E. Rivera II, P.O. Box 280, Ft. Myers, FL  33902-0280

Attorney for  U.S. Bancorp Equipment Finance, Inc.:  Ronald M. Emanuel, 8751 W. Broward Blvd., Suite 100, Plantation, FL  33324

Attorney for Just Jets Services, Inc.:  R. Patrick Phillips, 200 N. Thornton Avenue, Orlando, FL  32801

Attorney for AERO Engineering, Inc.:  R. Patrick Phillips, 200 N. Thornton Avenue, Orlando, FL  32801

Attorney for James Keenan:  John Barnett Liebman, P.O. Box 608557, Orlando, FL  32860-8557

Attorney for C.E. Avionics, Inc.:  John A. Baldwin, 7100 S. Highway 17-92, Fern Park, FL  32730

Attorney for First International Bank & Trust:  Jason Ward Johnson, P.O. Box 2809, 450 S. Orange Avenue, Suite 800, Orlando, FL  32802-2809

Attorney for Rosen Center, Inc.:  Kevin A. Reck, Adam C. Losey, 111 N. Orange Avenue, Suite 1800, Orlando, FL  32801-2343

Attorney for Willis Group Holdings, Ltd.:  Kevin A. Reck, Adam C. Losey, 111 N. Orange Avenue, Suite 1800, Orlando, FL  32801-2343

Attorney for Foley & Lardner, LLP:  Kevin A. Reck, Adam C. Losey, 111 N. Orange Avenue, Suite 1800, Orlando, FL  32801-2343

Michael I. Goldberg Esquire, Las Olas Centre II, Suite 1600, 350 E. Las Olas Blvd., Ft. Lauderdale, FL  33301

Andrew M. Brumby, Esquire, P.O. Box 4956, Orlando, FL  32802-4956

Eric Simon Mashburn, Esquire, P.O. Box 77126, Winter Garden, FL  34777-1268

United States Trustee:  Miriam G. Suarez, United States Trustee's Office, 135 W. Central Blvd., Suite 620, Orlando, FL  32801