# EXHIBIT E

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------------X
LOUIS J. PEARLMAN and                                      :
TRANS CONTINENTAL RECORDS, INC.,                           :
                                                           :         Index No. 604122/05
                            Plaintiffs,                    :
                                                           :         I.A.S. Part 60
            -against-                                      :         Justice Fried
                                                           :
BRIAN LITTRELL, HOWARD DOROUGH,                            :
ALEXANDER MCLEAN, KEVIN RICHARDSON,                        :         **ANSWER TO THE**
NICKOLAS CARTER, BACKSTREET BOYS, INC.,                    :         **COMPLAINT**
and BACKSTREET PRODUCTIONS, INC.                           :
                                                           :
                            Defendants.                    :
--------------------------------------------------------------------------X


**DEFENDANTS' ANSWER TO THE**
**COMPLAINT, AFFIRMATIVE DEFENSES**
**AND COUNTERCLAIM**



**PRYOR CASHMAN SHERMAN &**
**FLYN LLP**
*Attorneys for Defendants*
**410 Park Avenue**
**New York, New  York 10021**
**212-421-4100**


**MORGAN & MORGAN, P.A.**
*Attorneys for Defendants*
**20 N. Orange Avenue**
**Orlando, Florida 32801**
**(407) 420-1414**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X
LOUIS J. PEARLMAN and                          :
TRANS CONTINENTAL RECORDS, INC.                :          Index No. 604122/05
              Plaintiffs,                    :
         -against-                              :

BRIAN LITTRELL, HOWARD D. DOROUGH,             :
ALEXANDER MCLEAN,                              :          **ANSWER TO COMPLAINT,**
KEVIN RICHARDSON, NICKOLAS CARTER,             :          **AFFIRMATIVE DEFENSES**
BACKSTREET BOYS, INC. and BACKSTREET           :          **AND COUNTERCLAIM**
PRODUCTIONS, INC.                              :

            Defendants.                    :
-------------------------------------------------------------X

## ANSWER

Defendants Brian Littrell, Howard D. Dorough, Alexander McLean, Kevin Richardson, Nickolas Carter, Backstreet Boys, Inc. and Backstreet Productions, Inc., (hereinafter collectively "Defendants") by and through their undersigned attorneys, hereby file their Answer, Affirmative Defenses and Counterclaim to Plaintiffs Louis J. Pearlman and Transcontinental Records' Complaint (hereinafter "Pearlman Plaintiffs) filed on November 21, 2005, and state:

    1.     Admitted in part. Denied that the settlement agreements released all prior claims. Denied that any exhibits were attached to Defendants' Florida complaint.

## THE PARTIES

    2.     Admitted.

    3.     Admitted.

    4.     Admitted.

    5.     Admitted.

    6.     Admitted.

    7.     Admitted.

    8.     Admitted.

9.     Admitted.

10.    Admitted.

11.    Admitted.

## JURISDICTION AND VENUE

12.    Admitted for jurisdictional purposes.   Denied that the Backstreet parties consented to the exclusive jurisdiction of this Court for claims other than claims related to the settlement agreements.

## BACKGROUND

### The Formation and Success of the Backstreet Boys

13.    Denied.  Pearlman's concept was developed with the help of the Backstreet parties and other managers.

14.    Denied.

15.    Denied that the Backstreet parties sought to "abandon" their earlier contracts.  Admitted that the alleged lawsuits were filed.

### The 1998 Settlement Agreements

16.    Admitted that the various settlement agreements were the result of negotiation.  Denied that the settlement agreements were exclusively formulated, negotiated, drafted, and executed in New York.

17.    Admitted that the parties agreed to discontinue all pending actions.  Denied that the Backstreet parties agreed to "release all claims" to the extent that such language would include fraudulent representations or actions of Pearlman, his agents or entities.

18.    Denied that the agreements were negotiated and exclusively in New York, and exclusively through New York counsel.

19.    Admitted that paragraph nineteen (19) of the 1998 Settlement Agreement contained the alleged provision.

20.    Admitted that the 1998 Settlement Agreement contains the alleged provision.

21.    Admitted.

2

22.     Admitted.

23.     Admitted that disputes arose after the execution of the 1998 Settlement Agreement.  Denied that the Backstreet parties breached their contractual commitments.

24.     Admitted.

25.     Admitted that the 1999 Amendment contains the alleged provision. Denied that the ratification and affirmation was "unconditional" to the extent that the Backstreet parties may have waived Pearlman's obligations of good faith and fair dealing, and to the extent that the Backstreet parties did not release the Pearlman parties for fraud or fraudulent concealment.

26.     Admitted that the 1999 Amendment contains the alleged provision. Denied that the ratification and affirmation was "unconditional" to the extent that the Backstreet parties may have waived Pearlman's obligations of good faith and fair dealing, and to the extent that the Backstreet parties did not release the Pearlman parties for fraud or fraudulent concealment.

27.     Admitted.

28.     Admitted.

29.     Denied.

30.     Denied as to the allegation that the Backstreet parties breached the agreements.  Admitted that the California petition was filed.

31.     Denied.

32.     Admitted in part.  Unknown as to whether the Pearlman Parties incurred great expense.

33.     Admitted.

34.     Denied.

35.     Denied.

**The 2000 Settlement Agreement**

36.     Admitted that the 2000 Settlement Agreement contains the alleged provision.

37.     Denied.

38.    Admitted that the 2000 Settlement Agreement contains the alleged provision. Denied that such provision released or intended to release Pearlman from fraudulent representations made to induce the Backstreet parties to enter into the 2000 Settlement Agreement.

39.    Denied.

40.    Admitted that the agreements contained the alleged provision.

41.    Denied.

42.    Admitted that the 2000 Settlement Agreement contains the alleged provision. Denied that the provision governed "any and all disputes".

43.    Admitted.

44.    Admitted.

45.    Admitted.

46.    Admitted in part. Williams, Hall and Licata were represented by the firm of Morgan and Morgan, P.A., and various attorneys at the firm, including Keith Mitnik, Alexander Clem, Mike Peters and Clay Townsend. Denied that the Backstreet parties settled the Williams, Hall and Licata actions in cooperation with Williams, Hall and Licata against the interest of the Pearlman parties. Denied that the Backstreet parties settled these actions without the knowledge of the Pearlman parties. The Backstreet parties settled the Williams action on the same day and at the same mediation as the Pearlman parties settled with Williams.

**The New Florida Lawsuit**

47.    Admitted that the Florida action was filed. Denied that the Backstreet parties sought to subvert the provisions of the 2000 Settlement Agreement and the earlier 1998 Settlement Agreement and the Amendment.

48.    Admitted that Clay Townsend is one of the attorneys from the firm Morgan and Morgan, P.A., Orlando, Florida, in addition to the other attorneys named in paragraph 46.

49.    Admitted.

50.   Admitted to the extent that Pearlman's actions regarding Williams, Hall and Licata began in 1993. Denied that the events giving rise to the Backstreet parties' claims occurred twelve (12) years earlier. Pearlman's wrongful actions regarding Williams continued through 1999, and Pearlman's wrongful actions relating to Hall and Licata continued through 2001.

51.   Denied.

52.   Denied.

53.   Denied.

### FIRST CAUSE OF ACTION
Declaratory Judgment as to the Continued Validity
And Effectiveness of the 2000 Settlement Agreement

54.   Defendants repeat and reallege their answers contained in paragraphs 1 through 53.

55.   Admitted.

56.   Denied.

57.   Denied.

58.   Denied.

### SECOND CAUSE OF ACTION
Declaratory Judgment that the Indemnity Claims Asserted
in the Florida Action were Not Cognizable Against the Pearlman Parties

59.   Defendants repeat and reallege their answers contained in paragraphs 1 through 58.

60.   Denied.

61.   Denied.

62.   Admitted that the 1998 and 1999 Settlement Agreement contain the alleged provisions. Denied that the language releases the rights to seek indemnification and contribution specifically reserved in the later 2000 Settlement Agreement.

63.   Denied.

64.   Admitted that the claims which survive the release fit the description in the provision which reserved the indemnity rights in the 2000 Settlement Agreement.

5

65.    Denied.

66.    Denied.

67.    The indemnity claims asserted by the Backstreet parties are cognizable against the Pearlman parties.

68.    Denied.

### THIRD CAUSE OF ACTION
Injunctive Relief

69.    Defendants repeat and reallege the answers contained in paragraphs 1 through 68.

70.    Admitted that the choice of law in the settlement agreements is that of New York. Denied that the exclusive jurisdiction for any and all claims between the parties is the jurisdiction of the state and federal courts located in New York County.

71.    Denied.

72.    Pearlman's request is moot. The parties have stipulated that this action will be heard in New York and the Backstreet parties have dismissed the Florida claims.

### FOURTH CAUSE OF ACTION
Breach of Confidentiality Provisions of the
2000 Settlement Agreement

73.    Defendants repeat and reallege the answers contained in paragraphs 1 through 72.

74.    Denied.

75.    Denied.

76.    Denied.

### FIFTH CAUSE OF ACTION
Injunctive Relief

77.    Defendants repeat and reallege the answers contained in paragraphs 1 through 76.

78.    Denied.

79.    Denied that the Backstreet parties have disclosed or continue to disclose confidential terms of the settlement agreements. It is the Pearlman parties who have attached the settlement agreements as exhibits to

6

their New York complaint in the public court files.  The Backstreet parties filed no exhibits with their Florida action.

## SIXTH CAUSE OF ACTION
Attorneys' Fees

80.     Defendants repeat and reallege the answers contained in paragraphs 1 through 79.

81.     Admitted that the 2000 Settlement Agreement contains the provision alleged.  The Backstreet parties are without knowledge.  Therefore, denied that Pearlman is entitled to recover costs and fees.

82.     Denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense:   Estoppel as to Pearlman Plaintiffs' Fourth Cause of Action

83.     The Pearlman Plaintiffs are estopped from asserting their claims in the Fourth Cause of Action as a result of their conduct.

Pearlman Plaintiffs have on numerous occasions intentionally and voluntarily disclosed the terms of the various settlement agreements with the Backstreet parties, including the amount of the settlement under the 2000 Settlement Agreement. Additionally, Pearlman Defendants have attached as exhibits to the New York action copies of all of the alleged "confidential" settlement agreements with the Backstreet parties in the public court file.  Pearlman has personally and publicly testified as to the terms and conditions of the Settlement Agreements.

Pearlman Plaintiffs are therefore estopped from asserting a claim for the Backstreet parties' reliance on their actions and subsequent violation of any confidentiality provision of the Settlement Agreements because of their own wrongful conduct.  Pearlman Plaintiffs breached the Settlement Agreements.  Therefore, Pearlman Plaintiffs are not entitled to prevail in this action.

### Second Affirmative Defense:  Estoppel as to Pearlman Plaintiffs' Second Cause of Action

84.     Pearlman Plaintiffs are estopped from asserting their claims in the Second Cause of Action that Defendants have no rights of indemnification and/or contribution.

7

Pearlman Plaintiffs expressly represented that there were no outstanding claims in the 2000 Settlement Agreement. Additionally, Pearlman represented that if there were any claims brought against the Backstreet parties, that they had the right to seek indemnification and contribution. These representations were made expressly in the 2000 Settlement Agreement, which specifically defines the Williams claim, a claim which had already been filed at the time the 2000 Settlement Agreement was executed.

The Backstreet parties relied upon these representations as an inducement to change their position and enter into the 2000 Settlement Agreement, and to make a substantial financial settlement to Pearlman, and in order to gain control of corporate entities related to the business of the Backstreet Boys. Pearlman benefited by his former position in that he received money from the Backstreet parties and now seeks to avoid indemnification or contribution for his liability.

### Third Affirmative Defense – Waiver

85.     Pearlman Plaintiffs' Fourth Cause of Action is barred by the intentional and voluntary acts and omissions of Pearlman Plaintiffs, in that they waived any rights or damages alleged through their previous violations of the confidentiality provisions of the 2000 Settlement Agreement. Pearlman Plaintiffs breached the 2000 Settlement Agreement thereby waiving any rights to the claims brought by them in this action, as well as failed to act to protect the confidentiality of the terms and conditions.

### Fourth Affirmative Defense – Contributory Negligence

86.     Pearlman Plaintiffs were comparatively negligent and their comparative negligence was the sole or contributing cause of their alleged damages as claimed in the Fourth Cause of Action. Pearlman published all of the confidential terms and conditions of the Settlement Transaction and the 2000 Settlement Agreement prior to Defendants filing of the Florida action. Damages, if any, claimed by Pearlman Plaintiffs in this cause of action are subject to diminution due to their own culpable conduct.

### Fifth Affirmative Defense – Fraud

87.     Pearlman Plaintiffs made representations to Defendants to induce them to enter the 2000 Settlement Agreement, including that there were no outstanding claims which would subject them to liability,

and that the Williams claim, for which rights to seek indemnification was specifically reserved, was spurious and that Pearlman would "handle it." At the time Pearlman made these representations, he knew them to be false and intended that the Backstreet parties would rely upon them to their detriment, including the detriment of being exposed to claims which Pearlman was aware existed at the time the Backstreet parties agreed to make a substantial financial settlement to Pearlman. Any purported rights accruing to Pearlman from the 2000 Settlement Agreement were fraudulently induced.

### Sixth Affirmative Defense

88.    All claims asserted by Pearlman Plaintiffs fail to state causes of action for which relief can be granted.

### Seventh Affirmative Defense

89.    Pearlman Plaintiffs are estopped from maintaining this action, or from recovering anything from Defendants by reason of this action, because of their own wrongful conduct and should therefore be barred from all legal or equitable relief by reason of Pearlman Plaintiffs' unclean hands.

### Eighth Affirmative Defense

90.    Defendants state there was a failure of consideration required by the 2000 Settlement Agreement from the Pearlman Plaintiffs.

### COUNTERCLAIM

Defendants, BRIAN T. LITTRELL, HOWARD D. DOROUGH, ALEXANDER J. MCLEAN, KEVIN RICHARDSON, and NICKOLAS CARTER, (collectively referred to herein as the "Backstreet Boys"), BACKSTREET BOYS, INC. a Delaware corporation, (hereinafter "DELAWARE BACKSTREET BOYS") and BACKSTREET PRODUCTIONS, INC. (hereinafter "BACKSTREET PRODUCTIONS"), (collectively referred to as "Counter Plaintiffs"), through their undersigned counsel, hereby file their complaint against Plaintiffs, LOUIS J. PEARLMAN and TRANSCONTENENTAL RECORDS, INC. (hereinafter "Counter Defendants"), for which a jury trial is demanded, and state as follows:

**Subject Matter Jurisdiction**

1)      The Court has subject matter jurisdiction by virtue of the claims asserted and the remedies requested, both at law and in equity.

**Personal Matter Jurisdiction**

2)      Counter Plaintiffs and Counter Defendants have stipulated to the personal jurisdiction of this Court.

**General Allegations**

3)      Counter Plaintiffs are members of the successful musical performing group *The Backstreet Boys*. For the majority of their lives, the individual Backstreet Boys have dedicated themselves to perfecting their craft or singing, dancing and entertaining.

4)      PEARLMAN is or was an officer, director, agent and/or controlling shareholder of TRANSCONTINENTAL RECORDS, INC., Backstreet Boys, Inc., a dissolved Florida corporation, (hereinafter "Florida Backstreet Boys"), Backstreet Boys, Inc., a Delaware corporation (hereinafter "DELAWARE BACKSTREET BOYS"), Backstreet Management, Inc., Backstreet Productions, Inc. (hereinafter "BACKSTREET PRODUCTIONS"), Trans-Action, L.C., Transcontinental Media, Inc., and other companies which PEARLMAN formed and/or incorporated for the purpose of conducting the business of and contracting for and on behalf of *The Backstreet Boys*.

5)      Counter Defendant, TRANSCONTINENTAL RECORDS, INC. (hereinafter referred to as "TRANSCONTINENTAL RECORDS"), is a Florida corporation having its principal place of business at 7380 Sand Lake Road, Suite 350, Orlando, FL 32819.

6)      Counter Plaintiffs are informed and believe and thereon allege that Counter Defendants PEARLMAN and TRANSCONTINENTAL RECORDS are and, at all times material hereto, were the alter egos of each other and that there now exists and, at all times, material hereto, has existed a unity of interest and ownership among such defendants such that any separateness has ceased to exist in that PEARLMAN and TRANSCONTINENTAL RECORDS, and each of them, used assets of the other for his, its or their separate and individual purposes, and caused assets to be transferred to each other without adequate consideration.

7)      Counter Plaintiffs are informed and believe and thereon allege that PEARLMAN completely owned, controlled, dominated, used, managed, and operated TRANSCONTINENTAL RECORDS and other companies, and intermingled assets of said alter ego for his convenience.  Any obligation, duty and liability of TRANSCONTINENTAL RECORDS as alleged herein shall be deemed to similarly be an obligation, duty and liability of its alter-ego, PEARLMAN, and vice versa.

8)      Counter Plaintiffs are informed and believe, and thereon allege that adherence to the fiction of the separate existence of PEARLMAN and TRANSCONTINENTAL RECORDS, and each of them, as parties distinct from each other would permit abuse of the corporate privilege and would sanction fraud and promote injustice.

9)      PEARLMAN, McLEAN, DOROUGH, CARTER, Jeanne Tanzy Williams (hereinafter "Williams"), Sybil Galler Hall (hereinafter "Hall"), Sam Licata a/k/a Phoenix Stone (hereinafter "Licata") and Charles Edwards (hereinafter "Edwards"), were original shareholders of Florida Backstreet Boys, which was incorporated in Florida on January 7, 1993 as a closely held corporation.  (Exhibit A)

10)     In the first few months of 1993, PEARLMAN hired Hall and Williams, conducted auditions and selected members of the musical entertainment group now known world-wide as *The Backstreet Boys,* which originally included AJ McLEAN, DOROUGH, CARTER, Licata and Edwards.

11)     From practically his first meeting with *The Backstreet Boys*, PEARLMAN ingratiated himself with the boys and their parents and earned their trust by repeatedly stating, among other things, that they were "family" and that he was an experienced, educated businessman who would protect them and look after their best interest.

12)     In early 1993, PEARLMAN induced the parties involved in *The Backstreet Boys* business enterprise, including Williams, Hall, Licata, McLEAN, DOROUGH, CARTER and Edwards, to apportion and distribute the ownership of shares of Florida Backstreet Boys' corporate stock so that PEARLMAN would act as President and business manager and would own the largest percentage of shares in the corporation, to wit, 300 shares of the total 1,000 shares of stock, and that each of the other shareholders would receive 100 shares of stock. (Exhibit A).

11

13)     In or about April 1993, Licata and Edwards were replaced by Counter Plaintiffs RICHARDSON and LITTRELL, and Hall ceased her management role with the Backstreet Boys.

14)     On May 3, 1993, PEARLMAN, acting as President of Florida Backstreet Boys, signed a "Letter of Agreement" under which, LITTRELL, CARTER, RICHARDSON, DOROUGH and McLEAN would provide their entertainment services exclusively to Florida Backstreet Boys for five years, with six one-year extensions. (Exhibit B).

15)     At the same time, in May 1993, and unbeknownst to Counter Plaintiffs, PEARLMAN was planning to dissolve Florida Backstreet Boys to extinguish the rights of Williams, Hall and Licata, and to form new companies that PEARLMAN would control.  (Exhibit C).

16)     The core of PEARLMAN'S design was a web of interrelated companies and contracts by which PEARLMAN siphoned off the vast majority of *The Backstreet Boys*' earnings.

17)     By September of 1993, PEARLMAN simultaneously owned and controlled *The Backstreet Boys*' management company, business management company, record label, merchandising company and touring company, and also exercised dominion over *The Backstreet Boys*' personal lives.  Consequently, PEARLMAN'S duties to *The Backstreet Boys* were both contractual and fiduciary in nature.

18)     On or about June 23, 1993, PEARLMAN directed his agent, Robert Fischetti to form Delaware Backstreet Boys for the purpose of exploiting certain entitlements, opportunities and functions of Florida Backstreet Boys.

19)     PEARLMAN told the Counter Plaintiffs that he would handle all of the business matters related to the departure of Hall and Licata, including compensating them, but although PEARLMAN bought back Edwards' stock, he did not buy Hall's Licata's or William's stock.

20)     Williams continued to act as manager through July 1993.

21)     Unbeknownst to Counter Plaintiffs, PEARLMAN refused to buy back Hall's and Licata's stock, and implemented his plan to dissolve Florida Backstreet Boys to extinguish Williams', Hall's and Licata's interests.

12

22)    PEARLMAN hired attorney Melissa Trimble (hereinafter "Trimble") to dissolve Florida Backstreet Boys.

23)    Even though Williams, Hall and Licata were shareholders in Florida Backstreet Boys, PEARLMAN did not advise Williams, Hall and Licata of the planned dissolution of Florida Backstreet Boys or of the formation of Delaware Backstreet Boys or obtain their consent, agreement, and/or vote to ratify his action.

24)    RICHARDSON, McLEAN, LITTRELL, DOROUGH and CARTER were induced to sign a shareholder's agreement, granting PEARLMAN irrevocable proxies and giving PEARLMAN 100% control of DELAWARE BACKSTREET BOYS. (Exhibit D).

25)    On or about June 23, 1993, PEARLMAN directed Fischetti to form BACKSTREET PRODUCTIONS, a Delaware corporation, for the purpose of exploiting certain profits, revenues, and entitlements, opportunities and functions of Florida Backstreet Boys.

26)    Even though Williams, Hall and Licata were still shareholders in Florida Backstreet Boys, PEARLMAN did not disclose to Williams, Hall and Licata the formation of BACKSTREET PRODUCTIONS, or obtain their consent, agreement, and/or vote to ratify his action.

27)    In addition to PEARLMAN owning a majority of shares, PEARLMAN induced RICHARDSON, McLEAN, LITTRELL, DOROUGH and CARTER to sign a shareholders agreement for BACKSTREET PRODUCTIONS granting PEARLMAN irrevocable proxies and giving PEARLMAN 100% control of BACKSTREET PRODUCTIONS. (Exhibit E).

28)    PEARLMAN terminated Williams from her role as manager for *The Backstreet Boys* in July 1993, but Williams continued work with PEARLMAN through 1998.

29)    On or about September 17, 1993, PEARLMAN called and held a shareholders meeting of the "Backstreet Boys, Inc." and took various extraordinary corporate actions, including, among other things, "absorbing duties and previously incurred expenses of Backstreet Boys, Inc. and Backstreet Productions, Inc., (Florida Corporations) and to further the business of *The Backstreet Boys*." (Exhibit F).

30)     PEARLMAN intentionally excluded and failed to give notice to Williams, Hall and Licata of the meeting of September 17, 1993.

31)     PEARLMAN represented to McLEAN, CARTER, DOROUGH, LITTRELL and RICHARDSON that he had taken care of Williams, Hall and Licata, and they were unaware of PEARLMAN'S actions to improperly oust Williams, Hall and Licata.

32)     On or about September 17, 1993, PEARLMAN induced McLEAN, DOROUGH, CARTER, RICHARDSON and LITTRELL to enter into an Exclusive Management Agreement (hereinafter "Exclusive Management Agreement") with Backstreet Management of which PEARLMAN is, and was, the principal stockholder, pursuant to which PEARLMAN would, as their agent, manage all the affairs of the Counter Plaintiffs and protect their interests.

33)     On or about August 26, 1994, PEARLMAN knowingly caused or permitted the Florida Backstreet Boys to be administratively dissolved by the State of Florida without the knowledge, consent, agreement, vote, and/or ratification of Williams, Hall and Licata, or of the Counter Plaintiffs.

34)     In March 1994, PEARLMAN induced DOROUGH, CARTER, McLEAN and Edwards to sign dissolution proxies for Florida Backstreet Boys, by falsely telling them that he had taken care of Williams, Hall and Licata.

35)     On January 5, 1995, PEARLMAN'S attorney and agent filed the dissolution of Florida Backstreet Boys with the State of Florida but, notwithstanding Trimble's letter to PEARLMAN that all shareholders must receive notice, PEARLMAN did not disclose his improper action to Williams, Hall and Licata or to Counter Plaintiffs. (Exhibit G).

36)     By 1997, various disagreements had developed between PEARLMAN and *The Backstreet Boys*, which resulted in LITTRELL initiating litigation against PEARLMAN and TRANSCONTINENTAL RECORDS, Backstreet Management, Inc., Backstreet Productions, Wright Stuff, J Wright, D Wright and Fischetti. The action alleged, *inter alia*, a widespread pattern of misappropriation and concealment by PEARLMAN of revenues generated by *The Backstreet Boys*.

14

37)   *The Backstreet Boys* decided to sever their ties with PEARLMAN and in 1998, McLEAN, RICHARDSON and DOROUGH joined LITTRELL in the litigation.

38)   In or about October 1998, PEARLMAN, acting for himself and on behalf of his various companies entered into a settlement agreement with LITTRELL, McLEAN, RICHARDSON, DOROUGH and CARTER, without making provisions to resolve William's, Hall's and Licata's interests or claims as shareholders of Florida Backstreet Boys, even though, PEARLMAN, his attorneys and agents charged with achieving a global settlement, were aware of the existence of two "Backstreet Boys, Inc.'s", and that Williams, Hall and Licata had unresolved claims.

39)   The litigation was settled by the execution of three agreements:  a Settlement Agreement dated as of October 1, 1998, a Settlement and Termination Agreement dated as of October 1, 1998, and an Amendment to Settlement Agreement dated as of March 24, 1999.  (These agreements are referred to collectively as the "Settlement Transaction").  Prior to and at the time of the Settlement Transaction, PEARLMAN fraudulently represented that there were no outstanding liabilities to former managers and shareholders Williams, Hall and Licata.  PEARLMAN had represented to the Counter Plaintiffs that he had "taken care" of Williams, Hall and Licata.

40)   Among the many terms of the Settlement Transaction, the Exclusive Management Agreement was terminated, and *The Backstreet Boys* were obligated to make payments to PEARLMAN and TRANSCONTINENTAL RECORDS.

41)   In or about August 1999, Williams filed suit against PEARLMAN and Counter Plaintiffs claiming that she was excluded from the Settlement Transaction and that they were engaged in a widespread pattern of fraud, misappropriation and concealment, which, *inter alia*, deprived her of rights as a shareholder in Florida Backstreet Boys, including her rights to share in the proceeds of all business activities of *The Backstreet Boys;* actions which occurred during the period of Williams' employment and her being a shareholder, up through 1998.

42)   Counter Plaintiffs were forced to defend the Williams claim and engaged several law firms: Carlton, Fields P.A., Lavely and Singer, P.A., and Lassiter Tidwell & Hildebrand, P.L.L.C.

43)     On December 19, 2000, Counter Plaintiffs were induced to sign an additional Settlement Agreement (hereinafter referred to as "2000 Settlement Agreement," Exhibit H), pursuant to which Counter Plaintiffs paid PEARLMAN and severed all ties to PEARLMAN, who, as an additional inducement, expressly agreed that Counter Plaintiffs reserved the right to seek indemnification and contribution from PEARLMAN for any and all claims arising from PEARLMAN'S actions regarding Williams.

44)     Pursuant to the 2000 Settlement Agreement, Counter Plaintiffs gained control of DELAWARE BACKSTREET BOYS and BACKSTREET PRODUCTIONS.

45)     Additionally, the 2000 Settlement Agreement reserves the Counter Plaintiffs' right to seek indemnification from PEARLMAN for claims made against Counter Plaintiffs arising from PEARLMAN'S dealings with persons engaged by PEARLMAN.

46)     PEARLMAN falsely represented to Counter Plaintiffs, orally and in paragraph 7(C) of the 2000 Settlement Agreement that there were no other claims that would subject Counter Plaintiffs or DELAWARE BACKSTREET BOYS or BACKSTREET PRODUCTIONS to liability as an inducement for Counter Plaintiffs to pay PEARLMAN a settlement.

47)     In or about September 2002, Hall and Licata filed suit against PEARLMAN and Counter Plaintiffs, alleging that beginning in 1993 and continuing through 1998, PEARLMAN repeatedly told Hall and Licata that *The Backstreet Boys* had not yet realized any profit because it was an un-recouped position, and because the small amount of money that *The Backstreet Boys* might have been due was tied up in the "pipeline," and therefore, had not yet been received.  Hall and Licata further alleged that PEARLMAN made these statements in order to induce Hall and Licata to refrain from taking legal action against him, and Hall and Licata reasonably relied on the statements to their detriment.

48)     PEARLMAN was at fault and subjected Counter Plaintiffs to liability for committing wrongful acts against Williams, Hall and Licata while acting as an agent for, and without full disclosure to, the Counter Plaintiffs, to wit:

16

a.  creating multiple corporations between 1993 and the present to usurp, divert and misappropriate certain rights, property, revenues, income, profits and corporate opportunities owned by Florida Backstreet Boys, without the knowledge, consent, agreement or vote of Williams, Hall and Licata;

b.  incorporating and/or using business entities other than Florida Backstreet Boys to appropriate and procure for himself, directly or indirectly, the business opportunities, contracts, property rights, revenues, income and profits generated by the promotion, merchandising, recording and touring of The Backstreet Boys, which was owned by Florida Backstreet Boys, while fraudulently representing to Williams, Hall and Licata that *The Backstreet Boys* were not generating revenues, income and/or profits for Florida Backstreet Boys, or, alternatively, that monies owed Williams, Hall and Licata were "tied up in litigation";

c.  causing or allowing Florida Backstreet Boys to be both voluntarily and administratively dissolved by the State of Florida as a result of PEARLMAN'S actions and the corporation's failure to file its corporate annual report without the consent and/or action and/or vote and/or knowledge of Williams, Hall and Licata; and

d.  concealing the dissolution of Florida Backstreet Boys from Williams, Hall and Licata through 2001.

49)  As an officer and director of Florida Backstreet Boys, PEARLMAN occupied a position of confidentiality and trust in the closely held corporation, and owed a fiduciary duty to Williams, Hall and Licata, as well as to Counter Plaintiffs, which includes all of the following duties:

a.  to act in good faith, Section 607.0830, Fla. Stat.;

b.  to discharge his duties with the care of an ordinarily prudent person in a like position would exercise under similar circumstances, Section 607.0830(1), Fla. Stat.;

c.  to act in a manner he reasonably believed was in the best interests of the corporation;

d.  to hold a meeting of the shareholders annually for the election of directors and for the transaction of any proper business purpose, Section 607.0701, Fla. Stat.;

e.  to give a description of the purpose or purposes of special meetings in the required notices thereof to Williams, Hall and Licata when called by or held by PEARLMAN or Florida Backstreet Boys, Section 607.0705(3), Fla. Stat.;

f.  to afford Williams, Hall and Licata as shareholders of Florida Backstreet Boys, the right to participate in corporate opportunities;

g.  to refrain from entering into transactions from which PEARLMAN, as director, would derive an improper personal benefit, either directly or indirectly, Section 607.0831(3)(4), Fla. Stat.;

h.  to be personally liable for acts on behalf of Florida Backstreet Boys, subsequent to the corporation's administrative dissolution, Section 607.1421 (4), Fla. Stat.;

i.  to notify each shareholder of any meeting and its purpose, and to obtain the approval by vote of the shareholders of any transaction not in the usual and regular course of business, namely the transfer and disposal of all of the assets of Florida Backstreet Boys, Section 607.1202(1), Fla. Stat.;

j.  to maintain accurate accounting records, Section 607.1601(2), Fla. Stat.;

k.  to keep minutes of all meetings of its shareholders or Board of Directors without a meeting, and a record of all actions taken by a committee of the Board of Directors in

17

place of the Board of Directors on behalf of the corporation, Section 607.1601 (1), Fla. Stat.;

l.      to furnish by mail within 120 days after the close of the fiscal year to Williams, Hall and Licata as shareholders, annual financial statements that must include a balance sheet as of the end of the fiscal year, an income statement for that year, and a statement of cash flow for that year and, if the financial statements are reported by a public accountant, an accompanying report, Sections 607.1620 (1) (2), Fla. Stat.;

m.     to report in writing to Williams, Hall and Licata as a shareholders the issuance of shares for a promise to render services in the future by a shareholder, such report to include the number of shares authorized or issued and the consideration received, or to be received, by the corporation, Section 607.1621(2), Fla. Stat.;

n.      to deliver to the Department of State a sworn annual report of the corporation, Section 607.1622(1), Fla. Stat.;

o.      to ensure the adherence of all shareholders and directors to the terms of shareholder agreements restricting the transfer of shares; and,

p.      to refrain from taking any personal profit by virtue of his position and from acquiring any interest adverse to that of the corporation, Section 607.0832, Fla. Stat.

50)   PEARLMAN breached his fiduciary duty to Williams, Hall and Licata, by creating multiple corporations between 1993 and the present for the sole purpose of usurping certain corporate opportunities, property, revenues, income, and profits owned by the Florida Backstreet Boys without providing notice and/or obtaining the vote and/or consent and/or ratification of Williams, Hall and Licata, and by failing to disclose information from 1993 to 2001. These breached were concealed from the Counter Plaintiffs.

51)   PEARLMAN, while a director, officer, and agent of Florida Backstreet Boys, breached his duties as defined in Chapter 607 and further enumerated above by voting for or assenting to, and actively arranging for valuable corporate assets to be usurped and diverted from the corporation. He did this, upon information and belief, with the intention of wrongfully enriching himself far beyond his pro rata share of stock ownership and outside of any understanding of or agreement with Williams, Hall and Licata as shareholders in Florida Backstreet Boys. These breached were concealed from the Counter Plaintiffs.

52)   PEARLMAN acted wrongfully, unilaterally and without the approval of Counter Plaintiffs when he breached his fiduciary duty to Williams, Hall and Licata by directly filing the dissolution and allowing Florida Backstreet Boys to be administratively dissolved by the State of Florida as a direct result of the corporation's failure to file its corporate annual report without the knowledge, consent, action or vote of Williams, Hall and Licata.

53)    PEARLMAN acted wrongfully, unilaterally and without the knowledge or approval of Counter

Plaintiffs when he breached his fiduciary obligation to Williams, Hall and Licata by intentionally concealing the

dissolution of Florida Backstreet Boys from Williams, Hall and Licata for the purpose of extinguishing their stock

interest and of diverting the business opportunities, contracts, property rights, revenues, income and profits

generated by Florida Backstreet Boys.

54)    PEARLMAN'S false representations, fraudulent actions and concealments include, but are not

limited to, the following:

(a) PEARLMAN told Williams, Hall and Licata to hold onto the stock as it would be valuable some day. At the same time these representations were made, PEARLMAN was proceeding with a plan to render the stock worthless by secretly absorbing Florida Backstreet Boys into entities formed and completely controlled by PEARLMAN, including DELAWARE BACKSTREET BOYS, BACKSTREET PRODUCTIONS, Transcontinental Media, Trans-Action and TRANSCONTINENTAL RECORDS and by dissolving Florida Backstreet Boys.

(b) PEARLMAN concealed from Williams, Hall and Licata the fact he formed new companies (i.e. DELAWARE BACKSTREET BOYS and BACKSTREET PRODUCTIONS) to absorb the business and assets of Florida Backstreet Boys; PEARLMAN and his attorneys strung Hall and Licata along with the deception of negotiating a purchase price for their stock while planning to transfer all assets for his benefit and dissolve their interests. PEARLMAN never purchased Hall's and Licata's stock or offered to purchase Hall's and Licata's stock under the terms of the Stock Restriction Agreement;

(c) PEARLMAN invited all other shareholders of Florida Backstreet Boys to the September 17, 1993 meeting but intentionally excluded William, Hall and Licata, treating those shareholders differently than those who were given stock in the successor corporations that absorbed Florida Backstreet Boys.

(d) Not only did PEARLMAN intentionally fail to give notice to Williams, Hall and Licata, he had induced some, if not all participants at this meeting, to sign silencing agreements while telling Plaintiffs he had taken care of Williams, Hall and Licata;

(g) PEARLMAN intentionally did not give notice to Williams, Hall or Licata of the special meeting of shareholders to dissolve Florida Backstreet Boys. He was advised by counsel of proper dissolution procedures, and specifically that he was required by law to give notice to all shareholders and intentionally ignored the advice and the law. PEARLMAN had secretly planned the dissolution almost from the inception of the Backstreet Boys – in March of 1993;

(h) All the shareholders of Florida Backstreet Boys were allowed to share in the benefits of the new corporate structure into which Florida Backstreet Boys was absorbed and dissolved except Williams, Hall and Licata. PEARLMAN attempted to oust them of their interest without any compensation by making false representations, failing to disclose and/or conceal the above described events;

(i) PEARLMAN further concealed his actions in that the other shareholders in Florida Backstreet Boys and new shareholders in DELAWARE BACKSTREET BOYS and BACKSTREET PRODUCTIONS were led to believe by PEARLMAN that Williams, Hall and Licata had been properly and legally compensated, which representations were false;

19

(j) PEARLMAN acted as the managing agent, officer, director and controlling shareholder of companies which were mere instrumentalities for PEARLMAN'S personal gain; and which Plaintiffs and their corporations were vicariously liable for the conduct and intentional acts of PEARLMAN;

(k) PEARLMAN'S wrongful actions deprived Williams, Hall and Licata of statutory rights as shareholders, including notices, fair compensation and opportunities to seek counsel and protect their interests;

(l) Williams, Hall and Licata were deprived of their rights as shareholders to participate in decisions, compensations or protecting their interests or rights;

(m)Hall and Licata had not been paid for their stock in Florida Backstreet Boys, nor in the successor corporation, and thus, Hall and Licata were entitled to the rights of shareholders, and filed suit against PEARLMAN and Plaintiffs.

55)    Throughout the LITTRELL, Williams, Hall and Licata litigation with PEARLMAN, PEARLMAN concealed documents from all parties, including Counter Plaintiffs, that evidenced PEARLMAN'S wrongful actions taken against Williams, Hall and Licata without the knowledge, approval or consent of Counter Plaintiffs, including evidence that PEARLMAN intentionally acted against advice of counsel as to how to properly deal with the shareholder interests of Williams, Hall and Licata.  PEARLMAN disregarded Florida law as to voluntary dissolution, notice requirements and dissenters' rights, among others.

56)    Counter Plaintiffs entered into a settlement agreement with Williams on October 25, 2004. (Exhibit I).

57)    Counter Plaintiffs entered into a settlement agreement with Hall and Licata on December 21, 2004. (Exhibit J).

58)    As a result of PEARLMAN'S breach of his duties owed to shareholders under, Section 607, Fla. Stat., and under the Articles of Incorporation, By-Laws and Shareholders' Agreement of Florida Backstreet Boys, PEARLMAN wrongfully exposed Counter Plaintiffs to liability to Williams, Hall and Licata.

59)    Counter Plaintiffs settled the Williams, Hall and Licata claims and incurred costs and legal fees associated therewith.

60)    Counter Plaintiffs have performed all conditions precedent necessary to bring this action and all causes of action pled herein, or performance on the part of Counter Plaintiffs has been waived or excused.

**First Claim:**
**Implied Indemnity for Williams' Settlement**

Counter Plaintiffs reallege and incorporate herein the allegations set forth in paragraphs 1 through 60, above.

61)    Counter Plaintiffs were wholly without active fault in the Williams matter.

62)    Counter Plaintiffs were vicariously, constructively, derivatively and technically liable for the wrongful acts of PEARLMAN.

63)    PEARLMAN had a special relationship with Counter Plaintiffs in that PEARLMAN acted as Plaintiffs' agent, manager, business manager, president of Counter Plaintiffs' companies, and PEARLMAN had been granted irrevocable proxies to conduct all of Counter Plaintiffs' business without Counter Plaintiffs' approval, vote, consent or ratification.

64)    Counter Plaintiff's vicarious and technical liability originated from PEARLMAN'S special relationship with Counter Plaintiffs that rendered Counter Plaintiffs technically liable to Williams.

65)    PEARLMAN had a special duty to Counter Plaintiffs as PEARLMAN acted as Counter Plaintiffs' agent in all actions regarding Williams.

66)    PEARLMAN owed a duty to the Counter Plaintiffs to properly and legally discharge the obligations of PEARLMAN, Counter Plaintiffs and Counter Plaintiffs' companies to Williams.

67)    PEARLMAN discharged these duties improperly and illegally, exposing Counter Plaintiffs to liability.

68)    Counter Plaintiffs were sued by Williams as a result of PEARLMAN'S improper and illegal actions.

69)    On October 25, 2004, Counter Plaintiffs, entered into a settlement agreement with Williams and paid Williams, the terms of which are subject to a confidentiality provision. (Exhibit I).

70)    Counter Plaintiffs incurred liability, attorneys' fees and costs to defend the Williams claims.

WHEREFORE, LITTRELL, DOROUGH, MCLEAN, RICHARDSON, CARTER, DELAWARE BACKSTREET BOYS,, and BACKSTREET PRODUCTIONS, demand judgment against PEARLMAN and TRANSCONTINENTAL RECORDS for damages resulting from the Counter Defendants' actions, which placed a vicarious and technical liability on LITTRELL, DOROUGH, MCLEAN, RICHARDSON, and CARTER, both individually and as the corporations DELAWARE BACKSTREET BOYS, and BACKSTREET PRODUCTIONS, which damages include, *inter alia*, the settlement paid to Williams, attorneys fees and costs and for such other and further relief that this Court deems appropriate. LITTRELL, DOROUGH, MCLEAN, RICHARDSON, CARTER, DELAWARE BACKSTREET BOYS, and BACKSTREET PRODUCTIONS, DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.

**Second Claim:**
**Implied Indemnity for Hall and Licata Settlements**

Counter Plaintiffs reallege and incorporate herein the allegations set forth in paragraphs 1 through 60, above.

71)    Counter Plaintiffs were wholly without active fault in the Hall and Licata matters which gave rise to Counter Plaintiffs being sued by Hall and Licata.

72)    Counter Plaintiffs were vicariously, constructively, derivatively and technically liable for PEARLMAN'S wrongful and illegal actions against Hall and Licata.

73)    PEARLMAN had a special relationship with Counter Plaintiffs in that PEARLMAN acted as Counter Plaintiffs' agent, manager, business manager, president of Counter Plaintiffs' companies, and PEARLMAN had been granted irrevocable proxies to conduct all of Counter Plaintiffs' business without Counter Plaintiffs' approval, vote, consent or ratification.

74)    Counter Plaintiff's vicarious and technical liability originated from PEARLMAN'S special relationship with Counter Plaintiffs that rendered Counter Plaintiffs technically liable to Hall and Licata.

75)    PEARLMAN had a special duty to Counter Plaintiffs as PEARLMAN acted as Counter Plaintiffs' agent, in all actions regarding Hall and Licata.

22

76)     PEARLMAN owed a duty to the Counter Plaintiffs to discharge the obligations of Counter Plaintiffs and Counter Plaintiffs' companies to Hall and Licata.

77)     PEARLMAN discharged these duties improperly and illegally.

78)     Counter Plaintiffs were sued by Hall and Licata as a result of PEARLMAN'S improper and illegal actions.

79)     On December 21, 2004, Counter Plaintiffs entered into a settlement agreement with Hall and Licata, and paid Hall and Licata, the terms of which are subject to a confidentiality provision. (Exhibit J).

80)     Counter Plaintiffs incurred liability, legal fees and costs defending the Hall and Licata claims.

WHEREFORE, LITTRELL, DOROUGH, MCLEAN, RICHARDSON, CARTER, DELAWARE BACKSTREET BOYS, and BACKSTREET PRODUCTIONS, demand judgment against PEARLMAN and TRANSCONTINENTAL RECORDS for damages resulting from the Counter Defendants' wrongful actions against Hall and Licata which damages include, *inter alia*, the settlement paid to Hall and Licata, attorneys fees and costs, and for such other and further relief that this Court deems appropriate. LITTRELL, DOROUGH, MCLEAN, RICHARDSON, CARTER, BACKSTREET BOYS, and BACKSTREET PRODUCTIONS, DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.

### Third Claim:
### Fraud in the Inducement

Counter Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 60 as if fully set forth herein.

81)     PEARLMAN fraudulently induced Counter Plaintiffs to enter into the 2000 Settlement Agreement of December 19, 2000, and pay PEARLMAN a settlement.

82)     PEARLMAN represented to Counter Plaintiffs, both orally and in the 2000 Settlement Agreement at paragraph 7(c), that there were no other claims known to him, besides Williams, that could expose Counter Plaintiffs individually or DELAWARE BACKSTREET BOYS and BACKSTREET PRODUCTIONS to liability.

23

83)    PEARLMAN expressly granted Counter Plaintiffs a reservation of the right to indemnification and contribution, and further, made oral representations to Counter Plaintiffs that the Williams claim was spurious and that he would indemnify Counter Plaintiffs for the Williams claim.

84)    PEARLMAN made this representation to Counter Plaintiffs, their agents and attorneys, knowing that it was false and that Counter Plaintiffs would rely on it as an inducement to sign the 2000 Settlement Agreement.

85)    PEARLMAN knew at the time of these false representations that Hall and Licata were still shareholders in Florida Backstreet Boys and that Hall and Licata had never been paid anything for their stock, but concealed these facts from Counter Plaintiffs.

86)    PEARLMAN knew at the time of these false representations that Williams, Hall and Licata had not been "taken care of" and that they had not received required notice of PEARLMAN'S actions to absorb and dissolve William's, Hall's and Licata's rights and interests, notwithstanding his attorney's (Trimble's) advice that such notice was required by law.

WHEREFORE, LITTRELL, DOROUGH, MCLEAN, RICHARDSON, CARTER, DELAWARE BACKSTREET BOYS, and BACKSTREET PRODUCTIONS, demand judgment against PEARLMAN and TRANSCONTINENTAL RECORDS, for damages resulting from the Counter Defendants' fraudulent actions, which placed a vicarious and technical liability on LITTRELL, DOROUGH, MCLEAN, RICHARDSON, and CARTER, both individually and as the corporations DELAWARE BACKSTREET BOYS, and BACKSTREET PRODUCTIONS, for which damages include, *inter alia*, the settlements paid to Williams, Hall and Licata, attorneys fees and costs, and for such other and further relief that this Court deems appropriate. LITTRELL, DOROUGH, MCLEAN, RICHARDSON, CARTER, DELAWARE BACKSTREET BOYS, and BACKSTREET PRODUCTIONS, DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.

**Fourth Claim:**
**Contribution for William's Settlement**

Counter Plaintiffs reallege and incorporate herein the allegations set forth in paragraphs 1 through 60, above.

87)    Counter Plaintiffs were without fault in the Williams matter.

88)    Counter Plaintiffs were subjected to claims alleging they were vicariously, constructively, derivatively and technically liable for the wrongful acts of PEARLMAN.

89)    PEARLMAN acted unilaterally as Counter Plaintiffs' agent, manager, business manager, president of Counter Plaintiffs' companies, and PEARLMAN had been granted irrevocable proxies to conduct all of Counter Plaintiffs' business without Counter Plaintiffs' approval, vote, consent or ratification.

90)    Counter Plaintiff's vicarious and technical liability originated from PEARLMAN'S special relationship with Counter Plaintiffs that subjected Counter Plaintiffs to liability to Williams.

91)    PEARLMAN had a special duty to Counter Plaintiffs as PEARLMAN acted as Counter Plaintiffs' agent in all actions regarding Williams.

92)    PEARLMAN owed a duty to the Counter Plaintiffs to properly and legally discharge the obligations of PEARLMAN, Counter Plaintiffs and Counter Plaintiffs' companies to Williams.

93)    PEARLMAN discharged these duties improperly and illegally, exposing Counter Plaintiffs to liability.

94)    Counter Plaintiffs were sued by Williams as a result of PEARLMAN'S improper and illegal actions.

95)    On October 25, 2004, Counter Plaintiffs entered into a settlement agreement with Williams and paid Williams, the terms of which are subject to a confidentiality provision.  (Exhibit I).

96)    Counter Plaintiffs incurred liability, attorneys' fees and costs to defend the Williams claims.

97)    Counter Plaintiffs are entitled to contribution from PEARLMAN and TRANSCONTINENTAL RECORDS.

98)    Counter Plaintiffs preserved their contribution rights against PEARLMAN and TRANSCONTINENTAL RECORDS by express reservation in the 2000 Settlement Agreement.

WHEREFORE, LITTRELL, DOROUGH, MCLEAN, RICHARDSON, CARTER, DELAWARE BACKSTREET BOYS,, and BACKSTREET PRODUCTIONS, demand judgment against PEARLMAN and TRANSCONTINENTAL RECORDS for damages resulting from the Counter Defendants' actions, which placed a vicarious and technical liability on LITTRELL, DOROUGH, MCLEAN, RICHARDSON, and CARTER, both individually and as the corporations DELAWARE BACKSTREET BOYS, and BACKSTREET PRODUCTIONS, which damages include, *inter alia*, the settlement paid to Williams, attorneys fees and costs and for such other and further relief that this Court deems appropriate.  LITTRELL, DOROUGH, MCLEAN, RICHARDSON, CARTER, DELAWARE BACKSTREET BOYS, and BACKSTREET PRODUCTIONS, DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.

**Fifth Claim:**
**Contribution for the Hall and Licata Settlements**

Counter Plaintiffs reallege and incorporate herein the allegations set forth in paragraphs 1 through 60, above.

99)    Counter Plaintiffs were without fault in the Hall and Licata matters which gave rise to Counter Plaintiffs being sued by Hall and Licata.

100)    Counter Plaintiffs were subjected to claims alleging they were vicariously, constructively, derivatively and technically liable for PEARLMAN'S wrongful and illegal actions against Hall and Licata.

101)    PEARLMAN had a special relationship with Counter Plaintiffs in that PEARLMAN acted unilaterally as Counter Plaintiffs' agent, manager, business manager, president of Counter Plaintiffs' companies, and PEARLMAN had been granted irrevocable proxies to conduct all of Counter Plaintiffs' business without Counter Plaintiffs' approval, vote, consent or ratification.

102)    Counter Plaintiff's vicarious and technical liability originated from PEARLMAN'S special relationship with Counter Plaintiffs that subjected Counter Plaintiffs to liability to Hall and Licata.

103)    PEARLMAN had a special duty to Counter Plaintiffs as PEARLMAN acted as Counter Plaintiffs' agent, in all actions regarding Hall and Licata.

104)    PEARLMAN owed a duty to the Counter Plaintiffs to discharge the obligations of Counter Plaintiffs and Counter Plaintiffs' companies to Hall and Licata.

105)    PEARLMAN discharged these duties improperly and illegally.

106)    Counter Plaintiffs were sued by Hall and Licata as a result of PEARLMAN'S improper and illegal actions.

107)    On December 21, 2004, Counter Plaintiffs entered into a settlement agreement with Hall and Licata, and paid Hall and Licata, the terms of which are subject to a confidentiality provision. (Exhibit J).

108)    Counter Plaintiffs incurred liability, legal fees and costs defending the Hall and Licata claims.

109)    Counter Plaintiffs are entitled to contribution from PEARLMAN and TRANSCONTINENTAL RECORDS.

110)    Counter Plaintiffs preserved their contribution rights against PEARLMAN and TRANSCONTINENTAL RECORDS by express reservation in the 2000 Settlement Agreement.

WHEREFORE, LITTRELL, DOROUGH, MCLEAN, RICHARDSON, CARTER, DELAWARE BACKSTREET BOYS, and BACKSTREET PRODUCTIONS, demand judgment against PEARLMAN and TRANSCONTINENTAL RECORDS for damages resulting from the Counter Defendants' wrongful actions against Hall and Licata which damages include, *inter alia*, the settlement paid to Hall and Licata, attorneys fees and costs, and for such other and further relief that this Court deems appropriate. LITTRELL, DOROUGH, MCLEAN, RICHARDSON, CARTER, BACKSTREET BOYS, and BACKSTREET PRODUCTIONS, DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.

Dated this __17th__ day of January 2006.
New York, New York

_Jamie M Brickell_

**JAMIE BRICKELL, ESQUIRE**
**PRYOR CASHMAN SHERMAN FLYNN, LLP**
410 Park Avenue
New York, NY 10022-4441
PH:    (212) 326.0869
Fax:   (212) 421.4100
            **ATTORNEYS FOR PLAINTIFFS**

**CLAY M. TOWNSEND, ESQUIRE**
Florida Bar No.:  363375
**KEITH R. MITNIK, ESQUIRE**
Florida Bar No.:  436127
            **Appearing pro hac vice**
**MORGAN & MORGAN, PA.**
20 North Orange Avenue, 16th Floor
P.O. Box 4979
Orlando, Florida 32802-4979
PH:    (407) 420-1414
Fax:   (407) 425-8171

SEALING ORDER

Jamie M. Brickell (JMB 0871)
Jessica A. Whiting (JAW 2797)
PRYOR CASHMAN SHERMAN & FLYNN LLP
410 Park Avenue
New York, New York 10022
(212) 421-4100

Clay M. Townsend
Keith R. Mitnik
MORGAN & MORGAN, P.A.
20 N. Orange Avenue
Orlando, Florida 32801
(407) 420-1414

Attorneys for Defendants Brian Littrell, Howard Dorough, Alexander McLean, Kevin
Richardson, Nickolas Carter, Backstreet Boys, Inc. and Backstreet Productions, Inc.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
LOUIS J. PEARLMAN and                          :
TRANS CONTINENTAL RECORDS, INC.,               :
                                               :        Index No. 604122/05
                    Plaintiffs,                :
                                               :        I.A.S. Part 60
        -against-                              :        Justice Fried
                                               :
BRIAN LITTRELL, HOWARD DOROUGH,                :        **SEALING ORDER**
ALEXANDER MCLEAN, KEVIN RICHARDSON,            :
NICKOLAS CARTER, BACKSTREET BOYS, INC.,        :
and BACKSTREET PRODUCTIONS, INC.               :
                                               :
                    Defendants.                :
-------------------------------------------------------------------X

**FILED**

FEB - 9 2006

NEW YORK
COUNTY CLERK'S OFFICE

ORDERED, that the specified exhibits to the Answer of defendants Brian Littrell,

Howard Dorough, Alexander McLean, Kevin Richardson, Nickolas Carter, Backstreet Boys, Inc.

and Backstreet Productions, Inc. (collectively "Defendants"), namely: (1) Exhibit C, May 1993

Galloway Letter; (2) Exhibit H, Settlement Agreement; (3) Exhibit I, Williams Settlement; and

(4) Exhibit J, Hall and Licata Settlement (collectively "the Sealed Exhibits"), be filed under seal

by designating and treating them as a "Sealed Document;" and it is further,

454251                                  1

ORDERED that since the Sealed Exhibits contain confidential information they will not be accessible to the public and as such will not be part of the public record; and it is further,

ORDERED that the Sealed Exhibits shall only be accessible to the following individuals:

-The attorneys in the case: Clay Townsend, Keith Mitkik, Jamie Brickell, Ralph DePalma, Jessica Whiting, Barry Brett and Matthew Aaronson.

-The parties: Trans Contintental Records, Inc., Louis Pearlman, Brian Littrell, Howard Dorough, Alexander McLean, Kevin Richardson, Nickolas Carter, Backstreet Boys, Inc. and Backstreet Productions, Inc.

-Paralegals, secretaries and other assistants designated by the attorneys listed above: Heather Schreiber, Bethanie Simms, Linda Pyle-McMillan, Vanessa Braeley, Stephanie Gonzalez, Jennifer Gauthier, Charmaine Thomas, Richard LaRosa, Gregory LaChaga, Isidore Zimmerman, Anthony Cardillo, and Mabel Torres.

ORDERED, that the Sealed Exhibits be filed in a sealed envelope containing the legend "Confidential- Sealed Document in Action No. 604122/05 (Fried, J.), Supreme Court of the State of New York, County of New York" and shall remain separate from the public records in this action, intact and unopened except as otherwise directed by the Court.

Dated: February 8, 2006
New York, New York

**FILED**

FEB - 9 2006

NEW YORK
COUNTY CLERK'S OFFICE

_____
Hon. Bernard Fried

**BERNARD J. FRIED**
**J.S.C.**

454251                                        2

Jamie M. Brickell (JMB 0871)
Jessica A. Whiting (JAW 2797)
PRYOR CASHMAN SHERMAN & FLYNN LLP
410 Park Avenue
New York, New York 10022
(212) 421-4100

RECEIVED

FEB  7 2006

PART 60

Clay M. Townsend
Keith R. Mitnik
MORGAN & MORGAN, P.A.
20 N. Orange Avenue
Orlando, Florida 32801
(407) 420-1414

Attorneys for Defendants Brian Littrell, Howard Dorough, Alexander McLean, Kevin
Richardson, Nickolas Carter, Backstreet Boys, Inc. and Backstreet Productions, Inc.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------------X
LOUIS J. PEARLMAN and                         :
TRANS CONTINENTAL RECORDS, INC.,              :
                                              :
                                              :   Index No. 604122/05
                    Plaintiffs,               :
                                              :   I.A.S. Part 60
         -against-                            :   Justice Fried
                                              :
BRIAN LITTRELL, HOWARD DOROUGH,               :   **SEALING ORDER**
ALEXANDER MCLEAN, KEVIN RICHARDSON,           :
NICKOLAS CARTER, BACKSTREET BOYS, INC.,       :
and BACKSTREET PRODUCTIONS, INC.              :
                                              :
                    Defendants.               :
----------------------------------------------------------------------X

         ORDERED, that the specified exhibits to the Answer of defendants Brian Littrell,

Howard Dorough, Alexander McLean, Kevin Richardson, Nickolas Carter, Backstreet Boys, Inc.

and Backstreet Productions, Inc. (collectively "Defendants"), namely: (1) Exhibit C, May 1993

Galloway Letter; (2) Exhibit H, Settlement Agreement; (3) Exhibit I, Williams Settlement; and

(4) Exhibit J, Hall and Licata Settlement (collectively "the Sealed Exhibits"), be filed under seal

2006 FEB -3 PM 2: 27

by designating and treating them as a "Sealed Document;" and it is further,

454251                                    1

ORDERED that since the Sealed Exhibits contain confidential information they will not be accessible to the public and as such will not be part of the public record; and it is further,

ORDERED that the Sealed Exhibits shall only be accessible to the following individuals:

-The attorneys in the case: Clay Townsend, Keith Mitkik, Jamie Brickell, Ralph DePalma, Jessica Whiting, Barry Brett and Matthew Aaronson.

-The parties: Trans Contintental Records, Inc., Louis Pearlman, Brian Littrell, Howard Dorough, Alexander McLean, Kevin Richardson, Nickolas Carter, Backstreet Boys, Inc. and Backstreet Productions, Inc.

-Paralegals, secretaries and other assistants designated by the attorneys listed above: Heather Schreiber, Bethanie Simms, Linda Pyle-McMillan, Vanessa Braeley, Stephanie Gonzalez, Jennifer Gauthier, Charmaine Thomas, Richard LaRosa, Gregory LaChaga, Isidore Zimmerman, Anthony Cardillo, and Mabel Torres.

ORDERED, that the Sealed Exhibits be filed in a sealed envelope containing the legend "Confidential- Sealed Document in Action No. 604122/05 (Fried, J.), Supreme Court of the State of New York, County of New York" and shall remain separate from the public records in this action, intact and unopened except as otherwise directed by the Court.

Dated: February 7, 2006
New York, New York

_____
Hon. Bernard Fried   **BERNARD J. FRIED**
2/7/06                        **J.S.C.**

EXHIBITS

Exhibit A





P9500001559

MAILING ADDRESS
P.O. BOX 5826 ORDER DATE : January 4, 1993
TALLAHASSEE, FL 32314

ORDER TIME : 12:45 PM

ORDER NO. : 171143

CUSTOMER NO: 87403A

CUSTOMER: Mr. Louis J. Pearlman
Louis J. Pearlman
9235 Ridge Pine Trail
Orlando, FL 32819

-----------------------------------------------

DOMESTIC FILING

NAME:     BACKSTREET BOYS, INC.

XX____ ARTICLES OF INCORPORATION
____ ARTICLES OF AMENDMENT
____ RESTATED ARTICLES OF INCORPORATION
____ ARTICLES OF DISSOLUTION
____ REINSTATEMENT
____ ANNUAL REPORT
____ CERTIFICATE OF LIMITED PARTNERSHIP

PLEASE RETURN THE FOLLOWING AS PROOF OF FILING:

____ CERTIFIED COPY
XX____ PLAIN STAMPED COPY
____ CERTIFICATE OF GOOD STANDING

CONTACT PERSON: KELLY COURTNEY

EXAMINER'S INITIALS: 



ARTICLES OF INCORPORATION

OF

BACKSTREET BOYS, INC.

---

(A FLORIDA CORPORATION)

I, the undersigned, hereby make, subscribe, acknowledge and file these Articles of Incorporation for the purpose of becoming a corporation for profit under the laws of the State of Florida and do hereby further certify that I have become such corporation under and pursuant to the following Articles of Incorporation:

ARTICLE I

The name of the corporation is:

BACKSTREET BOYS, INC.

ARTICLE II

This corporation may engage in any activity or business permitted under the laws of the United States and of the State of Florida.

ARTICLE III

The maximum number of shares of stock which this corporation is authorized to have outstanding at any time is:

One Thousand (1,000) Shares Without Par Value.

## ARTICLE IV

The amount of capital with which this corporation shall and does hereby begin business, shall be and is the sum of Five Hundred Dollars ($500.00)

## ARTICLE V

The corporation shall have perpetual existence.

## ARTICLE VI

The initial street address of the principal office of this corporation shall be and is: 9235 Ridge Pine Trail, Orlando, Florida 32819.

## ARTICLE VII

The number of the Directors of this corporation shall be One. That number may be increased from time to time by the by-laws adopted by the stockholders.

## ARTICLE VIII

The name and address of the first Board of Directors, who subject to the provisions of this Certificate of Incorporation, by-laws of this corporation and the laws of the State of Florida, shall hold office for the first year of the corporation's existence or until their successors are elected and qualified.

| NAME | STREET ADDRESS |
|------|----------------|
| Louis J. Pearlman | 9235 Ridge Pine Trail Orlando, Florida 32819 |

## ARTICLE IX

The street address of the initial registered office of the corporation shall be 1201 Hays Street, Tallahassee, Florida, 32301 and the name of the initial registered agent of the corporation at that address is Corporation Service Company.

## ARTICLE X

The name and mailing address of the incorporator is as follows:

| NAME | MAILING ADDRESS |
|------|-----------------|
| Jane S. Krayer | 1013 Centre Road<br>Wilmington, DE 19805 |

## ARTICLE XI

The officers of this corporation shall be a President, a Secretary, a Treasurer and such other officers, agents and factors as may be deemed necessary, including one or more Vice Presidents. All officers, agents and factors shall be chosen in such manner, hold their offices for such terms and have such powers and duties as may be prescribed by the By-Laws or determined by the Board of Directors.

The corporation reserves the right to amend, alter, change or repeal any provision contained in these Articles of Incorporation in the manner now or hereafter prescribed by law, and all rights conferred on stockholders therein are granted subject to this reservation.



EXHIBIT
A

STOCKHOLDERS STOCK RESTRICTION AGREEMENT

This Agreement is made as of _March 6th_, 1993, by and between the following Shareholders (and the Custodians thereof when necessary) of Backstreet Boys, Inc. (the Corporation hereafter):

Louis J. Pearlman,
Jeanne Tanzy Williams,
Sybil Galler,
Sam Licata,
Paula F. Dorough as custodian for Howard Dorough,
Denise McLean as custodian for Alex McLean,
Charles Edwards, and
Robert and Jane Carter as custodians for Nick Carter

RECITALS:

A.   The parties are all of the Shareholders of the Corporation.

B.   The parties desire to restrict the transfer of the stock on the terms and conditions contained in this Agreement.

THEREFORE, for good and valuable consideration, it is agreed as follows:

1.   The above recitals are true and are incorporated herein by reference.

2.   No party hereto shall sell or transfer any legal or equitable interest in the shares of stock of the Corporation to a third party or pledge the shares as collateral for any obligation to a third party, or in any manner encumber his or her shares of stock of the Corporation.

3.   On the death of any Shareholder, the Corporation, if it is legally able to do so, shall purchase the shares of the deceased Shareholder on the following terms and price:

The Stockholders and the Corporation agree that the purchase price of each share of stock, whether the purchase results from a transfer during lifetime or because of the death of a Stockholder, shall be, until changed, as hereinafter provided, the purchase price per share of stock initially entered on Schedule A, attached hereto and made a part hereof the same as if fully set forth herein.

The Corporation and the Stockholders, acting unanimously, shall annually redetermine the purchase price per share of stock and shall endorse with their signatures upon Schedule A hereto such redetermined purchase price per share of stock. If the Corporation and the Stockholders fail to redetermine the purchase price per share of stock after the lapse of a particular annual period, the

purchase price per share of stock as last previously stipulated
shall control.

If the parties fail to agree on the purchase price per share
of stock, the parties shall select an independent appraiser to
determine said price.   The appraisal shall be conducted in
accordance with the rules of the American Arbitration Association.

4.  In the event any Shareholder determines he or she wants to
terminate the business relationship, the Corporation shall purchase
all of his or her shares.  The price per share shall be determined
as described in Paragraph 3 above and shall be governed by Schedule
A.  The closing shall be ten (10) business days after the final
election of termination.

5.  In the event that shares are purchased by the Corporation
pursuant to Paragraphs 3 and/or 4 above, no shares of stock shall
be reissued except by majority vote of all shareholders.

IN WITNESS WHEREOF, the parties have executed this Agreement as
of the above date.

Louis J. Pearlman

Jeanne Tanzy Williams

Sybil Galler

Sam Licata

Paula F. Dorough as custodian
for Howard Dorough

Howard Dorough

Denise McLean, as custodian
for Alex McLean

Alex McLean

Charles Edwards

Robert Carter, as custodian for
Nick Carter

Jane Carter, as custodian
for Nick Carter

Nick Carter



SCHEDULE "A"

For the Fiscal Year January 8, 1993 through December 31, 1993, the purchase price of the stock for Backstreet Boys, Inc. shall be One Dollar ($1.00) per share and shall remain so until a subsequent determination by the shareholders of Backstreet Boys    c..

Exhibit B

## Letter of Agreement

This agreement is made and entered into as of the day and year written below by and between Backstreet Boys, Inc. and/or Backstreet Boys Productions, Inc. both Florida corporations, and Louis J. Pearlman, individually and as President, and Alexander James McLean, Howard Dwayne Dorough, Nickolas Gene Carter, Kevin Richardson, and Brian Littrell, the undersigned and as Artists.

The parties shall use their best efforts in this venture to promote and perform as required all necessary duties to ensure a successful singing quintet called the Backstreet Boys. Since a substantial amount of money will be invested in this venture by Louis J. Pearlman and/or his designee(s), the undersigned shall remain either employees hereunder and/or shareholders with all monies expensed to be treated as recoupable advances to Artist. At the sole discretion of Louis J. Pearlman, this agreement may be assignable to any corporation(s) or party whereby the undersigned may become exclusive artists under a recording agreement with an affiliated or unaffiliated company.

It is planned that Backstreet Boys, Inc. shall receive all recording royalties and Backstreet Boys Productions, Inc. shall receive all other income from touring, merchandising, licensing, etc. All of the undersigned will participate in these corporations.

It is further understood that Louis J. Pearlman, creator and founder of the Backstreet Boys, shall personally own the name Backstreet Boys and will continue to seek to trademark such.

It is agreed by Denise I. McLean (Guardian of Alexander James McLean) and Jane Carter (Guardian of Nickolas Gene Carter) to get proper court ratification of this and all related agreements with respect to their minors and to individually guarantee and accept the terms hereof and as guardians.

If this Backstreet Boys venture should not generate enough income to offset any and all recoupables, the undersigned shall not be held liable to pay back any outstanding sums.

Artists that require schooling up to high school graduation shall be provided proper tutoring at home and when travelling. Each minor shall be entitled to have one guardian on the road that will be reimbursed for travel costs, separate from any job functions they perform.

This agreement shall remain a part of any assignability or corporation(s) that the undersigned shall become a party to, and is hereby agreed and accepted individually and as employees and/or as Artists and/or as potential shareholders of



EXHIBIT
B

Backstreet Boys, Inc. and/or Backstreet Boys Productions
and/or as designated by its President.

We hereby are the undersigned who have agreed and accepted on
behalf of each of us individually that we accept the terms of
and are bound by the employment contract attached.

Date: _May 3, 1993_

Name: _(see attached copy)_

Guardian: _____

_____
Louis J. Pearlman, President

_____
Jeanne Tanzy Williams, Producer/
Vice President of Production

_____
Denise I. McLean, Director of
Public Relations

_____
Jane Carter, Director of
Operations

_____

_____

_____

_____

_____

_____

_____

_____

1998   4:11PM   RUDOLPH&BEER LLP                                    NO.087   P.2/13

## Letter 'of Agreement

This agreement is made and entered into as of the day and year written below by and between Backstreet Boys, Inc. and/or Backstreet Boys Productions, Inc. both Florida corporations, and Louis J. Pearlman, individually and as President, and Alexander James McLean, Howard Dwayne Dorough, Nickolas Gene Carter, Kevin Richardson, and Brian Littrell, the undersigned and as Artists.

The parties shall use their best efforts in this venture to promote and perform as required all necessary duties to ensure a successful singing quintet called the Backstreet Boys. Since a substantial amount of money will be invested in this venture by Louis J. Pearlman and/or his designee(s), the undersigned shall remain either employees hereunder and/or shareholders with all monies expensed to be treated as recoupable advances to Artist. At the sole discretion of Louis J. Pearlman, this agreement may be assignable to any corporation(s) or party whereby the undersigned may become exclusive artists under a recording agreement with an affiliated or unaffiliated company.

It is planned that Backstreet Boys, Inc. shall receive all recording royalties and Backstreet Boys Productions, Inc. shall receive all other income from touring, merchandising, licensing, etc. All of the undersigned will participate in these corporations.

It is further understood that Louis J. Pearlman, creator and founder of the Backstreet Boys, shall personally own the name Backstreet Boys and will continue to seek to trademark such.

It is agreed by Denise I. McLean (Guardian of Alexander James McLean) and Jane Carter (Guardian of Nickolas Gene Carter) to get proper court ratification of this and all related agreements with respect to their minors and to individually guarantee and accept the terms hereof and as guardians.

If this Backstreet Boys venture should not generate enough income to offset any and all recoupables, the undersigned shall not be held liable to pay back any outstanding sums.

*Pearlman has all the risk*

Artists that require schooling up to high school graduation shall be provided proper tutoring at home and when travelling. Each minor shall be entitled to have one guardian on the road that will be reimbursed for travel costs, separate from any job functions they perform.

This agreement shall remain a part of any assignability or corporation(s) that the undersigned shall become a party to, and is hereby agreed and accepted individually and as employees and/or as Artists and/or as potential shareholders of

Backstreet Boys, Inc. and/or Backstreet Boys Productions
and/or as designated by its President.

We hereby are the undersigned who have agreed and accepted on
behalf of each of us individually that we accept the terms of
and are bound by the employment contract attached.

Date: _May 3, 1993_

Name: _(see attached copy)_

Guardian: _____

_signature_
Louis J. Pearlman, President

_signature_
Denise I. McLean, Director of
Public Relations

_signature_
Jeanne Tanzy Williams, Producer/
Vice President of Production

_signature_
Jane Carter, Director of
Operations

_signature_

_signature_

_signature_

_signature_

_signature_

_signature_

_signature_

THIS EMPLOYMENT AGREEMENT is made and entered into as of the ___ day of April, 1993, by and between Backstreet Boys, Inc., a Florida Corporation (herein called "Corporation"), and _____ (herein called "Employee"), upon the terms and conditions hereinafter stated:

1. EXCLUSIVE EMPLOYMENT: Corporation hereby engages and employs Employee to render services to Corporation as artist/band member and in any other capacities designated by Corporation in all areas and fields throughout the entertainment and leisure time industries, upon and subject to the terms and conditions herein set forth. Employee hereby accepts such employment and agrees to keep and perform, diligently and conscientiously, all the duties, obligations and agreements assumed and entered into by him hereunder.

2. TERM: The term of employment hereunder shall commence as of the date hereof, and shall continue until April ___, 1998 (the "initial term") unless sooner terminated in accordance with the provisions hereof. Employee hereby grants to Corporation six (6) separate irrevocable options, each to extend the terms of this Agreement for a period of one (1) year each ("renewal terms"), such renewal terms to run consecutively beginning at the expiration of the initial term upon all of the terms and conditions herein contained. Each such option shall be deemed automatically exercised by Corporation, unless Corporation notifies Employee to the contrary, in writing, at least thirty (30) days prior to the end of the then current period of the term hereof.

In the event that an option is not exercised by Corporation, Employee shall be required to sell his stock to Corporation at the price agreed upon by vote of the Shareholders of Corporation in the relevant fiscal year.

3. SERVICES:
     (a) Employee shall render all services, subject to the supervision and direction of Corporation's Board of Directors, usually and customarily rendered by and required of persons employed in the capacities designated above and in the particular media or fields of the entertainment industry, and such other services as may be reasonably requested by Corporation. Corporation will consult with Employee as to all projects to be undertaken by Corporation, but Corporation will have final approval thereof. Employee represents that he is free to enter into this Agreement and that he has not made and will not hereafter make any commitment or agreement which could or might interfere with the full and complete rendition of all services hereunder. Employee agrees that throughout the term hereof he will render the above provided services solely and exclusively for Corporation and Employee shall not render such services for any other person, firm or corporation without the Corporation's prior permission. Employee shall not be prohibited from engaging in other entertainment related activities so long as they are not in direct competition with his duties hereunder. Employee shall be permitted

to engage in said other activities provided there is no conflict as determined by vote of the Shareholders of Corporation on a case by case basis.

(b)  Employee agrees to render services as artist/band member and such other services as Corporation may reasonably designate, on an exclusive basis, and to devote sufficient time, attention, skills and efforts in connection with Corporation's business, and to comply with all instruction, directions, requests, rules, and regulations made and issued by Corporation; to perform services conscientiously and to the full limit of his ability at all times and whenever and wherever required and desired by Corporation and as instructed by Corporation in all matters including those involving artistic taste and judgment; to faithfully perform such duties and exercise such powers from time to time as the Board of Directors may prescribe.  This Agreement, however, shall not be construed to prevent Employee from having investments, and devoting time to such personal matters that may require attention so long as such activities will not interfere with the performance of services as required under this Agreement as determined by Corporation and Employee on a case by case basis.

Employee shall not enter into any contracts, agreements or other legally binding documents involving the Corporation without first obtaining the approval of the President of Corporation.

(c)  Corporation shall have the right to transfer and assign this Agreement and all of its rights hereunder at its discretion. Corporation may also lend Employee's services hereunder to any person, firm or corporation.  In the event of such loanout, Employee agrees to render his services to such party to the best of his ability, and Corporation may grant to such party any or all rights and services which Corporation is entitled during the period of such loanout.  If Corporation shall loan Employee's services as aforesaid, no breach of any term or condition of this Agreement by such party shall be deemed a breach of this Agreement by Corporation, nor shall Employee have the right to terminate his employment hereunder, but in the event of such breach, Employee may decline to render further services for such party.  This Agreement shall inure to the benefit of Corporation's successors, licenses and assigns.

4.  COMPENSATION:  On condition that Employee fully and completely keeps and performs each and all of his obligations and agreements hereunder, and as full consideration for all services rendered or to be rendered by him to Corporation, and for all rights granted and/or agreed to be granted by Employee to Corporation, Corporation agrees to pay Employee and Employee agrees to accept the following sums:

(a)  For and in connection with the initial term of Employee's employment hereunder, a per diem shall be paid to employee on an as needed basis.  Corporation's President shall approve all of the expenditures for which Employee is seeking compensation prior to

PAGE 05

MAY-19-1998  17:10

FAX CENTRE

212 684 0920

4073450000

%86

05/18/1998  12:57

P.05

tha time they are incurred, less all amounts required to be deducted as hereinafter set forth, which sum shall be payable in such installments as Corporation shall from time to time determine. Employee agrees that Corporation may, as Employee's employer, deduct and withhold from the compensation payable to Employee hereunder that amounts required to be deducted and withheld by Corporation as Employee's employer under the provisions of any statute, regulation, ordinance, or order and any and all amendments thereto requiring the withholding or deduction of compensation. If Corporation makes any payments or incurs any charges for Employee's account, Corporation shall have the right and Employee hereby authorizes Corporation to deduct from any compensation payable to Employee hereunder any charges so paid or incurred by Corporation, but such right of deduction shall not be deemed to limit or exclude any other rights of credit or recovery or any other remedies Corporation otherwise may have. Nothing hereinabove set forth shall be deemed to obligate Corporation to make any such payments or incur any such charges. If it is determined that any such deduction hereinabove described is unauthorized, Corporation agrees to reimburse Employee promptly, it being agreed, however, that notwithstanding the determination that any deduction shall not be deemed to be a breach by Corporation of any of its obligations to Employee hereunder.

(b)    During the term hereof, Corporation agrees to pay, or reimburse Employee for all reasonable and previously approved business expenses incurred by Employee in connection with Employee's services under this Agreement. Employee shall also render services at such other place or places as Corporation may designate from time to time. When and if Employee is required to render such services away from Orlando, Corporation agrees to furnish or reimburse Employee for transportation and living expenses for Employee and his parent or guardian if Employee is under the age of eighteen (18) as may be reasonably required on account of the rendition of such services, or to pay Employee a fixed weekly sum as reimbursement for such expenses. Corporation's obligations under this paragraph shall not be affected by any suspension for any cause or by any right on Corporation's part to withhold compensation payable to Employee, but shall continue to and including the time that this Agreement expires or is otherwise terminated.

(c)    Corporation agrees to compensate Employee based on his percentage of ownership in Corporation at such time as the Corporation begins generating income. Corporation and Employee shall periodically assess the financial status and income of Corporation to determine said compensation.

(d)    Corporation agrees to review the services rendered by Employee hereunder at least annually and, at the discretion of Corporation, depending upon the financial condition of Corporation and Employee's performance during the period in question, to increase and decrease such compensation, and/or award bonuses, either directly or by way of contributions to deferred compensation

plans, such amount to be determined by Corporation in its sole discretion.

(d) Corporation further agrees to provide Employee with a pension plan for the employee's retirement benefit at the option of the Corporation's President.

5. **EXPENSES:** Employee shall be reimbursed for all reasonable and ordinary expenses incurred in connection with his employment hereunder, as set forth in Subclause 4(b) hereof, upon presentation to Corporation of vouchers or other evidence substantiating such expenses.

6. **LIFE OR OTHER INSURANCE:** Corporation may, in its discretion, at any time after the execution of this Agreement apply for and procure as owner and for its own benefit, insurance on Employee's life, or any other insurance, such as health or accident insurance, in such amounts and in such form or forms as Corporation may choose. Employee shall have no interest whatsoever in any such policy or policies, but shall, at the request of Corporation, submit to such medical examinations, supply such information, and execute such documents as may be required by the insurance company or companies to whom Corporation has applied for such insurance.

7. **ILLNESS OR INCAPACITY; FAILURE TO PERFORM; FORCE MAJEURE; TERMINATION; WITHDRAWAL BY EMPLOYEE:**

(a) Employee shall receive full compensation for any period of illness or incapacity during the term of this Agreement. However, Corporation shall have the right to suspend its obligations hereunder or terminate this Agreement, at its option, if Employee develops an illness or incapacity which shall totally disable him from rendering services to Corporation for a period of two (2) months or more in the aggregate, or six (6) weeks or more, in any one contract year. Such right to suspend or terminate shall be exercisable by Corporation by giving at least fourteen (14) days' written notice of its intention to suspend or terminate this Agreement and Employee's services hereunder, and only if at the end of such period Employee continues to remain totally disabled. If Employee is able to resume his duties under this Agreement within thirty (30) days following receipt of such notice, and if Employee shall continue to perform such duties on a regular basis for three (3) consecutive months thereafter, this Agreement and Employee's employment hereunder shall continue in full force, and Corporation's notice of intention to suspend or terminate shall have no further effect. For purposes of this clause, Employee shall be considered to be totally disabled if by reason of illness or incapacity, physical or mental, Employee is unable to fully perform any or all of the services required of him hereunder or comply with each and all of his obligations and agreements hereunder. In such instance, Corporation shall have the right and privilege to have medical examinations of Employee made by such physician or physicians as Corporation may designate, provided that Employee may have present and participating at such medical

PAGE 07
MAY-19-1998  17:11
FAX CENTRE
212 684 0920
40734500888
98%
05/18/1998 12:57
P.07

examinations any physician or physicians of his own choice at his own expense. The death of Employee before the expiration of the term hereof shall not be deemed a disability, such contingency being covered elsewhere in this Agreement.

(b)   Corporation shall have the right to immediately suspend its obligations hereunder, during or for any period or periods during which Employee shall fail, refuse or neglect to promptly, faithfully and completely perform any of the required services and/or other obligations hereunder as, when and wherever instructed or directed by Corporation. If any such suspension shall continue for a period or aggregate of periods in excess of four (4) weeks during the term hereof, then Corporation shall have the right, but not the obligation, to forthwith terminate Employee's employment hereunder, upon written notice given by Corporation to Employee.

(c)   Due to the nature of Corporation's business, Employee acknowledges that his abuse of drugs of any kind, including but not limited to alcohol, and/or his engagement in any illegal or immoral activity will reflect heavily on Corporation and prevent Corporation from conducting a profitable business. Employee hereby authorizes random drug testing at the request of Corporation. Upon confirmation to Corporation's satisfaction, of Employee engaging in said activities, Corporation shall have the right to immediately terminate this contract notwithstanding the notice provisions contained herein.

(i)   Employee and Corporation acknowledge that there are currently minors who are members of the group, Backstreet Boys, Inc. and Shareholders in the Corporation; therefore, the parent(s) and/or guardian(s) of said minors (although not Shareholders of Corporation) may be involved with the activities of Corporation as a result. In the event that Corporation and its Shareholders determine that said parent(s) and or guardian(s) are participating in activities that are not conducive to Corporation's existence, it shall so notify said parent(s) and/or guardian(s) to cease said activity. If said activity does not cease within a reasonable time as determined by Corporation, Corporation shall purchase said minors' stock in Corporation upon majority vote of its Shareholders to do so and this Agreement shall be deemed terminated notwithstanding the notice provisions contained herein.

(d)   If, during the time when Employee is rendering or is obligated to render services for Corporation hereunder, Corporation is hampered, interrupted or interfered with in any manner whatever in the conduct an operation of its business generally, by reason of any governmental law, ordinance, rule, order, decree or regulation, judicial order or decree or by reason of strike, labor conditions, boycott, epidemic, fire, riot, war, accident, flood, earthquake, force majeure, or act of God, or by reason of any cause, thing, or occurrence not within its control, then corporation may, at its option, suspend Employee's services for any period during which such hampering, interruption, interference, or other event or events shall continue; and no compensation shall accrue or be

payable to Employee for or during the period of such suspension. If any such suspension shall continue for a period in excess of thirteen (13) consecutive weeks or of twenty-six (26) weeks in the aggregate during any year of the term hereof, then either party may elect to cancel and terminate this Agreement by written notice of such election to the other. If this Agreement is terminated under the provisions of this Subclause 7(d), each party shall be released and discharged from and of any obligations hereunder, and the compensation, if any, theretofore accruing to Employee hereunder, when paid, shall be payment in full of the compensation due him hereunder. During any period of suspension provided for under this paragraph, and provided Employee shall not then be in default of any of the terms and conditions of this Agreement, Employee shall be free to render his services to any other person, firm or corporation or for or on his own behalf; provided, however, that Corporation shall have the absolute right to recall Employee to render his services hereunder on three (3) days' notice, in which event Employee agrees to report to Corporation to render his services hereunder at the expiration of such notice period. Notwithstanding anything to the contrary herein contained, during any period of suspension provided hereunder, this Agreement shall continue in full force and effect.

(e)    In the event of the suspension or termination of this Agreement pursuant to any of the provisions hereof, and except as hereinafter provided to the contrary, Corporation shall have no further obligations to Employee whatsoever, and all other obligations of Corporation to Employee shall be deemed excused; excepting, however,

(i)    if this Agreement is or becomes terminated in accordance with the provisions of Clauses 7(a), 7(c), 7(d), or 9, Corporation agrees to pay to Employee, or Employee's estate, as the case may be, any and all unpaid salary accrued up to the date of the actual termination of this Agreement, but not for any period or periods of Employee's suspension hereunder, and only to the extent Employee has actually performed services during the period which Corporation would otherwise compensate Employee in accordance with the provisions of this Agreement; and, in addition thereto;

(ii)    if this Agreement becomes terminated in accordance with the provisions of Clauses 7(a), 7(c), 7(d), or 9, Corporation agrees to pay to Employee, or Employee's estate, as the case may be, any earned but unpaid compensation due and owing to him, including, but not limited to, any and all payments and/or residuals regardless of when earned. The parties hereto agree that in the event this Agreement is terminated as provided above, Employee shall relinquish to and Corporation shall purchase his stock at the price as determined by the Shareholders of the Corporation in the relevant fiscal year.

Notwithstanding anything to the contrary herein, if Employee is suspended hereunder, Corporation shall have the right, but not the obligation, to correspondingly extend the term of this

PAGE 09

MAY-19-1998  17:12

FAX CENTRE

212 684 0920

%86

40734565888

05/18/1998  12:57

P.09

Agreement for such period of suspension.

(f)  The termination by Corporation of this Agreement shall not be construed to be a waiver by Corporation of any other right or remedies which it may have in the premises.

8.  VACATIONS:  Corporation agrees to give Employee during the term hereof, reasonable vacations, the time of taking of which and the duration of which shall be determined by Employee and Corporation in consultation with each other, having due regard to the nature of Employee's duties and the extent of the activities of the Corporation at any particular time.

9.  DEATH DURING EMPLOYMENT:  In the event of Employee's death prior to the expiration of the term hereof, this Agreement shall be deemed terminated and Corporation shall have only those obligations to Employee's estate as are set forth in Clause 7.

10.  UNIQUENESS:  It is distinctly understood and agreed that the services to be performed by Employee hereunder, and the rights and privileges herein granted to Corporation by Employee, are of a special, unique, unusual, extraordinary, and intellectual character which gives them a peculiar value, the loss of which cannot be reasonably or adequately compensated in damages in any action at law, and that a breach by Employee of any of the terms contained herein will cause Corporation irreparable injury and damage. Employee expressly agrees that Corporation shall be entitled to specific performance of this Agreement, and to injunctive or other equitable relief; however, this shall not be construed to be a waiver of nay of the rights or remedies which Corporation may have against Employee for damages or otherwise.

11.  GRANT OF RIGHTS:  Employee hereby grants, transfers and sets over to Corporation, and Corporation shall be entitled to and shall own solely and exclusively, forever and without limitation except as otherwise provided herein, and for all purposes, each and every and all rights and interests of any and every kind and character whatsoever in and to all of the results and proceeds of Employee's services hereunder.  Except as provided herein to the contrary, such rights shall include all rights throughout the world of production, manufacture, recordation and reproduction by any art or method, copyright, trademark and patent, whether now known or hereafter devised, whether such results and proceeds of Employee's services consist of literary, dramatic, musical, motion picture, photographic, mechanical or any other form of works, themes, ideas, compositions, creations or products. Although Corporation may own all rights to the work created by Employee hereunder, upon permission and approval of Corporation, Employee shall be entitled to use for personal or pecuniary gain said work and/or material.

Employee agrees that he will not transfer or attempt to transfer any right, privilege, title or interest in or to any of the things above specified, nor will he at any time grant the right to, authorize or wilfully permit any person, firm or corporation to

in any way infringe upon such exclusive rights hereby granted to Corporation without the express written permission of President of Corporation; and Employee authorizes Corporation, in Employee's name, or otherwise, to institute any proper legal proceeding to prevent such infringement. The rights herein granted and/or agreed to be granted to Corporation shall vest in Corporation, whether Employee's employment hereunder is terminated by the completion of all services herein agreed to be performed by Employee or sooner terminated by virtue of any right of termination herein granted to Corporation, or otherwise.

Notwithstanding the foregoing, Corporation shall not be required to utilize Employee's services hereunder or to utilize in any manner any of the results and proceeds of his services. Nothing contained in this paragraph shall be deemed to relieve Corporation of its obligation to pay Employee the compensation payable to him pursuant to this Agreement. The expiration or other termination of this Agreement for any cause shall not affect the exclusive ownership by Corporation of the results and proceeds of the services theretofore rendered by Employee hereunder or alter any of Corporation's rights, licenses and privileges in connection therewith.

12. **CREDIT:** Corporation agrees to consult with Employee in connection with any screen and advertising credit and billing to be accorded Employee for particular services rendered by him under this Agreement, and if Employee's services are lent by Corporation to third parties, Corporation shall endeavor to obtain the best possible credit and billing provisions for Employee in connection with any such engagements.

13. **COLLECTIVE BARGAINING AGREEMENT:** Employee agrees that during the term of this Agreement, at such time or times and during such period or periods as it may be lawful for Corporation to require Employee to do so, at Corporation's request and expense, Employee shall remain or become and remain a member in good standing of the then properly designated labor organization or organizations representing persons performing services of the type and character required to be performed by Employee hereunder. Corporation agrees that Employee's employment hereunder shall be subject to all of the terms and conditions of any applicable collective bargaining agreements. If there is any conflict between the terms of this Agreement and of any applicable collective bargaining agreement, this Agreement shall be modified to the extent necessary to cause Employee's employment to be in compliance with all of the terms and conditions of the applicable collective bargaining agreement, and as so modified, this Agreement shall remain in full force and effect.

14. **WAIVER:** No waiver by Corporation of any breach of any term or provision of this Agreement shall be construed to be a waiver of any preceding or succeeding breach of the same or any other term or provision hereof. Corporation's various rights and remedies hereunder shall be construed to be cumulative and no one

of them is exclusive of any other or of any right or remedy allowed
by law.

15.  NOTICES:  All notices and payments to be given hereunder
must be in writing and shall be given by the parties hereto only in
one of the following ways:   (1) by personal delivery; or (2) by
addressing them as indicated below, and by depositing them
registered or certified mail, postage prepaid in the governmentally
sanctioned official mail system, airmail, if the address is outside
of the country in which such notice is deposited; or (3) by
delivering them toll Prepaid to a telegraph or cable company.  If
so delivered, mailed, telegraphed or cabled, such notices shall,
except as herein expressly provided to the contrary, be
conclusively deemed to have been given when personally delivered or
on the date of delivery to the telegraph or cable company or on the
date of mailing, as the case may be.  The addresses of the parties
shall be those of which the other party actually receives written
notice and further notice are:

      (a)  All notices to Corporation shall be addressed to:  7380
Sand Lake Road, Suite 200, Orlando, 32819

with a courtesy copy to:  Melissa M. Trimble, Esq.
57 W. Pine Street, Suite 300, Orlando, FL 32801

      (b)   All notices to Employee shall be addressed to: _____

_____

with a courtesy copy to:  Melissa M. Trimble, Esq.
57 W. Pine Street, Suite 300, Orlando, FL 32801

   16.  SEVERABILITY:  Nothing contained in this Agreement shall
be construed to require the commission of any act contrary to law
and wherever there is an conflict between any provision of this
Agreement and any present or future statute, law, governmental
regulation or order or ordinance contrary to which the parties have
no legal right to contract, then the latter shall prevail, but in
such event the provision or provisions of the agreement affected
shall be curtailed and limited only to the extent necessary to
bring it or them within legal requirements.

   17.  GOVERNING LAW:  This Agreement shall be deemed to have
been made in the State of Florida, and its validity, construction
and effect shall be governed by and enforced pursuant to the
substantive laws of the State of Florida.

   18.  ENTIRE AGREEMENT:  This Agreement constitutes the entire
agreement between the parties hereto and shall supersede and all
prior written or oral agreements between Corporation and Employee
relating to the subject matter hereof and cannot be amended except
by written instrument signed by the parties hereto.  Employee
acknowledges that he has not executed this Agreement in reliance
upon any representation or promise make by Corporation or any
representative of Corporation except as expressly provided for in

this Agreement.  This contract shall not become effective until signed by Employee and countersigned by Corporation's duly authorized officer.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Backstreet Boys, Inc.

By:_____
President

By:_____
, Employee