# EXHIBIT G

## SETTLEMENT AGREEMENT

AGREEMENT, made as of this 1st day of October 1998, by and among Louis J. Pearlman, ("Pearlman"), Backstreet Productions, Inc., a Delaware corporation with principal offices at 7380 Sand Lake Road, Orlando, Florida 32819 ("BPI"), Backstreet Boys, Inc, a Delaware corporation with principal offices at 7380 Sand Lake Road, Orlando, Florida 32819 ("BBI"), Trans Continental Records, Inc., a Florida corporation with principal offices at 7380 Sand Lake Road, Orlando, Florida 32819 ("Transcon"), the individual members of the music group professionally known as the Backstreet Boys (the "Group"), to wit, Nickolas Carter ("Carter"), Howard Dorough ("Dorough"), Brian Thomas Littrell ("Littrell"), Alexander J. McLean ("McLean") and Kevin Richardson ("Richardson") (sometimes collectively referred to herein as the "Members of the Group"), Backstreet Management, Inc. ("BMI"), a Delaware corporation, all such parties referred to hereinabove are sometimes collectively referred to herein as the "Parties".

WHEREAS, since 1993, Carter, Dorough, Littrell, McLean and Richardson have been performing as the "Backstreet Boys," and each has entered into certain agreements or made certain arrangements with Pearlman, BPI, BBI, Transcon and others in respect thereof;

WHEREAS, Pearlman claims to be the owner of certain trademarks and trade names and, in that regard, claims to be the registrant, assignee or applicant in respect of the U.S. Service Mark Registration No. 1,031,736 and the mark "BACKSTREET" registered thereby, U.S. Trademark Registration No. 1,641,074 and the mark "BACKSTREET and design" registered

CONFIDENTIAL

377562-4

LDMR 000075

thereby; U.S. Trademark Application SN 75/294,486 for the mark "BSB (stylized)" and U.S. Trademark/Service Mark Application SN 75/294,498 for the mark "BACKSTREET BOYS (stylized)", together with any State and Foreign counterparts of such trademarks, service marks and trade names or other similar versions thereof and the goodwill associated therewith (collectively the "Trademarks");

WHEREAS, the Members of the Group have challenged the validity and enforceability of certain of the aforementioned agreements and Pearlman's ownership of the Trademarks;

WHEREAS, in connection with the business and affairs of the Group various disputes have arisen and certain actions and proceedings have been commenced which the Parties desire to resolve in accordance with the terms hereof, to wit:

(a)    an action entitled "Brian Thomas Littrell, Individually (and on behalf of The Backstreet Boys) v. Backstreet Management, Inc., et al.," Civil Action No. C-97-8163-33 in the Ninth Judicial Circuit Court in and for Orange County, Florida, which action was amended and thereafter removed to the United States District Court for the Middle District of Florida, Orlando Division (98-599-Civ-Orl-22A) (the "Littrell Action");

(b)    an arbitration entitled "Pearlman v. McLean et al.," Case No. 33-168-0008-98 with the American Arbitration Association in Orlando, Florida (the "Pearlman Arbitration");

(c)    an action entitled "Carter et al. v. Pearlman et al.," C.A. No. 16354NC, in the Court of Chancery of the State of Delaware in and for New Castle County asserting claims pursuant to §225 of the Delaware General Corporation Law (the "First Delaware Action"); and

CONFIDENTIAL

LDMR 000076

(d)    an action entitled "Carter et al, v. Pearlman et al.," C.A. No. 16458NC was commenced in the Court of Chancery of the State of Delaware in and for New Castle County asserting claims pursuant to §211 of the Delaware General Corporation Law (the "Second Delaware Action"), all such actions and proceedings to be sometimes collectively referred to herein as the "Pending Litigation";

WHEREAS, the Parties desire to settle the Pending Litigation and resolve outstanding disputes on the terms and conditions herein, without admitting or denying any of the claims, defenses or legal positions which were or could have been asserted;

NOW THEREFORE, the Parties agree, to the following:

1.    Transcon will receive, for the period through December 31, 2000 (the "Initial Period"), a sum equal to fifteen (15%) percent of the "Adjusted Income" of BBI and BPI. "Adjusted Income" as used herein shall mean all entertainment related income from all sources (including records) paid to or received by BBI and BPI, calculated after the deduction of (a) third-party commissions, including but not limited to agency and management commissions or any reasonable reserve therefor as may be established by the Board of Directors of BBI or BPI (as the case may be) (including any amounts payable to BMI and/or Wright Stuff Productions, Wright Entertainment Group, Johnny Wright and Donna Wright), third-party producer royalties and other third-party fees and commissions authorized by BPI or BBI, and (b) tour-related third-party expenses authorized by BPI actually paid or incurred, (c) all other third-party payments authorized by BPI or BBI, (d) and direct, out-of-pocket overhead expenses of BBI or BPI approved by BBI or BPI, provided, however, that in calculating Adjusted Income there shall be

CONFIDENTIAL

LDMR 000077

no deduction for salary or other payments or distributions made to the Members of the Group or Pearlman (or any related partes or affiliates thereof), it being the intention of the parties that all Adjusted Income for the Initial Period shall be divided 15% to Transcon and 85% divided equally by each of the Members of the Group and Pearlman (14.166% each), subject to any reasonable reserve as may be established by the Board of Directors of BBI or BPI (as the case may be), and that the parties' respective shares of Adjusted Income shall be paid at the same time and in accordance with the terms hereof. If Transcon has not received (or is not otherwise due) $6.5 million dollars during the Initial Period (including monies received or agreed to be paid pursuant to the Consulting Agreement referred to in Paragraph 7 below), Transcon shall be entitled to receive an additional five (5) percent of Adjusted Income for the period January 1, 2001 through December 31, 2001. Thereafter, no further payments shall be due to Transcon.

2.    All sums currently maintained in the Parker Chapin-Winterland escrow account (as established by the agreement among certain of the parties dated as of July 7, 1998) and all sums received from Winterland within ten (10) days of the date of this Agreement, including the payments due from Winterland pursuant to paragraph 1.2 of Exhibit B to the Winterland Tour Agreement dated as of February 23, 1998, shall, pursuant to appropriate written instructions to the Escrow Agent, be immediately distributed by the Escrow Agent in conformance with the terms of this Agreement. Following the execution of this Agreement, the appropriate parties shall send joint written instruction to Winterland that all other sums due from Winterland shall be paid directly to BPI. Upon receipt of such funds, BPI shall distribute all such funds in accordance with the terms of this Agreement.

3.    All income with respect to the Summer U.S. 1998 Tour, which included certain dates in Canada (the "US Tour"), as well as the County Fair dates (the "Fair Dates") and

377562-4

CONFIDENTIAL

LDMR 000078

South American dates ("SA Dates") performed in September 1998 immediately following the completion of the U.S. Tour, shall be distributed in accordance with terms of this Agreement. BMI, for the benefit of Johnny Wright, shall be entitled to commissions equal to six and one-quarter (6 ¼%) percent of the gross receipts derived from the US Tour after deduction of $25,000 per show and agency commissions paid or payable to Renaissance Entertainment, Inc. ("Renaissance"). BMI, for the benefit of Johnny Wright, shall further be entitled to commissions equal to five (5%) percent of revenues derived from the Fair Dates and SA Dates after deduction of the agency commission paid or payable to Renaissance (or any other similar agency fee). Notwithstanding the foregoing, BMI may have heretofore received commissions in excess of amounts due to BMI, for the benefit of Johnny Wright, under this Agreement for the US Tour, the Fair Dates and the SA Dates. Accordingly, with respect thereto, the Members of the Group shall receive a credit from Pearlman and Transcon in an amount equal to their proportionate share (i.e., 70.833%) multiplied by the difference between commissions heretofore paid to BMI for the US Tour, Fair Dates and SA Dates and the sum of twelve and one-half (12½%) percent of gross receipts derived from the US Tour, as calculated hereinabove, and ten (10%) percent of gross receipts derived from the Fair Dates and SA Dates, as calculated hereinabove (the "Commissions Adjustment"). (For example, if the Commissions Adjustment is equal to $1,000, the Members of the Group shall receive a credit for $708.33). Such credit shall be distributed to the Members of the Group from first monies received by BPI or BBI, which would otherwise be payable to Pearlman and Transcon. Upon satisfaction of the Excess Commission as set forth above, all payments otherwise due to Pearlman and Transcon from BBI or BPI shall resume in accordance with the terms of this Agreement. With respect to the Fair Dates and the SA Dates, Transcon shall be entitled to receive its full fifteen (15%) percent share of Adjusted Income, without giving

377562-4    CONFIDENTIAL    LDMR 000079

effect to the $100,000 advance payment received by each Member of the Group and Pearlman (the "Transcon Tour Adjustment"). For purposes of the US Tour, the Fair Dates and the SA Dates only, the $15,000 weekly salary paid to the Members of the Group and Pearlman shall be considered a tour expense, provided, however, that no compensation paid to the Members of the Group and/or Pearlman on subsequent tours or for any other matter shall be considered as a deductible expense for purposes of calculating payments due to Transcon under this Agreement. Any shortfall in distributable income from the Fair Dates and the SA Dates to satisfy the Transcon Tour Adjustment shall be satisfied out of revenues from the US Tour or out of BPI revenues generally.

4.    Subject to the Group's professional commitments, they will use best efforts to make-up the Minneapolis date within six (6) months from the date of this Agreement. Profits from the make-up date will be used to offset unrecoverable expenses from the Minneapolis date. To the extent that the date was missed for reasons within the Group's control, then those expenses (to the extent not off-set) will be deducted off-the-top of tour revenues.

5.    Pearlman will immediately assign all of his foreign and domestic rights to all Backstreet Boys-related trademarks to BPI. BPI shall reimburse Pearlman and/or Transcon for all legal and other expenses in respect of the Trademarks, which are $175,760.80 (subject to verification), including the reasonable and necessary expenses associated with the assignment of the Trademarks to BPI. Thereafter, all legal and other expenses associated with the Trademarks shall be borne by BPI. The Parties agree that they shall immediately take all reasonable and necessary steps to cause all domestic and foreign trademark rights relating to the Group to reside in BPI, including, without limitation, the withdrawal of any pending opposition or cancellation proceedings. BPI shall grant a non-exclusive, royalty free license of the Trademarks to BBI to the

CONFIDENTIAL

377562-4

LDMR 000080

extent required to carry-out applicable contractual obligations of BBI. Any license, assignment, transfer or other similar disposition which would deprive permanently and materially BPI of the use and enjoyment of the Trademarks, or any of them, shall require the unanimous consent of the Members of the Group and Pearlman. All existing intercorporate and trademark agreements involving Pearlman, Transcon, BBI and BPI will terminate and neither Pearlman nor Transcon shall assert any claim of ownership or other personal interest with respect to the Trademarks. Pearlman will immediately assign U.S. Trademark/Service Mark Application Sn. 74/720,239 for the mark "B-ROK and design" to Littrell. The Members of the Group agree that to the extent that they commercially exploit any trademark or trade name in connection with the activities of the Group, all revenue derived therefrom shall be paid to and be the property of BPI.

6.    All claims and counterclaims (including, without limitation, any asserted in the Pending Litigation) among the Members of the Group, Pearlman and Transcon will be released, and the Parties shall take all necessary steps to cause the Pending Litigation to be dismissed with prejudice as against Pearlman, Transcon and the other parties, except that all claims which have been or could be asserted against Donna Wright and Wright Stuff Productions in the Littrell Action or otherwise shall not be dismissed and all Parties hereto expressly reserve all rights, claims, counterclaims and legal positions against Donna Wright and Wright Stuff Productions. The parties hereby authorize and instruct their counsel to execute and file such stipulations (or such other instruments as may be necessary), or to take such other actions as may be necessary, in the Littrell Action, the Pearlman Arbitration, the First Delaware Action and the Second Delaware Action to effect a dismissal or discontinuation of such proceedings in accordance with the terms of this Agreement. Unless otherwise provided herein, Pearlman, Transcon and the Members of the Group shall bear their own legal fees and expenses in

CONFIDENTIAL

LDMR 000081

connection with the Pending Litigation, and the negotiation of this Agreement and the settlement agreement with BMI and Johnny Wright of even date herewith.

7.    Transcon will retain all monetary claims pursuant to its Consulting Agreement with Zomba dated as of March 29, 1994, including, without limitation, the 2% override on record sales (the "Override Royalty"). The Members of the Group will take no action to oppose payment of the Override Royalty. The Parties agree that the Override Royalty will not be discussed or introduced in connection with any future negotiations or re-negotiations between the Group and Zomba. The Group and Pearlman (and their designated representatives) will jointly conduct any such negotiations or renegotiations between the Group and Zomba. A majority of the Group and Pearlman shall determine, after full consultation between and among them (and their designated representatives), the terms, conditions and provisions thereof.

8.    Each Member of the Group will repay his personal loans to Transcon in the amounts set forth on Schedule A hereto (such amounts being subject to verification) as follows: fifty (50%) percent by December 31, 1998 and the remaining fifty (50%) percent by no later than March 31, 1999. Except as provided in paragraph 5 hereof, all other loans or advances previously made by Transcon to BPI and BBI (or to any other person, firm or corporation related to the Group) are hereby forgiven. Pearlman, Transcon, BPI and BBI represent and warrant that there are no loans, advances, debts or other obligations which will impact in any way upon the Group, BPI and BBI.

9.    Arrangements between the Members of the Group, BBI and BPI, on the one hand, and BMI and J. Wright, on the other hand, insofar as they pertain to the Management Agreement dated as of September 17, 1993, or otherwise with respect to the business and affairs of the Group, shall be as set forth in the separate agreement with BMI of even date herewith. All

-8-

CONFIDENTIAL

LDMR 000082

parties to this Agreement reserve any and all rights, claims, counterclaims and legal positions in respect of Donna Wright and Wright Stuff Productions.

10. Each Member of the Group agrees, jointly and severally, to furnish his services as a member of the Backstreet Boys, as a recording artist to BBI on an exclusive basis for all purposes in connection with BBI's activities as the corporation through which all of the Group's worldwide recording and recording-related activities (pursuant to the Zomba Recording Agreement or otherwise) have been and shall be conducted. Each Member of the Group agrees to fully perform and discharge, to the best of his ability, all obligations to BBI, and agrees that he will not enter into any agreement or make any commitment which would interfere with the full performance of his service obligations to BBI or the full performance by BBI of obligations under agreements currently applicable or agreements which may subsequently be entered into with third parties.

11. Each Member of the Group agrees, jointly and severally, to furnish his services as a live performing artist and entertainer as a member of the Backstreet Boys to BPI on an exclusive basis for all purposes in connection with BPI's worldwide activities as the corporation through which all of the Group's commercial activities, other than recording activities, have been and shall be conducted. In that regard, all revenues earned in connection with the commercial activities of the Group other than with respect to the sale and commercial exploitation of any phonograph record and/or record, including, without limitation, any audiovisual record, as these terms are defined in the Zomba Recording Agreement, are to be paid to BPI. Each Member of the Group agrees to fully perform and discharge to the best of his ability, all obligations to BPI and agrees that he will not enter into any agreement or make any commitment which would interfere with the full performance of his obligations to BPI or the full performance by BPI of

377562-4

CONFIDENTIAL

LDMR 000083

obligations under agreements currently applicable or agreements which may subsequently be entered into with third parties.

12.     Each Member of the Group agrees to furnish to BBI and BPI all standard and customary name and likeness rights as a member of the Backstreet Boys, including, without limitation, the right to use and reproduce his name and the name "Backstreet Boys" and the individual and collective likenesses of the Members of the Group, as well as any biographical information relating to the Group and its members, and all of the logos, trademarks and service marks owned or controlled by or licensed to BBI or BPI, provided, however, that with respect to any commercial use of such name and likeness rights, the Group shall have the right to approve the use of their name and likeness, and which shall be subject to full and meaningful prior consultation with Pearlman.

13.     Nothing contained in this Agreement is intended to prevent the Members of the Group from furnishing their services, or providing name and likeness rights, to or through a related or affiliated entity or an unrelated third-party, provided that the benefits derived from such services and such rights are realized by the Members of the Group, Pearlman and Transcon in amounts in accordance with the terms and provisions hereof and any arrangement that does not so provide shall be null and void.

14.     Pearlman, Transcon, the Group, BBI and BPI shall provide to each other a complete list of all agreements, contracts and other arrangements which relate to the Group (or the Members of the Group in connection with their activities with the Group), the Trademarks or otherwise with respect to the subject matter of this Agreement and which either (i) presently exist, (ii) have existed prior to the date hereof, or (iii) are being presently negotiated or contemplated by any such parties.  All such agreements, contracts and arrangements shall be reviewed by the

CONFIDENTIAL

LDMR 000084

Group and Pearlman with a view toward evaluating whether or not each will be continued, reviewed, modified, canceled or entered into, as may be determined. Specifically, with regard to the Website, it is acknowledged that BPI will control its content and operations. All sums heretofore received pursuant to such agreements shall be an asset of BPI and shall be shared among the parties as herein provided; to the extent not already so deposited to the account of BPI, such sums shall promptly be so deposited. Full accounts with respect to all of the foregoing will be promptly provided to BPI and the Group. The Parties acknowledge that Carter has disclosed the existence, but shall not be required to disclose the contents, of an agreement between Carter and Zomba which relates to his pursuits as a solo artist.

15.    Notwithstanding anything to the contrary herein, neither the loan-out agreements contemplated by this Agreement, nor the provisions of paragraphs 10, 11, 12 or 13 above, nor any income participation by Pearlman, Transcon, BMI, BBI or BPI will apply with respect to the activities of one or more individual Members of the Backstreet Boys which are not related to the Group's collective professional activities. Other than for purposes of identification or historical background, no reference to the Group name will be made in connection with any such individual activities, and none of the Trademarks or other tradenames, trademarks, or logos relating to the Group (or the Backstreet Boys) will be used in connection therewith.

16.    The Members of the Group and Pearlman shall share equally in the profits and/or losses (and expenses) of BBI and BPI, subject to any reasonable reserves as may be established by the Board of Directors of BBI or BPI (as the case may be). Each Member of the Group and Pearlman will serve on the Board of Directors of BBI and BPI and, except as otherwise provided, such Boards of Directors will govern each corporation by majority vote. Pearlman will have certain minority shareholder rights and protections designed primarily to

CONFIDENTIAL

LDMR 000085

prevent the Group from freezing Pearlman out, the wasting of corporate assets, the disenfranchisement of Pearlman and/or the material impairment of Pearlman's interests in the corporations. In this regard, BBI and BPI shall not take any action without Pearlman's prior consent to the following: (a) any amendment to the Articles of Incorporation or By-Laws of the corporations that would adversely impact Pearlman's rights or interests; (b) any change in the number of directors composing the Board of Directors of the corporations; (c) the dilution of Pearlman's stock interest in either of the corporations; (d) the liquidation, dissolution or termination of its corporate existence; (e) the entering into of any contract outside of the corporations' activities in the entertainment industry; (f) the execution, amendment or modification of any employment or consulting agreement with any Stockholder or any change in the status of Pearlman as President of the corporations during the Initial Period; (g) any material change in the financial or accounting methods, policies or practices of the corporations; and (h) the institution, settlement or concession of any lawsuit that would adversely impact Pearlman's rights or interests as a stockholder of the corporations. Pearlman shall receive notice of and be invited to attend all meetings of the Board of Directors of BBI and BPI. Pearlman will be President of BBI and BPI for the Initial Period and the Members of the Group shall, at all times, use best efforts to consult with Pearlman on all material matters relating to the business affairs of BBI and BPI. The irrevocable proxies allegedly heretofore granted to Pearlman are hereby dissolved. The terms and provisions relating to the governance of BBI and BPI shall be more particularly set forth in amended and restated shareholder agreements, although the failure for any reason to finalize such shareholder agreements shall not effect the full enforceability of this Agreement. Except as may otherwise be provided herein, the sale or disposition of any physical assets owned by BBI and/or BPI shall be determined by the Board of each such corporation and

CONFIDENTIAL

377562-4

LDMR 000086

the proceeds from any such sale or disposition shall be the property of BBI or BPI, as the case may be.

17.    Transcon and BBI have retained an auditing firm to conduct an audit of Zomba to determine, inter alia, whether the account statements rendered by Zomba to Transcon and BBI pursuant to the Zomba Recording Agreement and Transcon Consulting Agreement are true, accurate and complete.  The fees and expenses associated with the audit of Zomba shall be chargeable as follows: one third (33 1/3%) to Transcon and two thirds (66 2/3%) to BBI.  Legal fees and expenses incurred from and after the date of this Agreement in connection with the pending litigation with Zomba in the United States District Court for the Southern District of New York will be equitably apportioned based upon good faith negotiations between and among the Parties.

18.    Transcon, Pearlman and the Members of the Group shall be entitled to receive quarterly statements from BBI or BPI, within thirty (30) days of the end of each quarter, which set forth an accounting of revenues earned or received and expenses incurred by BBI and BPI, and which reflect and calculate sums due to the Parties in accordance with the terms of this Agreement.  BBI and BPI agree to maintain all of their financial books and records in good order and, upon request, Pearlman and the Members of the Group shall be entitled to receive bank account, accounting and financial information with respect to business and affairs of BBI and BPI. Each of the Parties may retain an independent certified public accountant to examine such books and records during normal business hours, upon reasonable notice, and not more than once during any twelve (12) month period and not more than once with respect to any particular statement or period covered thereby.  No Party shall have the right to examine or inquire into any matters or items which are embraced by or contained in any statement after the expiration of twenty-four

CONFIDENTIAL

LDMR 000087

(24) months from and after the date of delivery of such statement, and any such statement shall be final and conclusive upon the expiration of such twenty-four (24) month period. For so long as BBI and BPI are actively engaged in business, Pearlman and the Members of the Group shall be delivered true copies of any annual financial statements of BBI or BPI. Transcon shall be delivered such statements for a period of three (3) years from the date of this Agreement.

19.    Subject to the terms and conditions of this Agreement, the Members of the Group, on the one hand, and Pearlman, Transcon, BBI and BPI, on the other hand, hereby and forever release and discharge each other from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against each such Party and their respective successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Agreement.

20.    Each of the Parties represents and warrants that he or it has the full power and authority to be bound, and intends to be bound by all of the terms and conditions set forth herein and to execute all documents and perform all acts and transactions required hereby. Each of the Parties further represents and warrants that he or it has not entered into any agreements, arrangements or understandings with any other Party or with any third-party, whether orally or in writing, relating to the subject matter hereof or to the business and commercial affairs of the Group, that neither the delivery of this Agreement, nor the performance of any obligations contemplated by this Agreement will result in the breach or default under any license, contract, agreement, arrangement or understandings to which he or it is subject.



377562-4

LDMR 000088

21.     If any provision of this Agreement shall be determined to be invalid or unenforceable to any extent, the remainder of the terms and provisions of and undertakings in this Agreement and the application of such terms, provisions and undertakings shall not be affected and shall be enforced to the greatest extent permitted by law.

22.     Nothing expressed or referred to in this Agreement will be construed to give any person other than the Parties to this Agreement any legal or equitable right, remedy, or claim under or with respect to this Agreement or any term or provision of this Agreement. This Agreement and all of its terms and provisions are for the sole and exclusive benefit of the Parties to this Agreement.

23.     Each of the Parties to this Agreement represent and warrant to the other that he, she or it has full opportunity to obtain, and has in fact obtained, the advice of his or its own legal counsel with respect to this Agreement and the transactions contemplated thereby.

24.     The Parties agree that the terms and provisions of this Agreement are the result of negotiations between the Parties and/or their counsel, and that this Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or their counsel participated in the drafting of this Agreement.

25.     Each party hereto shall promptly execute or deliver such agreements, instruments, certificates and other documents and perform such other and further acts as any other party hereto may reasonably request or as may otherwise be necessary or proper to consummate and perfect the transactions contemplated hereby, provided, however, a good faith disagreement regarding what agreements, instruments, certificates or other documents which may be required under this paragraph, shall not constitute a breach of this Agreement.

LDMR 000088

26.    Any notice or demand required or permitted to be given or made hereunder to or upon any party hereto shall be deemed to have been duly given or made for all purposes if (a) in writing and sent by (i) messenger or an overnight courier service against receipt, or (ii) certified or registered mail, postage paid, return receipt requested, or (b) sent by telegram, telecopy, telex or similar electronic means, provided that a written copy thereof is sent on the same day by postage paid first-class mail, to such party at the following address:

To the Group or any
Member of the Group:

c/o Pryor, Cashman, Sherman & Flynn
410 Park Avenue
New York, New York 10022-4441
Attn: Howard Siegel, Esq.
Fax: (212) 326-0101

To Nick Carter:

c/o Leonard L. Lewin, Esq.
Gadsby & Hannah, LLP
225 Franklin Street
Boston, MA 02110-2811
Fax: (617) 345-7000

To TransCon
or Pearlman at:

Louis J. Pearlman
c/o TransContinental Records, Inc.
7380 Sand Lake Road, Suite 350
Orlando, FL 32819
Fax: (407) 345-0888

With a copy to:

Rudolph & Beer
432 Park Avenue South
2nd Floor
New York, New York 10016
Attn: Steven C. Beer, Esq.
Fax: (212) 684-0920

To BBI or BPI:

To all of the foregoing addressees

CONFIDENTIAL

LDMR 000090

or such other address as any party hereto may at any time, or from time to time, direct by notice given to the other parties in accordance with this Section. The date of giving or making of any such notice or demand shall be, in the case of clause (a)(i), the date of the receipt; in the case of clause (a)(ii), five business days after such notice or demand is sent; and, in the case of clause (b), the business day next following the date such notice or demand is sent. Any notice sent by a Member of the Group to the Group shall also be sent in the manner prescribed hereinabove for the giving of notice to Pearlman.

27.     This Agreement, and each right, interest and obligation hereunder, may not be assigned by any party hereto without the prior written consent of the other parties hereto, and any purported assignment without such consent shall be void and without effect. Subject to the preceding sentence, this Agreement shall be binding upon and inure to the benefit of the parties hereto and to their respective successors and permitted assigns.

28.     This Agreement shall be governed by the laws of the State of New York, without giving effect to principles of conflicts or choice of law. Each of the Parties hereto hereby consents to the jurisdiction of any state or federal court located within the County of New York, State of New York, and irrevocably agrees that all actions or proceedings relating to this Agreement must be litigated in such courts, and each of the Parties waives any objection which it may have based on improper venue or forum non conveniens to the conduct of any proceeding in any such court.

29.     The Parties and their respective counsel shall keep this Agreement and all terms and conditions of this Agreement strictly confidential and shall not disclose said terms and conditions to any third party, unless otherwise required by law, provided, however, that each of

377562-4

CONFIDENTIAL

LDMR 000091

the Parties may disclose the terms of this Agreement to their respective financial advisors, attorneys and to third-parties with whom the Parties conduct business on a "need to know" basis. No disclosure shall be made to any third-party unless, prior to such disclosure, each such third-party undertakes, in writing, to maintain the confidentiality of this Agreement and the terms thereof.

30.   This Agreement contains the entire understanding among the parties with respect to, and contain all terms and conditions pertaining to, the subject matter hereof. This Agreement supersedes any prior agreements, arrangements or understanding between Parties, whether written or oral, relating to the subject matter hereof. No express or implied warranties, covenants or representations have been made concerning the subject matter of this Agreement unless expressly stated herein. Any prior written or oral negotiations not contained in this Agreement are of no force or effect whatsoever. In executing this Agreement, the Parties have not relied and do not rely on any statements, inducements, promises, or representations made by any other party or their agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement.

31.   This Agreement may not be changed, altered, or modified except in writing signed by each of the Parties whose rights or interest is affected thereby. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by each of the Parties to be charged.

32.   This Agreement may be signed in counterparts and shall become effective as if executed in a single, complete document upon its execution by all parties. Facsimile signatures of the undersigned parties will have the same force and effect as original signatures.

377562-4

CONFIDENTIAL

LDMB 000003

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of

the date indicated on the first page hereof.

LOUIS J. PEARLMAN

BACKSTREET PRODUCTIONS, INC.

By:
    Name: Louis J. Pearlman
    Title:  President

BACKSTREET BOYS, INC.

By:
    Name: Louis J. Pearlman
    Title:  President

TRANS CONTINENTAL RECORDS, INC.

By:
    Name: Louis J. Pearlman
    Title:  President

_____

NICKOLAS CARTER

_____

HOWARD DOROUGH

_____

BRIAN THOMAS LITTRELL

_____

ALEXANDER J. MCLEAN

_____

KEVIN RICHARDSON

CONFIDENTIAL

LDMR 000093

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of

the date indicated on the first page hereof.

LOUIS J. PEARLMAN

BACKSTREET PRODUCTIONS, INC.

By:_____
    Name: Louis J. Pearlman
    Title:  President

BACKSTREET BOYS, INC.

By:_____
    Name: Louis J. Pearlman
    Title:  President

TRANS CONTINENTAL RECORDS, INC.

By:_____
    Name: Louis J. Pearlman
    Title:  President

_____
NICKOLAS CARTER

_____
HOWARD DOROUGH

_____
BRIAN THOMAS LITTRELL

_____
ALEXANDER J. MCLEAN

_____
KEVIN RICHARDSON

-19-

377562-4

CONFIDENTIAL

FRCM : SPECTRA MUSIC INC                    PHONE NO. : 9136418192                    Oct. 23 1998 10:59AM P3

10/05.98  05.10  FAX 14079332113              DENISE MCLEAN

OCT 22 '98  07:27PM PARKER CHAPIN  212 726 6283                                      P.2

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of

the date indicated on the first page hereof.

LOUIS J. PEARLMAN

BACKSTREET PRODUCTIONS, INC.

By: _____
    Name: Louis J. Pearlman
    Title: President

BACKSTREET BOYS, INC.

By: _____
    Name: Louis J. Pearlman
    Title: President

TRANS CONTINENTAL RECORDS, INC.

By: _____
    Name: Louis J. Pearlman
    Title: President

_____
NICKOLAS CARTER

_____
HOWARD DOROUGH

_____
BRIAN THOMAS LITTRELL

_____
ALEXANDER J. MCLEAN

_____
KEVIN RICHARDSON

377102-4                                        -19-

CONFIDENTIAL

LDMR 000095

## PERSONAL ACCOUNTS

| | |
|---|---|
| Nickolas Carter | $204,962.56 |
| Howard Dorough | 3,377.71 |
| Brian Thomas Littrell | 47,434.25 |
| Alexander J. McLean | 123,805.86 |
| Kevin Richardson | 57,602.96 |
| **TOTAL:** | **$437,183.34***

## SCHEDULE A

---

* Subject to verification. Does not include apportioned costs of charter flight taken by Kevin and Brian or recent charge account expenses, if any.

CONFIDENTIAL

LDMR 000096

MAR 25 '99  12:28PM PARKER CHAPIN ...  ... ... ....

# AMENDMENT TO SETTLEMENT AGREEMENT

Amendment dated as of the 24th day of March 1999, by and among Louis J. Pearlman, ("Pearlman"), Backstreet Productions, Inc., a Delaware corporation ("BPI"), Backstreet Boys, Inc., a Delaware corporation ("BBI"), Trans Continental Records, Inc., a Florida corporation ("Transcon"), the individual members of the music group professionally known as the Backstreet Boys (the "Group"), to wit, Nickolas Carter ("Carter"), Howard Dorough ("Dorough"), Brian Thomas Littrell ("Littrell"), Alexander J. McLean ("McLean") and Kevin Richardson ("Richardson") (sometimes collectively referred to herein as the "Members of the Group"), all such parties referred to hereinabove are sometimes collectively referred to herein as the "Parties".

WHEREAS, the Parties heretofore entered into a Settlement Agreement dated as of October 1, 1998 (the "1998 Settlement Agreement") setting forth various rights and obligations between and among them;

WHEREAS, the Parties desire to amend certain provisions of the 1998 Settlement Agreement as more particularly set forth in this Amendment (the "Amendment");

NOW THEREFORE, for and in consideration of the mutual promises and covenants hereinafter contained, and other good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the Parties agree, to the following:

    1.    **Definitions: Effectiveness**. All terms defined in the 1998 Settlement Agreement shall have the same meanings in this Amendment, unless otherwise expressly stated in this Amendment. The 1998 Settlement Agreement, as amended by this Amendment, are sometimes collectively referred to herein as the "Agreement". This Amendment, modifying the

CONFIDENTIAL

1998 Settlement Agreement, shall be effective upon receipt by Transcon and Pearlman of the payments required by paragraph 4 hereinbelow. The date of receipt of such payments by Transcon and Pearlman shall be referred to herein as the "Effective Date".

        2        **Revised Transcon Participation**. Transcon's participation in the Adjusted Income of BBI and BPI as defined in paragraph 1 of the 1998 Settlement Agreement for the period January 1, 1999 through December 31, 1999 shall be reduced from 15% to 8.75%, with the remainder of Adjusted Income for that period, to wit, 91.25%, to be divided equally between and among Pearlman and each of the Members of the Group (i.e., 15.2083% each). Transcon's 8.75% participation in Adjusted Income for 1999 shall include, without limitation, participation in the advance payment from Zomba Recording Corporation ("Zomba") as referred to in paragraph 4 hereinbelow. Transcon's participation in Adjusted Income for the period January 1, 2000 through December 31, 2000 shall be reduced from 15% to 7.5%, with the remainder of Adjusted Income for that period, to wit, 92.5%, to be divided equally between and among Pearlman and each Member of the Group (i.e., 15.4166% each).

        3.       **Transcon Extension Rights**. The penultimate sentence of paragraph 1 of the 1998 Settlement Agreement shall be deleted and replaced with the following: "If Transcon has not received (or is not otherwise due) at least $6.5 million from regular accountings pursuant to ¶18 for the period January 1, 1999 through December 31, 2000 in payments from BBI and BPI pursuant to this paragraph and by virtue of its retained share of the 2% Override Royalty claim pursuant to the Consulting Agreement, then Transcon shall be entitled to an additional 5% of Adjusted Income for the period January 1, 2001 through December 31, 2001, with the remainder

CONFIDENTIAL

of Adjusted Income for that period, to wit, 95%, to be divided equally between and among

Pearlman and each Member of the Group (i.e., 15.8333% each)."

4.      Zomba Royalty Advance.  Transcon's and Pearlman's share in Adjusted

Income shall include, without limitation, their immediate participation in the $14,600,000 general

advance to be received from Zomba (the "Zomba Advance"), as more particularly set forth in an

agreement dated as of March 1, 1999, which agreement amends the recording agreement by and

between BBI and Zomba, dated as of March 24, 1994, as further amended on May 1, 1997 (the

"Recording Agreement").

5.      Reimbursement of Expenses.  BBI shall pay Transcon the following

amounts:  (a) $75,000, representing two-thirds of the fees incurred through the date of this

Amendment with respect to the audit services rendered by Moss Adams, LLC on behalf of the

BBI and Transcon and (b) $40,000, representing one-half of the legal expenses incurred by BBI

and Transcon since October 1, 1998 in connection with litigation pending in the United States

District Court for the Southern District of New York, entitled "Zomba Recording Corporation v.

Louis Pearlman, et al.", 98 Civ. 5937 (the "Zomba Litigation").  Transcon will provide

appropriate documentation of the foregoing.  BBI shall, upon presentation of appropriate

documentation, also reimburse Transcon for reasonable administrative and other costs incurred by

Transcon on behalf of BBI and BPI, including, financial, insurance, fan club, trademark, and

merchandise related services and expenses for the period October 1, 1998 through the Effective

Date, and other legal fees and expenses incurred on behalf of BBI and BPI.

6.      Addresses for Payments and Statements.  All payments to be made, and

all statements to be rendered, to Transcon under this Agreement shall be delivered to Trans

-3-

CONFIDENTIAL

Continental Records, Inc., 7380 Sand Lake Road, Orlando, Florida 32819, Attn.: Mr. Alan Siegel or as otherwise instructed by Transcon in writing.  All payments to be made, and statements to be rendered, to Louis J. Pearlman under this Agreement shall be delivered to Mr. Pearlman, c/o Trans Continental Records, Inc., 7380 Sand Lake Road, Orlando, Florida 32189 or as otherwise instructed by Mr. Pearlman in writing.

       7.    **Administration of Funds.**  The Zomba Advance shall be deposited into one or more client trust accounts of the accounting firm of Gudvi, Chapnick & Oppenheimer, Inc. (the "Gudvi Firm"), located at 15-250 Ventura Boulevard, Suite 900, Los Angeles, California 91403 (each, a "Client Trust Account").  The Gudvi Firm shall promptly calculate and distribute to Pearlman, Transcon and each of Carter, Dorough, Littrell, McLean and Richardson their respective proportionate shares of the Zomba Advance, together with a statement accounting for the calculation of any permitted deductions against Adjusted Income.  All other revenues payable to BBI and BPI in connection with the commercial exploitation of the Group shall be deposited and maintained in bank accounts in the names of BBI and BPI, to be administered by, and under the supervision of the Gudvi Firm or other successor.  BBI and BPI shall promptly provide Transcon and Pearlman notice in the event that the Gudvi Firm is no longer administering BBI's and BPI's bank accounts.  In regard to the foregoing, BBI and BPI and the Gudvi Firm shall execute the letter of instruction annexed hereto as Exhibit "A", and shall provide a true copy thereof to Transcon and Pearlman simultaneous with the execution of this Amendment.  A letter similar to Exhibit "A" shall be executed by a successor accounting firm or business manager.

       8.    **Transcon 2% Override Royalty.**  With respect to the Transcon 2% Override Royalty claim pursuant to the Consulting Agreement as asserted by Transcon in the

CONFIDENTIAL

MAR 25 '99  12:25PM MARKER COMPANY ...  ...

Zomba Litigation, the Members of the Group and BBI agree that they shall use all reasonable efforts to assist Transcon in the recovery of such claim. Transcon shall retain all rights in respect of the 2% Override Royalty claim on recordings released prior to the date of the Effective Date, including all subsequent sales thereof. For any commissionable recordings by the Group released by Zomba after the Effective Date, upon Transcon's receipt of 50% of such Override Royalty (i.e., 1% of the 2%), Transcon will pay all additional override royalties over and above 1% (if, as and when received) to BBI. BBI shall have the same arbitration rights as provided in paragraph 11 with respect to any claim that BBI has not received the full and proper amount owed pursuant to this paragraph.

    9.    Pearlman's Ongoing Role in Management.    Pearlman shall have regular and meaningful consultations with respect to the business and affairs of the Group.

    10.    Consent to Board Action.    Pearlman consents to all board action, taken at the meeting of BBI's Board of Directors held, telephonically, on March 15, 1999, including, without limitation, BBI's retention of The Firm, LLC as the Group's management, BBI's retention of the law firm of Ziffren, Brittenham, Branca & Fischer LLP and Gudvi Firm and the approval of the Zomba Advance and the Recording Agreement. Transcon and Pearlman also consent to dismissal of BBI's claims against Zomba in accordance with a Stipulation of Discontinuance in the form attached hereto as Exhibit "B," which will be signed and delivered to Gold, Farrell & Marks, LLP upon execution of this Amendment. Within three (3) days from the Effective Date, Transcon and Pearlman shall cause all funds in accounts maintained for BBI and BPI, and all financial and tax records in respect of BBI and BPI to be delivered, at BBI and BPI's expense, to the Gudvi Firm. From and after the Effective Date, neither Transcon nor Pearlman shall have any

-5-

CONFIDENTIAL

responsibility for providing financial, accounting and administrative support to BBI and BPI, and
BBI and BPI shall make all necessary and appropriate arrangements to carry out such functions.

11.    Procedure for Payment Disputes: Expedited Arbitration.  In the event
that following receipt of a quarterly accounting statement pursuant to paragraph 18 of the 1998
Settlement Agreement, Transcon or Pearlman claim that they have not received the full and
proper amounts owed pursuant to the 1998 Settlement Agreement as amended by this
Amendment, each may send a notice ("Claim Notice") to BBI and/or BPI, as the case may be,
setting forth their claims.  The Parties shall, in good faith, attempt to resolve the claims referenced
in the Claim Notice, however, if the Parties are unable to resolve such claim within forty-five (45)
days after delivery of the Claim Notice, Transcon or Pearlman, as the case may be, may
commence a binding expedited arbitration proceeding as more particularly described hereinbelow.
All amounts due to Transcon and Pearlman which are not subject to a bona fide dispute shall be
paid to Transcon and Pearlman during the pendency of such arbitration.  The Parties agree that all
disputes in respect of the Claim Notice shall be resolved exclusively by binding arbitration, which
shall be conducted in New York, New York or Los Angeles, pursuant to the expedited arbitration
rules and procedures of the Commercial Arbitration Rules of the American Arbitration
Association, or such other rules and procedures as the Parties mutually agree upon in writing.
Unless otherwise agreed, a single arbitrator shall preside over such proceeding and shall make a
determination with respect to the claim(s) being arbitrated based upon an interpretation of the
terms and provisions of this Agreement.  The determination of the arbitrator in the arbitration (the
"Award") shall be conclusive and binding on the parties to the dispute and shall not be subject to
appeal or judicial review  The Award of the arbitrator may be enforced in any court of competent

-6-

CONFIDENTIAL

MAR 25 '99  12:36PM

jurisdiction. The arbitrator shall provide in the Award that the prevailing party's out-of-pocket

costs and expenses (including, without limitation, attorneys' fees and expenses), as well as the

costs and expenses of the arbitration be paid by the other party or parties to the arbitration

proceeding, and the amounts due shall be paid, pursuant to the Award within ten (10) days of

receipt of the Award. If an Award is not paid within the time prescribed, the party entitled to

payment shall be entitled to recover all expenses incurred in enforcing such Award, including,

without limitation, reasonable attorneys' fees and costs.

       12.    <u>Transfer of BPI Shares</u>. Pearlman will transfer from his shares of BPI to

each of Carter, Dorough, Littrell, McLean and Richardson sufficient shares so that the equity

interest of each of Carter, Dorough, Littrell, McLean and Richardson and Pearlman in BPI shall

be equal provided; however, that if, upon a good faith determination by any of the parties or their

counsel, making such transfers would result in a material adverse federal income tax consequence

either to the transferor or the transferees such transfers will not be made, but provided further that

from the Effective Date each of the proposed transferees is hereby granted an irrevocable proxy,

which is coupled with an interest, to vote on any matter the shares that would have been

transferred to such transferees absent the fact such shares were not transferred by reason of such

an adverse federal income tax consequence.

       13.    <u>Ratification/Reaffirmation, Etc</u>. As a further inducement to Transcon

and Pearlman in entering into this Amendment, each of the Parties hereto, acknowledges,

reaffirms and ratifies each of the terms and provisions of the 1998 Settlement Agreement, as

modified by this Amendment and each Party represents that they shall act in accordance with the

terms and provisions thereof. Each of the Parties acknowledges that the Agreement is valid and

-7-

CONFIDENTIAL

enforceable in accordance with its terms, each of the Parties represents that they intend to be bound thereby, and each expressly waives and relinquishes, and is estopped from asserting, any claim or defense inconsistent with the foregoing.

14.    **Mutual Releases.**  The Members of the Group (including each Member's affiliated personal services and other companies), Pearlman, Transcon, BBI and BPI (including their affiliates), hereby and forever release and discharge each other including each of their respective officers, directors, employees and agents, from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extends, executions, claims, and demands whatsoever, in law, admiralty or equity, which against each such Party and their respective successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Amendment, provided, however, that all Parties expressly reserve all rights and claims under the 1998 Settlement Agreement as amended.

15.    **Binding Agreement, Etc.**  Each of the Parties represents and warrants that he or it has the full power and authority to be bound, and intends to be bound by all of the terms and conditions set forth herein and to execute all documents and perform all acts and transactions required hereby.

16    **Additional Inducement.**  As an additional inducement to each of the Parties hereto to enter into this Amendment, each of the Parties warrants and represents that: (a) he has read this Amendment and has consulted with or has had the opportunity to consult with a lawyer chosen by him for the purpose of having the legal effect of each of the provisions

-8-

CONFIDENTIAL

contained in the Agreement explained to him and to otherwise receive counsel with respect thereto; and (b) all of the obligations, warranties, undertakings, covenants, and agreements on the part of BBI and BPI contained in the 1998 Settlement Agreement as amended, including those which concern each Member of the Group, are true, correct, binding and enforceable in accordance with their terms, and BBI and BPI have the right, power and authority to make and assume all such obligations, warranties, and undertakings, contained therein.

17.    Severability.  If any provision of this Amendment shall be determined to be invalid or unenforceable to any extent, the remainder of the terms and provisions of and undertakings in this Agreement and the application of such terms, provisions and undertakings shall not be affected and shall be enforced to the greatest extent permitted by law.

18.    Amended Notice.  Paragraph 26 of the 1998 Settlement Agreement shall be modified to provide that any notice or demand to be sent to any Member of the Group shall be sent to such party, c/o The Firm, LLC, 9000 Sunset Boulevard, Suite 525, West Hollywood, California 90069. Attn.: Michael Green, Fax No. (310) 246-9000, with a copy to Ziffren, Brittenham, Branca & Fischer, 1801 Century Park West, Los Angeles, California, 90067-6406, Attn.: John Branca, Fax No. (310) 553-7068.

19.    No Presumption.  The Parties agree that the terms and provisions of this Agreement are the result of negotiations between the Parties and/or their counsel, and that this Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or their counsel participated in the drafting of this Agreement.

20.    Entire Agreement; No Representations, Etc.  This Amendment, together with the 1998 Settlement Agreement, contains the entire understanding among the parties with

-9-

CONFIDENTIAL

respect to, and contain all terms and conditions pertaining to, the subject matter hereof. This Amendment, together with the 1998 Settlement Agreement, supersedes any prior agreements, arrangements or understanding between Parties, whether written or oral, relating to the subject matter hereof. No express or implied warranties, covenants or representations have been made concerning the subject matter of this Amendment unless expressly stated herein. Any prior written or oral negotiations not contained in this Amendment are of no force or effect whatsoever. In executing this Amendment, the Parties have not relied and do not rely on any statements, inducements, promises, or representations made by any other party or their agents, representatives, or attorneys with regard to the subject matter, basis, or effect of the Agreement. The Agreement is intended to be final and binding upon all parties hereto regardless of any mistake of law or of fact or any other circumstance whatsoever.

21.    **Legal Representation**. Each of the Parties represent and warrant to the other that he or it has full opportunity to obtain, and has in fact obtained, the advice of his or its own legal counsel with respect to this Agreement and the transactions contemplated thereby.

22.    **No Oral Modifications**. The Agreement may not be changed, altered, or modified except in writing signed by each of the Parties whose rights or interest is affected thereby. The Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by each of the Parties to be charged.

23.    **Agreement in Full Force and Effect**. Except as specifically modified and amended herein, all terms and provisions of the 1998 Settlement Agreement, including, without limitation, jurisdiction and governing law, remain applicable and in full force and effect

-10-

CONFIDENTIAL

03-25-99   03:31PM   From-ZIFFREN BRITTENHAM                3105533313        T-296   P 15/20   F-500
        MAR 25 '99   12:32PM MARKER LIPPMAN   CAL 164 CLIL

24.    **Counterparts; Facsimile Signature.**  This Amendment may be signed in counterparts and shall become effective as if executed in a single, complete document upon its execution by all parties.  Facsimile signatures of the undersigned parties will have the same force and effect as original signatures.

IN WITNESS WHEREOF, the undersigned have executed this Amendment as of the date indicated on the first page hereof.

LOUIS J. PEARLMAN

BACKSTREET PRODUCTIONS, INC.

By:
Name:  Louis J. Pearlman
Title:  President

BACKSTREET BOYS, INC.

By:
Name:  Louis J. Pearlman
Title:  President

TRANS CONTINENTAL RECORDS, INC

By:
Name:  Alan Siegel
Title:  Executive Vice President

NICKOLAS CARTER

HOWARD DOROUGH

-11-

CONFIDENTIAL

25-Mar-99 10:39P

BRIAN THOMAS LINERELY

ALEXANDER I. MCLEAN

KEVIN RICHARDSON

-12-

CONFIDENTIAL

03-25-99   03:31pm   From-ZIFFREN BRITTENHAM              3105533318        T-296  P 117/160  F-564

Exhibit "A"

**BACKSTREET BOYS, INC**
**BACKSTREET PRODUCTIONS, INC.**
c/o THE FIRM LLC
9000 Sunset Boulevard, Suite 525
West Hollywood, California 90069

March 24, 1999

Gudvi, Chapnick & Oppenheim, Inc.
15-250 Ventura Boulevard
Suite 900
Los Angeles, California 91403
Attn: Michael Oppenheim

Re:      Backstreet Boys

Dear Mr. Oppenheim:

Pursuant to a certain Settlement Agreement dated as of October 1, 1998, as amended by agreement dated as of March 24, 1999 (collectively, the "Agreement"), you are hereby authorized and directed to pay to Louis J. Pearlman ("Pearlman") and Trans Continental Records, Inc. ("Transcon") from monies maintained in your Client Trust Accounts or other accounts administered by you on behalf of and for the benefit of Backstreet Boys, Inc. ("BBI"), and Backstreet Productions, Inc. ("BPI") the share of the Adjusted Income of BBI and BPI due to Pearlman and Transcon pursuant to the Agreement, at the same time as the payment of any such monies to or for the benefit of any other shareholder of BBI or BPI.

Very truly yours,

Backstreet Boys, Inc.
Backstreet Productions, Inc.

By:

Agreed to and Accepted:

Gudvi, Chapnick & Oppenheim, Inc.

By
Michael Oppenheim, Officer

-13-

CONFIDENTIAL

25-Mar-99 10:

MAR 25 '99  12:55PM PARKER CHAPIN ... --- --

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x

ZOMBA RECORDING CORPORATION,          :        Index No. 98-Civ. 3315 (DLC)
                                               Consolidated with:
         Plaintiffs,                  :        Index No. 98 Civ. 5937

         -against-                    :        STIPULATION AND
                                               ORDER OF
LOUIS PEARLMAN, TRANS CONTINENTAL     :        DISCONTINUANCE
RECORDS, INC., and BACKSTREET BOYS,
INC.                                  :

                                      :
         Defendants
         and Counterclaim-Plaintiffs. :

------------------------------------------x

    IT IS HEREBY STIPULATED AND AGREED by and between the undersigned

counsel of record for all parties hereto, pursuant to Rule 41(a)(1)(ii) of the Federal Rules of

Civil Procedure that, whereas no party is an infant, an incompetent for whom a committee has

been appointed or a conservatee and there being no person not a party who has any interest in

the action, each and every counterclaim asserted by Backstreet Boys, Inc. ("BBI") in the

above-captioned action against Zomba Recording Corporation ("Zomba") be and hereby is

discontinued with prejudice and with each party to bear its own costs and fees; provided,

however, that BBI reserves the right to pursue, and this dismissal is without prejudice to (a)

any audit rights or claims it has or may have for any accounting period commencing on or after

CONFIDENTIAL

January 1, 1998 (including, without limitation, royalties on foreign sales that occurred on or before December 31, 1997, but were not due and payable to BBI until or after January 1, 1998 and which have been accounted to BBI in the accounting period covering the period January 1 through June 30, 1998 and/or will be accounted to BBI in subsequent accounting periods), provided any examination BBI conducts pursuant to any audit rights referred to in this subparagraph, and any claims BBI makes in connection therewith, are in accordance with the terms set forth in the recording agreement between BBI and Zomba, as amended, and (b) any audit rights or claims it has or may have for any accounting period ending on or before December 31, 1997, solely for the purpose of verifying whether recording costs, audiovisual production costs and other recoupable costs have been properly deducted by Zomba in computing and/or paying amounts due to BBI and, if not, making claims thereon, provided any examination BBI conducts pursuant to any audit rights referred to in this subparagraph is (i) conducted solely in conjunction with and subject to the same time limits as the examination made with respect to the accounting period ending June 30, 1998; (ii) limited to a reasonable

-2-

CONFIDENTIAL

TOTAL P.17

review of non-diminimus expenses; and (iii) conducted in accordance with the terms set forth

in the recording agreement between BBI and Zomba, as amended.

Dated:    New York, New York
          March __, 1999

PARKER CHAPIN FLATTAU & KLIMPL,        PAUL, HASTINGS, JANOFSKY &
LLP                                     WALKER LLP

By: _____            By: _____
    Joel M. Wolosky (JMW-4287)              Lawrence I. Weinstein (LW-0792)
    1211 Avenue of the Americas            399 Park Avenue - 31st Floor
    New York, New York 10036               New York, New York 10022
    (212) 704-6000                         (212) 318-6000
    Attorneys for Defendants and           Attorneys for Plaintiff and
Counterclaim Plaintiffs Louis Pearlman,  Counterclaim Defendant Zomba
    Trans Continental Records, Inc. and  Recording Corporation
    Backstreet Boys, Inc.

SO ORDERED:

_____
    U.S.D.J.

-3-

CONFIDENTIAL